

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Frank J. Petrino, Esq. (NJ Attorney ID No. 282491972)
Physical Address: 2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
Mailing Address: P.O. Box 5404, Princeton, NJ 08543
Telephone: (609) 392-2100
Facsimile: (609) 392-7956
Attorneys for EL at Jackson, LLC

|  |  |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE TOWNSHIP OF JACKSON. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION - OCEAN COUNTY DOCKET NO.: OCN-L-822-92 DOCKET NO.: OCN-L-1879-15 <br><br> **CERTIFICATION OF FRANK J. PETRINO, ESQ. IN SUPPORT OF EL AT JACKSON, LLC'S MOTION TO ENFORCE LITIGANT'S RIGHTS PURSUANT TO R. 1:10-3** |

I, **Frank J. Petrino, Esq.**, of full age, hereby certify as follows:

1. I am an attorney-at-law in the State of New Jersey and a member of the law firm of Eckert Seamans Cherin & Mellott, LLC, attorneys for Defendant-Intervenor, EL at Jackson, LLC ("EL") in the above-captioned matter. As such, I am familiar with the facts set forth herein. I make this Certification in support of EL's motion to enforce litigants' rights.

2. On December 15, 2015, EL, a joint venture of Lennar at Jackson, LLC, a subsidiary of Lennar Corporation, the second largest public home builder in America, and M&M at Jackson, LLC, a prominent private New Jersey builder with members having significant homebuilding experience in New Jersey, acquired title to the ±355 acre parcel of land in Jackson Township ("the Township"), identified in the March 8, 2013 Judgment of Repose entered by Judge Grasso as "the

Hovbilt site." A true and correct copy of the December 15, 2015 Deed is attached hereto as **Exhibit "A"**.

3. Attached hereto as **Exhibit "B"** is a true and correct copy of the Judgment of Repose entered by the Honorable Vincent J. Grasso, A.J.S.C. on March 8, 2013.

The Judgment provides in pertinent part as follows:

A. The Township's Prior Round Obligation consists of a New Construction Share of 1,247 units. Exh. B at ¶1.

B. The Township must adhere to a <u>minimum rental obligation</u> of 260 units and <u>maximum of 246 age restricted units</u>. Exh. B at ¶2.

C. "The Hovbilt site is the subject of an Affordable Housing Agreement with the Township that includes a provision that the developer shall set aside 192 units for inclusionary affordable housing. The Agreement further provides that Hovbilt may apply to the Planning Board to amend the Approvals to include up to 1,100 units, 20% of which will be set aside for affordable housing. <u>The Township claims credits for 192 non-age restricted units for this development</u>." Exh. B at ¶5(d)(1).

D. It accepted "the recommendations of its Master that the Court award a Judgment of Repose thereby declaring that implementation of the Housing Element and Fair Share Plan fully discharges the Township of its responsibility of any further affordable housing responsibilities until the date required for the submission of a Third Round Housing Element and Fair Share Plan is established by regulation, statute or decision of a Court with appropriate jurisdiction for all municipalities in New Jersey." Exh. B at ¶10.

E. It ordered the Planning Board to, on or before July 8, 2013, revise its Housing Element and Fair Share Plan to satisfy the conditions of the Master's Report and the Township to thereafter "fully implement its Housing Element Fair Share Plan" [by the adoption of Amendments to its Land Use Ordinances consistent with the terms of the Judgment]. Exh. B at ¶¶I, D.

F. It ordered the "Planning Board and all its respective agents, employees and representative [shall] make <u>bona fide</u> efforts to implement and expedite the components of the Township's compliance package which are within the control of the Planning

{R0383269.2} 2

> Board, including bona fide efforts to expedite all Planning Board development approvals of all inclusionary developers identified in the Housing Plan and Fair Share Plan to facilitate the provision of affordable housing." Exh. B at ¶K.
>
> G.   The Court retained jurisdiction with regard to Ordinances to be adopted to fully implement the 2012 Plan, as revised. Exh. B at ¶M. (Emphasis added.)

4. Attached hereto as **Exhibit "C"** is a true and correct copy of the Township's Fair Share Plan dated December 7, 2015.

The relevant provisions of the Plan are set forth at Pages 19-21 and provide in pertinent part as follows:

> "The Township and M&M at Jackson, LLC are currently in negotiations to amend the Affordable Housing Agreement. At this time the parties are discussing details of amended agreement to allow non-age restricted development of the site and the provision of 192 units of low and moderate income family rental housing consistent with the previous Affordable Housing Agreement and subsequent amendments thereto. The project remains a realistic and viable affordable housing site." (Emphasis added.)

5. Attached hereto as **Exhibit "D"** is a true and correct copy of a Settlement Agreement and Release dated June 14, 2016.

