# JACKSON TOWNSHIP PLANNING BOARD MEETING
## MONDAY, AUGUST 7, 2017

The August 7, 2017 meeting of the Jackson Township Board was called to order at 7:30 p.m. by Chairman Joseph Riccardi with a salute to the flag by all present. Attorney Greg McGuckin read the Open Public Meetings Act Statement noting that adequate notice has been provided and advertised in the manner prescribed by law.

**ROLL CALL:**
- Diana Brunner
- Martin Flemming
- Dr. Michele Campbell - Alt. #1
- Larry Josephs - Alt. 2
- Kenneth Bressi, Councilman
- Robert Hudak, Vice Chairman
- Joseph Riccardi, Chairman

**ABSENT:** Tim Dolan, Andrew Kern, Len Haring

**ALSO PRESENT:** Board Attorney Greg McGuckin, Board Attorney, Doug Klee of Owen Little & Associates, Board Engineer, Ernie Peters of Remington & Vernick Associates, Board Planner, Denise Buono, Planning Board Secretary and Diane Festino, Planning Board Recording Secretary.

**PAYMENT OF VOUCHER:** Payment of Recording Secretary, Diane Festino, for 8/7/2017 motioned by BRESSI/Flemming. Yes: Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi.

**APPROVAL OF MINUTES:** Approval of July 17, 2017 Meeting Minutes by HUDAK/Flemming. Yes: Brunner, Flemming, Campbell, Bressi, Hudak, Riccardi.

**ENGINEERING/PLANNING MATTERS:** None at this time.

**RESOLUTIONS:** The resolutions were read into the record by Mr. McGuckin.

Resolution 2017-19 - Wawa, Inc. - Block 21301 Lot 10.02 - granting a one-year time extension for site plan approval. Motion to approve by BRESSI/Hudak. Yes: Brunner, Flemming, Campbell, Hudak, Riccardi.

Resolution 2017-20 - MUA - Block 13001 Lot 24 - London Drive - granting Administrative Approval, Courtesy Review, Jackson Township Municipal Utilities Authority. Motion to approve by HUDAK/Flemming. Yes: Brunner, Flemming, Campbell, Hudak, Riccardi

**CHANGES TO AGENDA SCHEDULE:** None at this time.

**MISCELLANEOUS LEGAL MATTERS:** None at this time.

**APPLICATIONS:**

1. **Pure Foods, Block 2301 Lot 3, Herman Road** - Ray Shea, Attorney for the applicant, Graham Macfarlane, PDS, sworn - his credentials were given and accepted. Mr. Shea advised a time extension and the property is located on Herman Road. Phase I is completed and was approved by the Board; it is an aquaponic facility. Mr. Macfarlane advised the applicant is seeking a time extension and advised the permit has been obtained and they are underway. The site is cleared and under construction. The client wants to complete Phase I and for economic reasons, move into Phase II. We require the extension. Mr. Klee advised they should initiate their plans and are looking for a one-year time extension to 2018. There are no changes for design and I have no further comments. Mr. Peters informed it is time to protect the property. There is no rezoning and I take no exception. Mr. Klee stated he recalled hydroponic gardening and questioned if it would include something else. Mr. Shea advised there's a condition in the resolution that there will be no marijuana.

Opened to public comment; no one came forward. **Motion to close public comment by BRESSI/Flemming. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

**Motion to approve a one-year time extension to 2018 by BRESSI/Brunner. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

2. **Jackson Woods, Block 4101 Lot 18, Freehold Road** - Ronald Shimanowitz, Attorney for the applicant - advised he sent a letter on 6-16-17 requesting a 4-year extension on Preliminary Major Site Plan located on the south site. The central site is underway and they're still working the southeast and southwest. The approval was granted in July 2012 with a 5-year extension. The applicant needs time to amend the preliminary and come in for the final. Mr. Klee verified an error as their letter stated 5 years; the applicant wants a 4-year extension. Mr. Peters advised there is no zone change.