The relevant provisions of this Agreement provide in pertinent part as follows:

> "**WHEREAS**, the Property is included and continues to be included in the Jackson Master Plan, Housing Plan, and Fair Share Plan and is deemed approvable, available, developable, and as an inclusionary housing development of up to 1,275 housing units, including between 192-220 affordable housing units, as set forth in the Fair Share Plan and the related Jackson Affordable Housing Agreement, as amended, with Hovbilt described on Pages 27-29 of the Township's Amended Housing Plan Element and Fair Share Plan dated October 15, 2012, and endorsed by the Township Council on November 20, 2012 (the "Affordable Housing Agreements" and the "Fair Share Plan", respectively); and

* * *

NOW, THEREFORE, in consideration of the foregoing recitals which are a material inducement to the Parties' entering into this Agreement and the mutual promises and covenants contained herein, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

\* \* \*

**J.    Additional Necessary Documents and Cooperation**. The Parties, and each of them, agree to execute such additional documents, instruments or agreements as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein. The Parties further agree to reasonably cooperate to carry out the purpose and intent of this Agreement, including but not limited to the Property and the Bypass Lots remaining in Jackson's Fair Share Plan and the issuance of revised or amended governmental approvals including but not limited to changes to zoning and/or the Fair Share Plan to permit the development of a non-age restricted development as contemplated by the Fair Share Plan and Resolution." (Emphasis added.)

6.    Attached hereto as **Exhibit "E"** is a true and correct copy of my letter to the Special Master dated September 12, 2016. This letter provides in pertinent part as follows:

Prior to the last session, EL believed that because of the concessions/plan revisions that it was willing to make that the Township had reconsidered its requests that the Clubhouse be eliminated and that the number of bedrooms per product type be reduced. Both requests were intended to avoid the influx of an unwanted religious group. See attached article. For obvious reasons, Lennar (a publicly traded corporation) cannot and will not agree to eliminate the Clubhouse.

\* \* \*

Unless the September 13, 2016 closed session produces specific and reasonable requests from the Township for EL's consideration, mediation will fail. (Emphasis added.)

7.    Attached hereto as **Exhibit "F"** is a true and correct copy of the Consent Order entered by Judge Troncone on September 16, 2016.

{R0383269.2}                                    4

Paragraph 2 of the Consent Order provides as follows:

"2. Within 60 days of receipt of such new ordinance [i.e., on or before November 21, 2016] or amendments to the PRC Ordinance from EL, the Township shall hold a hearing to consider and vote to either adopt the draft Ordinance submitted by EL or shall place upon the record at a public meeting its reasons for not adopting the draft ordinance proposed by EL." (Emphasis added.)

8. Attached hereto as **Exhibit "G"** are true and correct copies of the second iteration of the PIC Ordinance and the transmittal email forwarded on September 21, 2016. The first iteration of the draft PIC Ordinance was submitted on July 7, 2016. Attached as **Exhibit "H"** are true and correct copies of the first draft of the PIC Ordinance and July 7, 2016 transmittal letter.

9. Attached hereto as **Exhibit "I"** is a true and correct copy of the JDM Memorandum dated October 21, 2016.

Paragraph 12 of the Memorandum provides as follows:

"12. Our concerns previously discussed with the EL @ Jackson representatives related to the provision of a clubhouse (or at least minimizing the size or same), small minimum lot sizes for the detached single family lots, and bedroom limitations, etc., have not been reflected in the ordinance offered by EL." (Emphasis added.)

10. Attached hereto as **Exhibit "J"** is a true and correct copy of the Round Three Settlement Agreement between Fair Share Housing Center and Jackson Township dated October 25, 2016.

The relevant provisions of Paragraphs 5 and 6 of the Agreement acknowledge that the EL site is a prior round non-age restricted inclusionary development with a required set aside of 192 low and moderate income units ["Site #6-Hovbilt (Family Rental) 192 Affordable Units, 0 Rental Bonuses and 192 Total Credits"], and demonstrate that the Township sought 256 Third Round credits for the 128 family rental units to be constructed by EL ["EL @ Jackson, LLC (carried over from Site #6 above), Project Location Perrineville Road, Project Type Family Rental

(Units Carried Forward from Prior Round), 128 Number of Affordable Units or Credits, 128 Rental Bonus Credits, 256 Total Credits"] .

11. Attached hereto as **Exhibit "K"** is a true and correct copy of the third iteration of the PIC Ordinance submitted on November 9, 2016.

12. Attached hereto as **Exhibit "L"** is a true and correct copy of the JDM Memorandum dated November 16, 2016, but it was not forwarded to EL until **November 30, 2016**, and not brought to the Courts attention by the Township at the **November 18, 2016** Case Management Conference. It states in pertinent part that Ordinance 30-16 satisfactorily addressed Items 2, 4, 5, 7, 8, 9, 10 and 11 set forth in the October 21, 2016 memorandum (**Exhibit I**).

13. Attached hereto as **Exhibit "M"** is a true and correct copy of Township Council's November 29, 2016 Agenda.

14. Attached hereto as **Exhibit "N"** is a true and correct copy of Ordinance 30-16 proposed for introduction on November 29, 2016. Schedule A attached to Ordinance 30-16 is identical to **Exhibit K**.