Opened to public comment; no one came forward. **Motion to close public comment by BRESSI/Brunner. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

Mr. Bressi stated they've had some hold ups with the County on the roads. **Motion to approve a 4-year time extension to 2021 by BRESSI/Campbell. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

3. **Unger Minor Subdivision, Block 21901 Lot 5, White Road** - Mr. Klee advised they're seeking to subdivide into 3 lots in the R-3 Zone on a septic system. Variances are required for width, depth and are seeking a variance for deficient side yard for Lots 5.02 and 5.03; it requires 50' and they have 40'. There are single-family dwellings and accessory structures on the east side of White Road on R-1 zoning. All except the buildings to be removed. There are no wetlands and no comments from the Environmental Commission. The ordinance requires 40,000/lot for septic conditions and that is based upon environmental comment. There are no road improvements, curbing on the frontage and we require information as to sidewalks or the pedestrian fund also tech comments are required. Mr. Peters advised it's in the R-1 Zone where 1 acre is permitted if there is no sewer. It is 3-acre zoning and their insufficient on width, depth and side yard setbacks.

Jackson Township Planning Board Meeting of August 7, 2017                                   Page 2 of 3

**Sal Alfieri, Attorney for the applicant, Graham Macfarlane, PDS, sworn** - Mr. Macfarlane informed the location is on White Road in the eastern part of Town. There are 2 commercial buildings and (1) single-family dwelling. **Exhibit A-1**, 5 pictures showing the conditions of the site and the current use occurring in the front of the building with the single-family dwelling in the back. Picture #1) - main driveway to the site, 2) single-family dwelling with the front loader, 3) rear yard behind the 2 commercial buildings, 4) outside storage of materials by contractor and 5) behind the rear building is a dirt driveway. We want to demolish 3 buildings and bring it into compliance. It is in the R-1 Zone with no access to public sewer. We request to subdivide 3 lots of 39,850 sq. ft. We believe it is reasonable and in accordance with the Municipal Land Use Law. **Exhibit A-2**, aerial showing the surrounding properties. Most of the lots are in vicinity and are of similar size; many lots are smaller. Some are 18,000 sq. ft. on 1 acre with a hodge podge of residential lots. **Exhibit A-3**, colored lot tabulation plan showing the different lots and surrounding properties in the neighborhood. He went over the chart explaining advised the orange shades front on White Road and are less than 1 acre; 25,000, 21,000 and they propose 39,855 for each lot. Light blue - 47 lots at 1 acre and 1 above an acre. Light green - (9) lots ranging from 1.1 - 1.3 acres (conforming). Pink - 4 lots - there are 114 total lots in that zone and 4 lots conform to the zone criteria. Cross hatched (pink) is 2-6 acres. 114 in total - 110 don't conform and 96 are similar in size or smaller.

They wish to subdivide from nonconforming and 3 buildings on site and bring it into conformance with the neighborhood. There are 4 points of the Municipal Land Use Law to satisfy: 1) E - advancing the purposes of Zoning, to the well beings of persons, it satisfies by eliminating nonconforming uses and replacing them with principal uses that is consistent with the zoning, 2) A - to promote public health, safety and welfare. We'll be bringing the principal use into compliance. 3) F - appropriate population of density that is consistent with the surrounding area and 4) does not contain any wetlands or streams. There are no environmental sensitive areas.

The vast majority is similar to what we're proposing. **Exhibit A-4**, subdivision plan showing 7 existing nonconforming (where front or side setbacks are not satisfied). We're asking for an internal lot line and side setbacks. **Exhibit A-5**, improvement plan showing landscaping on White Road. The approximate location of homes and footprints, size of septic systems, landscaping buffering on side, street trees on the frontage of site and either sidewalks or contribution into the fund. Mr. Alfieri referenced the 6-7-17 professional's report and advised they're proposing an alternate septic system. It had been submitted to the Environmental Commission and we received no letter of concern. We're waiting for the approval on the septic designs and we received Ocean County Board of Health. Ms. Brunner advised there is an error by one commissioner. They are too close to the wells and we kicked it back. We need to make sure all septic tanks are in compliance with all ordinances and statutes. She confirmed the specialized systems that are used in the Pinelands will be utilized.