15. At the suggestion of FSHC and based upon the positive statements made in the Township's June 29, 2016 Letter Brief opposing EL's Motion ("The Township has done nothing to impede or delay this development." Page 8), EL agreed to adjourn its Motion to Enforce Litigants Rights returnable July 8, 2016 and entered into mediation. Between July 11, 2016 and August 26, 2016, the parties met on four (4) occasions to discuss possible settlement terms. At the request of the Township, during this process EL made many technical and substantive changes to the language of what became the draft PIC Ordinance a true and correct copy of which is attached hereto as **Exhibit "H"**, including the following:

      (a)   The width of all single family lots was increased to 55 and minimum lot to 5,500 square feet.

{R0383269.2}        6

  (b) Detached garages on single family lots were eliminated.

  (c) All 192 affordable units to be located on site.

  (d) The affordable units to be integrated with the market rate units.

16. On September 13, 2016 in a closed session attended by the Special Master, the Township Council reviewed the terms of a proposed settlement, including the concessions made by EL during mediation, and the Plans for a proposed 1,140 unit inclusionary development referred to as Jackson Parke (formerly Jackson Valley). The Council also considered and authorized the entry of a Consent Order, the final form of which is attached hereto as **Exhibit "F"**. Based upon comments made during numerous telephone calls on September 14 and September 15, 2016 in which the Township attorney, Special Master and I participated, the take away was that rather than litigate, the Township was willing to discuss and consider making concessions with regard to its **"cardinal"** issues (i.e., single family detached homes must be limited to 3 or 4 bedrooms, townhomes limited to 3 bedrooms and the clubhouse eliminated or certain rooms reduced in size).

17. After I made numerous requests, the Township finally provided comments on the **September 21, 2016** iteration of the PIC Ordinance. Those comments are set forth in the **October 21, 2016** JDM memorandum **(Exhibit I)**. I then pressed for a meeting with members of the Township Council so that we could determine how far the Township was willing to move on the cardinal issues. The requested meeting took place on November 1, 2016 at the Jackson Township Municipal Building.

18. The November 1, 2016 meeting only further confirmed many earlier statement to the Special Master that the Township viewed mediation as way to delay taking any action on the

proposed PIC Ordinance until after the election, and did not represent a good faith effort by the Township to reach a settlement.

19. On November 9, 2016 the PIC Ordinance (**Exhibit K**) was forwarded to the Township. I participated in the preparation of the PIC Ordinance and in my view it was conformed to incorporate the requested changes set forth in Items 1 to and including 11 of **Exhibit I**, including reducing the number of units to 1,100, with a 192 unit set aside. **As to Item 12 of Exhibit J, bedroom and clubhouse limits were not added.** Prior to November 1, 2016 and continuing to today, the Township has not articulated what bedroom and clubhouse limits would be acceptable to it. Frustrated with the process and not wanting to continue to bid against myself, on November 9, 2016 I sent an email to Ms. Cipriani (**Exhibit O**) which states in pertinent part as follows:

> "We appreciate Council Members Bressi and Updegrave joining us at the November 1, 2016 mediation effort. Regrettably it was productive only in the sense that we learned that the Township has never wavered from its desire to restrict the use of the clubhouse and unreasonably limit the bedrooms in the market rate homes and was never interested in pursuing a settlement if it meant changing its position on either or both of these **cardinal** issues. With all due respect, the meeting simply confirmed our suspicions that the Township's participation in mediation was not designed to reach a good faith settlement. My comments are not directed at you and John, since it is indisputable that both of you, the Special Master and the EL Team were negotiating with a party that on November 1st had no intention of moving off its ultra vires demands." (Emphasis added.)

20. The ultra vires reasons for the Township's refusal to compromise on bedroom and clubhouse limits are widely known. It is indisputable that the Township seeks to prevent and/or discourage a certain religious group from settling in Jackson Township. Many newspaper articles, such as the ones attached hereto as **Exhibits P-1, P-2** and **P-3**, identify the group targeted for exclusion from "its" Township.

21. The Township refused to introduce the PIC Ordinance/Ordinance 30-16 on November 29, 2016. The JDM November 16, 2016 memorandum (**Exhibit L**) was read into the record as the Township's reasons for not introducing or supporting the Ordinance. The reasons given were merely a pretext for its desire to exclude a certain religious group from "its" Township. Had this memorandum been provided to EL at the November 18, 2016 Case Management Conference or the follow up mediation session held in Judge Troncone's courtroom, EL would likely have favorably considered making changes to the proposed PIC Ordinance to address items 1, 3, 5, 10, 11 and 12 well in advance of a November 29, 2016 introduction. The only remaining item in dispute would have been the Township's <u>ultra vires</u> requests for bedroom and clubhouse limitations.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
Frank J. Petrino

Dated: December 7, 2016