Mr. Hudak asked what percentage of the surrounding homes utilize septic systems. Mr. Macfarlane stated almost all is on septic. He advised they will connect to sewer and nothing else has sewer services. Mr. Hudak explained the smaller homes are existing and Mr. Macfarlane stated the statute determines by bedrooms. Mr. Hudak verified the septic tanks and fields meet the adequate setbacks. They are 10' from the line and 25' from the buildings. Mr. Klee inquired if will there be bonding for that and Mr. Macfarlane explained it is a condition of approval of the final plat and in the resolution. The Town needs to review when building permits are out. Mr. Klee felt that 4-5 years down the road he could see the process time lapsing. Mr. Bressi explained the septic is controlled by the Ocean County Board of Health and not us but also had concerns of a time lapse. Mr. Klee confirmed a deed restriction for alternate septic design as a condition. Dr. Campbell felt the alternative septic bed is only intensified in middle and not the left or right. Mr. Macfarlane disagreed and stated it was on all 3 lots. Mr. McGuckin stated the alternate system is consistently used by the Pinelands. The systems can change as they reevaluate and whatever is available at that time per the Ocean County Board of Health.

Mr. Riccardi asked is they're taking down buildings and equipment on the property now. Mr. Macfarlane advised it is utilized by the contractor for storage of equipment/materials. Currently on site are septic lids, plastic pipes; an earth work contractor is making use of site. Mr. Riccardi verified it is owned by 235 Whitesville, LLC are the applicant is present. Mr. Macfarlane advised the existing wells and septic will be removed. The Ocean County Board of Health didn't have records of where they were; any system on site will be abandoned. Ms. Brunner had concerns of cesspools and Mr. Macfarlane explained it could have been done 30-50 years ago and the Board of Health had no records. We also found no record on survey. With demolition, they would be removed. Ms. Brunner confirmed Mr. Macfarlane wasn't aware of the type of existing fuel source. Ms. Brunner believed it to be below ground oil and stated the Environmental Commission is now changing our position. The cesspool must be dealt with before changing title and Mr. Macfarlane informed the applicant will abide.

Mr. Hudak wondered if the subdivision fits in with the surrounding properties and Mr. Macfarlane felt it was positive from a planning perspective and felt it meets the existing character. Positive & negative - the negative is the size of the lots since it is less than 40,000 sq. ft. and less than 130,000 as required in the ordinance. The entire neighborhood is 40,000 or less and it's on outdated septic. The new systems are a benefit as well as street improvements in the residential zone.

Positive - the positive criteria has been described. Dr. Campbell confirmed there are no sidewalks out there now and Mr. Macfarlane informed the survey picked up caddy corner across the street. Dr. Campbell was happy to see sidewalks for the 3 homes.

Opened to the public

**Jim Bezanson, 12 Melissa Lee Drive, sworn** - confirmed the footage of the homes has not been determined. He felt the homes aren't similar in size or character. Mr. Macfarlane felt the homes are consistent by the ordinance for bulk standards that limit the amount of lot coverage.

Mr. McGuckin felt it was a good question as you relate to the other 47 homes. Mr. Bressi stated they could be 4,000 - 5,000 sq. ft. and Mr. Macfarlane stated 3,000 -3,500 sq. ft. with full basements. Mr. Bressi stated smaller lots are in the area and those homes are smaller in comparison. Mr. Macfarlane suggested the Board could impose a maximum size and Mr. Bressi asked the professionals with the footprints how

much of the variance would be reduced with the side/rear setbacks. Mr. Peters explained the bulk dimension doesn't limit the home's sizes and 24' X 48' seems typical. Limiting because of the unique setback and building envelope. Mr. Bressi asked if they would have limits on bedroom counts and Mr. Macfarlane advised he'd speak to the client. Mr. Bressi didn't want to see the homes get too big and Ms. Brunner stated the septic is based on the number of bedrooms. The other homes are older and smaller and who knows how they'll operate; why not build 2 homes. The older homes don't conform because they are older and Mr. Macfarlane stated the treatment level is better than the pre-existing and we're removing the cesspools. This application is positive for groundwater quality and no letter of concern has already been issued.

Dr. Campbell advised she drove by and seen many small homes and Mr. Macfarlane felt their not proposing big homes on 1-acre lots. Mr. Bressi stated that's your opinion and they are big homes. There are small lots there and Mr. Macfarlane stated some homes are 1400-1500 sq. ft. and many existing homes are the same size as proposed homes; it's consistent with the neighborhood of 2-story single-family dwellings with basements. Mr. Bressi explained normally he agrees but the surrounding area but not with 3 lots. Mr. Alfieri stated the two side yard setbacks don't affect the outer areas and only the proposed lots themselves. Ms. Brunner stated 3 separate lots to 3 separate families and the middle house is getting squeezed. She asked if they are all owned by the same person and Mr. Macfarlane informed they are all for sale. He explained if you look at the improvement plan and the adjoining homes, each is less than 20'. They are not in conformance and will not impact the adjacent owners. We request the side yard for 2 internal for 40' where 50' is required. The internal is to the application and there is no negative impact to the adjacent landowners. Mr. Bressi agreed the variances are internal but he wanted to see what his clients had to say.

Mr. Bezanson stated he's been coming here for 1 1/2 years and can see things slipping through the cracks. Their foot is in the door and they'll be asking for stuff down the road. Mr. Bressi explained it as creeping crud. He stated this Board is from 2006 and advised the best we can do is raise a red flag. Mr. Bezanson stated the Zoning Board shut down a recent application into Lakewood with a unique situation. Mr. Bressi explained he's seen a lot of language and years ago those subjects wouldn't come up. Mr. Bezanson felt the Board needs more information on the envelope and that's he brought up the size of the homes.

Closed public comment. **Motion to close public comment by BRESSI/Josephs. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

Mr. Alfieri advised a 6 bedroom restriction maximum and Mr. Hudak stated no, who wanted to limit the size of the homes to 3500 sq. ft. and limit to 4 bedrooms; he felt it was more conforming. Mr. Bressi agreed to the number of bedrooms with 3500 sq. ft. and including the living space and not including the basement. Mr. Bressi wanted to stipulate that bedrooms could never be built in the basement and Mr. Alfieri would not agree. Dr. Campbell advised there needs to be 2 forms of egress with basements and wanted questioned the sloping and grading of the property. Mr. Josephs felt the size of the house is limited by setbacks, lot coverage and height restriction. It's a lot density request and stated the maximum is 30% on 40,000. Mr. Josephs stated it means the biggest house would equal "X" for the height. There's a lot of limiting factors and you can't build on the septic field. He confirmed it is not part of the coverage (not within 25' of the setback).

Mr. McGuckin stated with 4 bedrooms or 3500 sq. ft. and a basement converted to living space, what if the conditions would include the square feet of the basement. How are we to know about the future; the purposes of condition and the Board should be aware it could be more. Mr. Hudak felt the proposed is 40' X 50' and with a finished basement the total could be 6,000 sq. ft. Mr. McGuckin suggested the square feet be limited to include the basement and not the garage. Mr. Josephs felt the totals could be 3600 sq. ft. and Ms. Brunner wanted to limit 4 bedrooms in the entire house; the Tax Assessor could be looking for 4 and finds 6 bedrooms. Mr. Riccardi stated we're talking about now and not what may happen.

Mr. Hudak proposed upgrading the maximum to 4500 sq. ft. with 4 bedrooms total to include the basement. Mr. Flemming confirmed 4 bedrooms total not including the garage bedroom. Dr. Campbell confirmed curbs/sidewalks as a condition of approval. Mr. McGuckin reminded the condition of a deed restriction for the alternate septic system design. Mr. Bressi stated the cesspool changes to the septic are an improvement to the area. **Motion to approve based on the above stipulations and as discussed by BRESSI/Campbell. Yes:** Brunner, Flemming, Campbell, Josephs, Bressi, Hudak, Riccardi

**Motion to adjourn by HUDAK/Campbell. Yes:** All in favor among those present.

Adjourned: 8:41 p.m.

Respectfully submitted,

*Diane Festino*

Diane Festino,
Planning Board Recording Secretary

OBY20666