41034.00107-HBM

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
Howard B. Mankoff, Esq.
Pauline F. Tutelo, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068
☎973-618-4100       📠973-618-0685
✉ hbmankoff@mdwcg.com
✉ pftutelo@mdwcg.com
ATTORNEYS FOR DEFENDANTS – Township of Jackson, New Jersey, Michael Reina, Robert Nixon, Helene Schlegel, Jeffrey Purporo and William Campbell

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**\*\* <u>ELECTRONICALLY FILED</u> \*\***

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, a New York non-profit corporation, and WR PROPERTY LLC, a New Jersey limited liability company, | CASE NO.:  3:17-cv-03226-MAS-DEA |
| Plaintiffs, | Civil Action |
| v. | |
| TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPORO, WILLIAM CAMPBELL, and KENNETH PIESLAK, | |
| Defendants. | |

**DEFENDANTS, TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPORO, AND WILLIAM CAMPBELL'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65**

**TABLE OF CONTENTS**

**Page(s)**

*I.*     **PRELIMINARY STATEMENT** ……………………………………… 1

*II.*    **STATEMENT OF FACTS** …………………………………………………2

      **The Township Passes the Ordinances after Careful Consideration** ………………………..2

      **The Township's Ordinances are found Valid and Enforceable** ………………………..5

      **No Evidence of Bias is Found** ……………………………………………7

      **Discovery Remains Ongoing** …………………………………………………...9

*III.*    **LEGAL ARGUMENT** ……………………………………………………9

      A.    **PLAINTIFFS HAVE NOT MET THE STANDARD FOR MOTION FOR INJUNCTIVE RELIEF, THEREFORE THE MOTION SHOULD BE DENIED** …………………………………………9

      B.    **PLAINTIFFS HAVE NOT MET THE REQUISITE PROOF THAT THEY ARE LIKELY TO PREVAIL EVENTUALLY IN THE LITIGATION** ………………………………………11

            1.    **Plaintiffs have not established the likelihood of success as to any of their claims** …………………………………11

                 a.    **RLUIPA Exclusion and Limits Claims and Equal Terms Claims (Counts VII, VIII, IX)** ……………………………...12

                       i.    **Equal Terms Claim** ……………………………………12

                       ii.    **Nondiscrimination Claim** ……………………………...13

                       iii.    **Exclusions and Limits Claim** ………………………….15

                 b.    **Equal Protection Claims (Counts I and II)** ……………………17

                 c.    **First Amendment Free Exercise Claim (Count III)** …………………20

                 d.    **Establishment Clause (Count IV)** ………………………………….23

                 e.    **Freedom of Association (Count V)** ………………………………..24

                 f.    **Fair Housing Act (Counts X, XI, and XII)** …………………………...25

i

        g.     **Property Rights of Citizens, 42 U.S.C. 1982 (Count XIII)**…………26

        h.     **Law Against Discrimination Claims, <u>N.J.S.A.</u> 10:5-1, et. seq. (Counts XIV and XV)** …………………………………………………27

  **C.**    **PLAINTIFFS HAVE NOT DEMONSTRATED THEY WILL SUFFER AN IMMEDIATE, IRREPARABLE INJURY IF THE INJUNCTION IS NOT ISSUED** …………………………………………28

  **D.**    **PLAINTIFFS CANNOT PROVE AN INJUNCTION WOULD NOT HARM THE DEFENDANTS MORE THAN DENYING RELIEF WOULD HARM THE PLAINTIFFS** ………………………………………31

  **E.**    **THE GRANTING OF THE RELIEF SOUGHT WOULD <u>NOT</u> SERVE THE PUBLIC INTEREST** ………………………………………...34

*IV.*    **CONCLUSION** ……………………………………………………………35

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

Al Falah Ctr.,
　　2013 U.S. Dist. LEXIS 190076 at *41 …………………………………14, 17, 18,. 20, 21, 27, 30

Anderson v. Davilla,
　　25 F.3d 148 (3d Cir. 1997) …………………………………………………………...10

Arlington Heights v. Metropolitan Housing Development Corp.,
　　429 U.S. 252 (1977) …………………………………………………………………..21

Baird v. State Bar of Ariz.,
　　401 U.S. 1 (1971) ……………………………………………………………………..24

Barros v. Wetzel,
　　2017 U.S. Dist. LEXIS 30498 *25 (M.D. Pa. March 2, 2017) ………………………….22, 23

Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,
　　508 U.S. 520 (1993) …………………………………………………………………19, 21

Cleburne v. Cleburne Living Center,
　　473 U.S. 432 (1985) …………………………………………………………………17, 18

Congregation Kol Ami v. Abington Twp.,
　　309 F.3d at 136 …………………………………………………………………...15, 18, 19

Congregation Rabbinical Coll. Of Tartikov, Inc. v. Vill. of Pomona,
　　138 F. Supp. 3d 352 (S.D.N.Y. 2015) ……………………………………………………...24

Doe v. Indian River School Dist.,
　　653 F.3d 256 (3d Cir. 2011) …………………………………………………………..23

Elrod v. Burns,
　　427 U.S. 347 (1976); (Pb at 28) …………………………………………………...28, 29

Fighting Finest, Inc. v. Bratton,
　　95 F. 3d 224 (1996) ………………………………………………………………… 24, 25

First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp.,
    2012 U.S. Dist. LEXIS 25968, *57 (February 29, 2012) ……………………………………18

Fulton v. City of Philadelphia,
    320 F. Supp. 3d 661 (E.D. Pa. 2018) ……………………………………………10, 23, 31

Grace v. United Methodist Church v. City of Cheyene,
    451 F.3d 643 (10th Cir. 2006) …………………………………………………………21

Hohe v. Casey,
    868, F.2d 69 (3rd Cir. 1989) …………………………………………………………..28

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
    882 F.2d 797 (3d Cir. 1989) …………………………………………………………..28

Kessler Inst. For Rehab, Inc. v. Mayor & Council of Borough of Essex Fells,
    876 F. Supp. 641 (D.N.J. 1995) …………………………………………………………27

Kos Pharmaceuticals, Inc. v. Andrx Corp.,
    369 F.3d 700 (3rd Cir. 2004) …………………………………………………………29

Lanin v. Borough of Tenafly,
    515 Fed. Appx. 114 (3rd Cir. 2013) …………………………………………………..28

Lapid Ventures, LLC v. Twp. of Piscataway,
    No. 10-6219 (WJM), 2011 U.S. Dist. LEXIS 63973 (D.N.J. June 12, 2011) …………………..27

LeBlanc-Sternberg v. Fletcher,
    67 F.3d 412 (2d Cir. 1995) …………………………………………………………26

Lemon v. Kurtzman,
    403 U.S. 602, 612 (1971) …………………………………………………………..23

Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch,
    510 F.3d 253 (3rd Cir. 2007) ……………………………………11, 13, 14, 15, 16, 17, 21, 22

Lighthouse Inst. For Evangelism, Inc. v. Long Branch,
    100 Fed. Appx. 70 (3d Cir. 2004) …………………………………………………..17

Lyng v. Northwest Indian Cemetery Protective Ass'n,
    485 U.S. 439 (1988) ……………………………………………………………………..17

Messiah Baptist Church v. County of Jefferson,
    859 F.2d 820 (10th Cir. 1988) ………………………………………………………22

Messner v. Bunner,
    2009 U.S. Dist. LEXIS 42387 (2009) ……………………………………………………29

Mount Holly Citizens In Action, Inc. v. Twp. of Mt. Holly,
    2013 U.S. Dist. LEXIS 88231 (D.N.J., June 24, 2013)…………………………………..27

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
    290 F.3d 578 (3d Cir. 2002) …………………………………………………………..10

NutraSweet Co. v. Vit-Mar Enters., Inc.,
    176 F.3d 151 (3d Cir. 1999) …………………………………………………………..10

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
    920 F.2d 187 …………………………………………………………………………..10

Punnet v. Carter,
    621 F.2d 578 (3rd Cir. 1980) …………………………………………………………..10

Pyler v. Doe,
    457 U.S. 202 (1982) …………………………………………………………………..18

Reilly v. City of Harrisburg,
    858 F.3d 173 (3d Cir. 2017) …………………………………………………………..10

Sovereign Order of Saint John of Jerusalem- Knights of Malta by Coleman v. Messineo,
    572 F. Supp. 983 (E.D. Pa. 1983) ……………………………………………………11

Tenafly Eruv Ass'n v. Borough of Tenafly,
    309 F.3d 144 (3d Cir. 2002)………………………………………………………..10, 25, 26

URI Student Senate v. Town of Narragansett,
    631 F.3d 1 (1st Cir. 2011) …………………………………………………………..24

v

Vasquez v. Brown,
  2008 U.S. Dist. LEXIS 87993 (D.N.J., October 30, 2008) …………………………………29

Village of Euclid v. Ambler Realty Co.,
  272 U.S. 365 (1926) ………………………………………………………………………18

Winter v. Nat. Res. Def. Council, Inc.,
  555 U.S. 7 (2008)…………………………………………………………………………9, 10

## FEDERAL STATUTES

42 U.S.C. 1982 …………………………………………………………………………………..26

42 U.S.C. 3613(a)(1)(A) ………………………………………………………………………25

42 U.S.C.A. § 2000 cc(b)(I); (III) ……………………………………………………………5, 12

42 U.S.C. § 2000cc(b)(1) ……………………………………………………………………..12

42 U.S.C.A. § 2000 cc(b)(II) …………………………………………………………………5

42 U.S.C. § 2000cc(b)(2) …………………………………………………………..13, 14, 15

42 U.S.C. § 2000cc(b)(3)(A) and (B) …………………………………………………………12

## STATE CASES

New York SMSA L.P. v. Bd. of Adjustment of Twp. of Weehawken,
  370 N.J. Super. 319 (App. Div. 2004) …………………………………………8, 14, 15

Sica v. Bd. of Adjustment of Twp. of Wall,
  127 N.J. 152 (1992)…………………………………………………………………6, 7

State v. WSNP, LLC,
  New Jersey Superior Court No. 19-09 (March 20, 2019) …………………………8. 9. 32

## STATE STATUTES

N.J.S.A.
  10:5-1, et. seq. …………………………………………………………………………..27
  10:5-12.5 …………………………………………………………………………………..27

## **MUNICIPAL CODES**

Township of Jackson Code
§ 244-108………………………………………………………………………………... 9
§ 244-115 ………………………………………………………………………………9
§372-8……………………………………………………………………4, 13, 19, 31

Township of Jackson Ordinances

20-17……………………………………………………………………..3, 4, 19, 20, 31

## **U.S. CONSTITUTION**

U.S. Const. amend, XIV ……………………………………………………………………17

## I.   PRELIMINARY STATEMENT

Plaintiffs have filed this Motion for Preliminary Injunction on September 6, 2019. Plaintiffs' Motion is essentially a Motion for Summary Judgment which plaintiffs seek to have granted, despite the fact that no depositions have been taken and a detailed scheduling order was entered on July 19, 2019, providing for discovery to take place up until August 15, 2020.  In this motion, plaintiffs wish to rely upon multiple declarations in support of their motion prior to the defendants having any opportunity to depose these individuals and test statements made in their declarations.

Plaintiffs cannot meet the basic requirement for the relief sought in that they cannot show a likelihood of success on the claims plead, nor that they will suffer immediate and irreparable harm for same.  There has been no judicial determination by any Court that any actions related to any ordinances passed by the Township of Jackson were improper, unconstitutional or needed to be nullified.  There has been no judicial determination by any Court that any actions of the defendants related to Zoning, Planning or integration of any relevant ordinances or statutes were unlawful in any way.  Plaintiffs acknowledge the current State Court matter captioned as <u>Oros Bais Yaakov High School v. The Zoning Board of Adjustment for the Township of Jackson</u>, OCN-L-298-14.  The Court found in that matter the record supported the Board's determination that granting the application of the plaintiff would have substantially undermined the existing characteristics of the rural residential neighborhood and the subject zoning plan.  The Court further found that the Board's

conclusion that the mitigating conditions proposed by plaintiff were not sufficient to tip the balance in the applicant's favor and were not likely enforceable as reasonable and supported by the record.  Similarly, a municipal court also found that enforcement of the ordinance was a valid exercise of municipal police power.  As such, no Court considering the ordinances, interpretation of ordinances, or zoning decisions and other land use determinations of the Township has found that any actions taken by the Township or any individuals unconstitutional or in anyway have violated the rights of the Orthodox Jewish community in Jackson Township.

Accordingly, Plaintiffs' application is without merit and should be denied.

## II.    STATEMENT OF FACTS

This matter arises out of a suit filed by the plaintiffs claiming that the subject ordinances, specifically those identified as 03-17, 04-17 and 20-17 are unconstitutional and prejudicial to the plaintiffs and Orthodox Jewish community.  (Plaintiffs' Second Amended Complaint, annexed to the Certification of counsel as Exhibit A).

### The Township Passes the Ordinances after Careful Consideration

Plaintiffs admit at ¶¶ 90 through 98 that the school ordinances (identified as 03-17 and 04-17) were read for the first time at the Jackson Township Council's January 14, 2017. (Exhibit A, ¶ 91). The school ordinances were placed on the agenda for second reading and adoption at the Township Council meeting on February 28, 2017.  (Exhibit A, ¶ 92).

2

Plaintiffs admit that over 150 Orthodox Jewish township residents appeared at the February 28th meeting in opposition to the school ordinances.  (Exhibit A, ¶ 93).  Plaintiffs admit that many Orthodox Jews spoke against the proposed school ordinances informing the Jackson Township Council of the alleged significant impact they would have the on Orthodox Jewish community.  (Exhibit A, ¶ 94).

Plaintiffs admit that the Township tabled the school ordinances at the meeting indicating it had to be approved as consistent with the Township Master Plan.  (Exhibit A, ¶ 95).   The Township Planning Board approved the adoption of the school ordinances at its March 6, 2017, meeting.  (Exhibit A, ¶ 97).  Plaintiffs admit that a second reading of the school ordinances took place at the Township Council's March 16, 2017, meeting. (Exhibit A, ¶ 98). The Township Council adopted the school ordinances at the March 16, 2017, meeting and notice of the adoption of the school ordinances was published on March 24, 2017.  (Exhibit A, ¶¶ 103-104).

With regard to the ordinance number 20-17, plaintiffs admit that the first reading of the ordinance took place at the Jackson Township Council's August 2017 meeting. (Exhibit A, ¶ 174).  Plaintiffs further admit that the second reading of the ordinance took place at the Township Council's September 12, 2017, meeting.  (Exhibit A, ¶ 175).

Plaintiffs admit that a local news report indicated that "hundreds of Orthodox residents of the Township showed up" at the September 12, 2017, meeting.  (Exhibit A, ¶

176).  Plaintiffs further admit that the Township Council adopted the ordinance at the September 12, 2017, meeting.  (Exhibit A, ¶ 178).

Plaintiffs cite to §372-8 of the Township Code addressing the restriction of obstruction to streets.  Specifically, the ordinance cited "no persons shall encumber or obstruct any street or public place with any article or thing whatsoever unless permission has been first obtained in writing from the Township Committee of the Township of Jackson."  Plaintiffs state that approximately 268 notices of violation of §372-8 of the Township Code were issued to Township residents in the two months of July and August 2017 alone.  (Exhibit A, ¶ 164).

There were 7 notices of violation directly concerning removal of Eruv markers, 3 concerning removal of metal poles and 14 providing no description.  (Exhibit A, ¶ 165).  Plaintiffs further admit that, upon information and belief, approximately 213 of the notices of violation concerning removal of basketball hoops.  (Exhibit A, ¶ 166).  Plaintiffs admit that the preamble to ordinance 20-17 stated that it was being enacted: "in light of the recent spate of enforcement of § 372-8 of the Township Code …which prohibits obstruction of the right of way throughout the Township, the Township Council believes it is necessary to avoid confusion that any possibility of uneven treatment of articles in the Township right-of-way."  (Exhibit A, ¶ 171).

## The Township's Ordinances are found Valid and Enforceable

Plaintiffs reference the 2013 application of the Oros Bais Yaakov High School to the Jackson Township Board of Adjustment for use variance to permit its use.  (Exhibit A, ¶ 258).  Plaintiffs reference that the school filed suit in the Superior Court of New Jersey, Ocean County, against the Board alleging *inter alia* violations of the RLUIPA which is pending.  (Exhibit A, ¶ 264).

Plaintiff filed a Complaint in lieu of prerogative writ in the matter of Oros Bais Yaakov High School v. The Zoning Board of Adjustment the Township of Jackson at Docket Number OCN-L-2981-14. Plaintiff in that matter is challenging the Board's denial of their application by alleging three counts (I) The Board's decision on the application is arbitrary, capricious and unreasonable; (II) The Board's decision to deny plaintiff's request to develop a parochial school in the R-1 Zone but permit development of secular schools in the R-1 Zone violated the Equal Terms Clause, 42 U.S.C.A. § 2000 cc(b)(I); (III) the Board's unequal treatment of plaintiff's application also violated the "nondiscrimination" provision of Religious Land Use and Institutional Persons Act of 2000 (RLUIPA), 42 U.S.C.A. § 2000 cc(b)(II).  The Honorable Marlene Ford, J.S.C. conducted a trial as to the allegations in Count One. The other two counts are currently pending.

Judge Ford issued her opinion on October 19, 2015.  A copy of Judge Ford's Opinion is marked and attached to the Certification of Counsel as Exhibit B.  In this matter, the Court addressed the question as to whether "even if the school as proposed

qualified as an inherently benefit use, whether the school satisfies the negative criteria for D variance, namely, whether granting D variance would result in substantial detriment to the public good and substantial impairment of the Zone Plan and Zoning Ordinance." (Exhibit B, p. 7).  The Court outlined the four-part test required to be applied in that matter pursuant to the Opinion in <u>Sica v. Bd. of Adjustment of Twp. of Wall</u>, 127 N.J. 152 (1992) and provided the following analysis:

In Sica, the Court suggested the following four-part test to balance the positive and negative criteria:

> First, the Board should identify the public interest at stake . . .
>
> Second, the Board should identify the detrimental effect that will ensue from the grant of the variance.  Certain effects, such as an increase in traffic, or 'some tendency to impair residential character, utility or value,' will usually attend any nonresidential use in a residential zone.  When minimal, such an effect need not outweigh an inherently beneficial use that satisfies the positive criteria.
>
> Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions.
>
> Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
>
> [<u>Sica</u>, supra, 127 N.J. at 165-66]
>
> (Exhibit B, p.11-12).

The Court found that the record supported the Board's determination that granting the application would substantially undermine the existing characteristics of the rural residential neighborhood and Zone Plan.  The Court further found that the Board's conclusion that mitigating circumstances as proposed by plaintiff were not sufficient to tip the balance in applicant's favor, not likely enforceable is reasonable and supported by the record.  (Exhibit B, ¶ 16).  Judge Ford also noted that the Board conducted five hearings, considered the testimony of various experts and witnesses and reviewed the documentation submitted by plaintiffs, an objector and the public.  Thereafter the Board articulated the basis of its determination and resolution.  (Exhibit B, p. 16). The Court found that the "Board successfully conducted the <u>Sica</u> balancing test and provided an analysis of each required portion of the <u>Sica</u> test.  (Exhibit B, p. 17-19).

### No Evidence of Bias is Found

The Court found plaintiff's bias argument without merit. (Exhibit B, p. 22). The Court further found that "the resolution and the findings contained therein do not suggest or indicate that the Board member's deliberations were influenced by any testimony that was tainted by prejudice or bias.  Therefore, the record does not support a finding that the Board treated plaintiffs' proofs and expert evidence with improper impartiality**."** (Exhibit B, p. 22).

Judge Ford further addressed claims of bias in the Board's decision stated that "there is no evidence that bias played any part in the determination of the Board or that the

Board relied on testimony tainted by bias in making its determination memorialized in the resolution." (Exhibit B, p. 21-22).   Judge Ford further stated, "such remarks, at best, reflect the beliefs of the speaker and cannot be assumed to represent the findings of an entire Board.  Moreover, because such remarks represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact.  It is a resolution, not Board Members' deliberations, that provides the statutorily required findings of facts and conclusions.  New York SMSA L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 333-34 (App. Div. 2004)." (Exhibit B, p. 22).

Not limited to Judge Ford's decision in Oros, the ordinance enforcement of the Township have been found legally enforceable on both the Municipal Court and Superior Court level when reviewed for violation in other situations.  For example, in State v. WSNP, LLC, New Jersey Superior Court No. 19-09 (March 20, 2019), the Superior Court addressed the appeal of a municipal court decision finding defendant homeowner was in violation of the ordinance based upon the improper use of his home, which was zoned as a residential property, as a place of assembly. [Exhibit C, March 20, 2019 Statement of Reasons]  There, Defendant was charged with using the property as a place of worship without first obtaining approval of the Zoning Board. Id. at 3.  The Court denied the defendant property owners appeal, finding the ordinance was properly enforced by the Township.  In doing so, the court noted:

> In order to use R-1 residences for one of these conditional uses,
> the owner of the property must follow procedural requirements of

8

§ 244-108 and § 244-115. <u>Anyone seeking to use their property for one of the listed conditional uses must submit an application to the Jackson Planning Board for review § 244-108. The numerous procedural requirements listed are intended to insure a balance between arising uses, activities, or structures that may be necessary in the residential zone to maintain the overall welfare of the area.</u> <u>Id.</u>

[WSNP, LLC No. 19-09 at * 6-7 (emphasis in original)]

## **Discovery Remains Ongoing**

In the present matter, the Court entered a Scheduling Order in this matter on July 19, 2019 which provides for discovery to take place through August 15, 2020 and provides a dispositive motion deadline of December 1, 2020. [July 19, 2019 Scheduling Order, annexed to the Certification of Counsel as Exhibit D]

## II.  **LEGAL ARGUMENT**

### A.   **PLAINTIFFS HAVE NOT MET THE STANDARD FOR MOTION FOR INJUNCTIVE RELIEF, THEREFORE THE MOTION SHOULD BE DENIED.**

The standard for issuing injunctive relief involves a four-pronged analysis. Plaintiffs seeking a preliminary injunction must establish: (1) that they are likely to prevail eventually in the litigation; (2) that they will suffer an immediate, irreparable injury if the injunction is not issued; (3) that an injunction would not harm the defendant more than denying relief would harm the plaintiff; and, (4) that granting relief would serve the public interest. <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed.

2d 249 (2008); Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (internal quotation marks and citations omitted.) The movant bears the burden of establishing each of these four factors. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." Anderson v. Davilla, 125 F.3d 148, 156 (3d Cir. 1997); Punnet v. Carter, 621 F.2d 578, 582 (3rd Cir. 1980) (noting "when the preliminary injunction is directed not merely at preserving the status quo but. . . at providing mandatory relief, the burden on the moving party is particularly heavy."). The "failure to establish any element... renders a preliminary injunction inappropriate." NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999).

"The Third Circuit has explained that the first two factors of this analysis – likelihood of success on the merits, and irreparable harm – act as 'gateway factors.'" Fulton v. City of Philadelphia, 320 F. Supp. 3d 661, 675 (E.D. Pa. 2018) (quoting Reilly v. City of Harrisburg, 858 F.3d 173, 180 (3d Cir. 2017)). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id.

Courts have recognized preliminary injunctions inappropriate where there are questions of fact and where the record is undeveloped.  See e.g., Sovereign Order of Saint John of Jerusalem- Knights of Malta by Coleman v. Messineo, 572 F. Supp. 983, 990 (E.D. Pa. 1983) (noting "[t]he existence of a factual conflict or of difficult questions of law may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction."); Lighthouse, 510 F. 3d at 257 (citing Lighthouse Inst. For Evangelism, Inc. v. Long Branch, 100 Fed. Appx. 70 (3d Cir. 2004) ("Lighthouse I") (affirming the denial of plaintiffs' preliminary injunction, noting the "sparse record" was insufficient to "make the kind of factual showing necessary to establish a likelihood of success on the merits.)

Considering each of the preliminary injunction elements in turn, it is clear that the Plaintiffs have not demonstrated a right to a preliminary injunction and, therefore, the plaintiffs' motion should be denied with prejudice.

**B.   PLAINTIFFS HAVE NOT MET THE REQUISITE PROOF THAT THEY ARE LIKELY TO PREVAIL EVENTUALLY IN THE LITIGATION.**

**1.   Plaintiffs have not established the likelihood of success as to any of their claims**

This Court has already decided that the decision of the Zoning Board was not motivated by bias. The plaintiffs now want the court to reverse that decision without allowing the defendant to test the credibility of the plaintiffs' witnesses.  Plaintiffs place a great deal of emphasis on external statements and events, many of which occurred after the

11

ordinance was passed and therefore lack any proximal relationship, without establishing that these statements have any relationship to the challenged ordinances.

As applied to the present matter, the very determination upon which plaintiffs' claims rest – whether the zoning decisions were based on a discriminatory animus – is inherently a question of fact for a jury, and is therefore inappropriate for injunctive relief at this stage.   Plaintiffs have not cited to any judicial determination that any decisions made by the Township of Jackson or any defendants were biased, incorrect, or invalidated by any Court.  In fact, the only decisions made by a Court concerning actions allegedly effecting the Orthodox Jewish community have found in favor of the Zoning Board of Adjustment for the Township of Jackson.  (Exhibit B, Exhibit C). Nonetheless, the plaintiffs' claims are addressed, in turn, below.

### a.   RLUIPA Exclusion and Limits Claims and Equal Terms Claims (Counts VII, VIII, IX)

Plaintiffs have not established that they have been discriminated against in violation of RLUIPA.  Plaintiffs' complaint alleges violations of the RLUIPA nondiscrimination provision, 42 U.S.C. § 2000cc(b)(1); Exclusions and Limits provision, 42 § U.S.C. 2000cc(b)(3)(A)and (B); and the Equal Terms provision, 42 § U.S.C. 2000cc(b)(1).

### i.   Equal Terms Claim

In order to establish a violation of the Equal Terms section of RLUIPA, a plaintiff must establish "(1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats religious assembly on less than equal terms with (4)

a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance." Lighthouse, 510 F.3d at 270. In order to make this showing "a religious plaintiff under the Equal Terms Provision must identify a better-treated secular comparator that is similarly situated in regard to the objectives of the challenged regulation. Id. at 268.

Here, Plaintiffs' contention in their brief that "the Challenged Ordinances and the Township's enforcement actions treat religious assemblies on less than equal terms than non religious assemblies or institutions" (Pb., 26) is self contradictory as they have admitted in the Second Amended Complaint as to §372-8 of the Township Code addressing the restriction of obstruction to streets that seven of the approximately 268 notices of violation of §372-8 of the Township Code were issued to Township residents in the two months of July and August 2017 directly concerned the removal of Eruv markers. (Exhibit A, ¶ 164-166) (emphasis added).

### ii.    Nondiscrimination Claim

RLUIPA's nondiscrimination provision provides that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc (b)(2). In order to establish a violation of RLUIPA's nondiscrimination clause, Plaintiffs must demonstrate" "(1) it is an assembly or institution, (2) subject to a land use regulation, (3) which has been imposed or implemented in a manner that discriminates on the basis of

13

religion." <u>Al Falah Ctr</u>., 2013 U.S. Dist. LEXIS 190076 at *41 (quoting U.S.C. § 2000cc(b)(2)))

In the present matter, plaintiffs have not established the likelihood of success on their RLUPA claims, because, similar to <u>Lighthouse</u>, plaintiffs have not presented no evidence that they were treated on discriminatory terms on the basis of their religion. Defendants zoning practices were already considered by the Superior Court of New Jersey and found to be legal and enforceable.  Indeed, the only other judicial determination of this issue, wherein Judge Ford found:

> Plaintiff argues that the comments from the Board members . . . as well as the Board's planner at the hearing were biased. <u>Nevertheless, there is no evidence that bias played any part in the determination of the Board or that the Board relied on testimony tainted by bias in make its determination memorialized in the Resolution.</u>
>
> Such remarks at best reflect the beliefs of the speaker and cannot be assumed to represent the findings of an entire Board. Moreover, because such remarks represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact.  It is the resolution, and not the board members' deliberations that provides the statutorily required findings of fact and conclusions." <u>New York SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken</u>, 370 N.J. Super. 319, 333-34 (App. Div. 2004).
>
> [Ex. B, at p. 22 (emphasis added)]

Accordingly,  Judge Ford found that the resolution at issue and the findings contained did not suggest or indicate that the Board members deliberations were influenced by any testimony that was tainted by prejudice or bias.  <u>Id.</u>

14

Similarly, here, there is no evidence that the Township acted on the basis of any alleged discriminatory statements of citizens.  The same findings of Judge Ford in Oros are controlling and applicable to the determinations in this matter.  As articulated in New York SMSA, the statements highlighted by plaintiffs, at best, reflect "informal verbalizations of the speaker's transitory thoughts" and do not constitute findings of fact establishing discrimination.  Simply because plaintiffs are unhappy with the zoning determinations is insufficient to render them unconstitutional or unenforceable.  See Congregation Kol Ami, 309 F.3d at 136 (recognizing that municipalities have authority to make distinctions between zoning uses and, "zoning is by its very design discriminatory, and that alone, does not render it invalid.").

### iii.    Exclusions and Limits Claim

RLUIPA's Exclusion and Limits provision provides that "no government shall impose or implement a land use regulation that -- (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(2).

The Third Circuit's decision in Lighthouse supports the denial of plaintiffs' motion in the instant matter.  Lighthouse addressed the question of whether a municipality may exclude religious institutions from a zone, where some secular institutions were permitted, without violating RLUIPA or the Free Exercise Clause. Lighthouse, 510 F. 3d. at 256. The plaintiffs in Lighthouse challenged a zoning Plan which allowed non-religious

assemblies, such as theaters and bars, to build in the zoned area, but excluded churches from the area. Id. at 258.  The challenged Plan sought to redevelop the segment of the city, with the goal of fostering increased commerce to the downtown entertainment district. Id. at 270.  In excluding churches from the Plan, defendant reasoned that churches are not likely to develop the kind of extended hours traffic to facilitate this goal. Id. The Third Circuit held that the township's exclusion of religious institutions from the zone did not violate RLUIPA because the underlying purpose of the Plan were well documented, and plaintiff "placed no evidence in the record that the Plan treats a religious assembly on less than equal terms with a secular assembly that would cause an equivalent negative impact on [defendant's] regulatory goals." Id. at 271.

Lighthouse further supports that, at a minimum, this matter involves a question of fact which is inappropriate for injunctive relief at this stage. Indeed, while the Third Circuit in Lighthouse granted defendants' motion for summary judgment as to the Zoning Plan, it denied denied defendants' motion as to the challenged ordinance, and remanded for further consideration, reasoning that the record before it was insufficient to determine whether the ordinance treated religious institutions on less than equal grounds than secular institutions, as the purpose of the Ordinance was not well documented at that juncture.  Id. at 272-73.  Accordingly, this type of inquiry is best addressed after the parties have had the opportunity to conduct discovery and create the appropriate record.

Nonetheless, at a bare minimum, because plaintiffs cannot establish that they were discriminated against in violation of the RLUIPA because this Court has recognized that discriminatory animus involved questions of fact which cannot be inferred as a matter of law.  See Al Falah, 2013 U.S. Dist. LEXIS at *42 (noting "the Court cannot determine as a matter of law that Plaintiff has not been subjected to discrimination"); Lighthouse I, 100 Fed. Appx. At 75) (affirming the denial of plaintiffs' preliminary injunction, noting the "sparse record" was insufficient to "make the kind of factual showing necessary to establish a likelihood of success on the merits."))

### b.    Equal Protection Claims (Counts I and II)

"A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Lighthouse, 510 F.3d at261 (quoting Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988)).   Here, where discovery is ongoing, reaching constitutional questions is premature at this stage, and inappropriate for injunctive relief. Nonetheless, similar to the above, plaintiffs have failed to establish a reasonable likelihood of success as to their Equal Protection and other constitutional claims.

Pursuant to the Equal Protection clause of the Fourteenth Amendment "[n]o state . . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend, XIV.   The Equal Protection Clause of the United States Constitution provides that "all persons similarly situated should be treated alike." Cleburne v. Cleburne

17

Living Center, 473 U.S. 432, 439 (1985) (citing Pyler v. Doe, 457 U.S. 202, 216 (1982)). In order to prevail on their Equal Protection claims, plaintiffs must demonstrate that they were treated differently from other similarly situated parties.

Analysis of equal protection claims is guided by the "well-established principle that, in the federal Constitutional universe, federal courts accord substantial deference to local government in setting land use policy[.]" Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 125 (3rd Cir. 2002). "This deference, however, is not boundless." Al Falah, 2013 U.S. Dist LEXIS 190076 at *24-25. "Where the government creates distinctions between similarly situated uses that are not rationally related to a legitimate state goal, then the Court is free to 'upset' the land use policy." Id. (citing Congregation of Kol Ami, 309 F.3d at 120)). Nonetheless, "[t]he inclusion of a reasonable margin to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity." First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp., 2012 U.S. Dist. LEXIS 25968, *57 (February 29, 2012) (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 388-89 (1926)).

Courts consider, among other things, "direct and circumstantial evidence[,]" including "historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision making body." Al Falah, 2013 U.S. Dist. LEXIS 190076  * 29-30 (quoting

18

<u>Church of Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 508, 540 (1993)).

However, Courts have nonetheless explicitly recognized that:

> A necessary corollary of the extensive zoning authority is bestowed upon local municipalities, including the authority to create exclusively residential districts, is the authority to make distinctions between different uses and to exclude some uses within certain zones. <u>Indeed, zoning is by its very design discriminatory, and that alone, does not render it invalid.</u>
>
> [<u>Congregation Kol Ami</u>, 309 F.3d at 136 (emphasis added)]

"As long as a municipality has a rational basis for distinguishing between uses, and that distinction is related to the municipality's legitimate goals, then federal courts will be reluctant to conclude that the ordinance is improper." <u>Id.</u>

As noted above, the fact that only seven of the 268 notice of violations concerned Eruv markers does not support the plaintiffs position that there was treatment of the Orthodox Jewish Community on less than equal terms than non religious assemblies or institutions. Plaintiffs have not provided any proofs that any citations related to Eruv markers were improperly issued.

Not only is deference given to such zoning determinations, but the Township has demonstrated a legitimate purpose for enacting and enforcing the ordinance. The preamble to ordinance 20-17 stated that it was being enacted: "in light of the recent spate of enforcement of § 372-8 of the Township Code …which prohibits obstruction of the right of way throughout the Township, the Township Council believes it is necessary to avoid confusion that any possibility of uneven treatment of articles in the Township right-of-

way." (Exhibit A, ¶ 171).   Plaintiffs have presented no evidence to support their

contention that ordinance 20-17 was enacted with a discriminatory purpose.

Plaintiffs' Second Amended Complaint admits that the school ordinances and the

Eruv ordinance, were read multiple times at Township meetings as required.   Plaintiffs

admit that the Orthodox Jewish community had a substantial turnout to voice their

concerns.   There is no evidence presented in the application that any member of the

Orthodox Jewish community was not allowed to attend any relevant Township meetings.

There is no evidence that the plaintiffs or any members of the Orthodox Jewish community

was not allowed to present their views at any meeting.   Therefore, the process was

followed appropriately and plaintiffs simply do not like the outcome.   Plaintiffs'

dissatisfaction with the outcome resulting in the passing of the ordinances which are the

subject of this Complaint is not a grounds for a cause of action against the defendants and

certainly not a grounds for the injunctive relief sought in their motion.

On this basis, plaintiffs have failed to establish a reasonably probability of success

as to their Equal Protection Claims.

### c.    First Amendment Free Exercise Claim (Count III)

Plaintiffs have failed to demonstrate a reasonable likelihood of success as to their First

Amendment Free Exercise claims.   "Pursuant to the Free Exercise Clause of the First

Amendment of the United Stated Constitution, made applicable to local government by the

Fourteenth Amendment, no law may prohibit the free exercise of religion." Al Falah Ctr.,

2013 LEXIS 190076 at *20 (citing <u>Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch</u>, 510 F.3d 253, 273 (3rd Cir. 2007). "A regulation does not automatically cease being neutral and generally applicable, however, simply because it allows certain secular behaviors but not certain religious behaviors." <u>Lighthouse</u>, 510 F.3d at 265.

Plaintiffs have not established that defendants acted with discriminatory intent, a key component of proving the success on the merits of its Free Exercise claim.  In free exercise claims, courts look to "direct and circumstantial evidence." <u>Church of Lukumi Babalu Aye v. City of Hialeah</u>, 508 U.S. 520, 540 (1993) (citing <u>Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 266 (1977)).

In <u>Lighthouse</u>, where a church was precluded from developing in a small downtown area zoned for commercial and economic use, the court found no Free Exercise violation, noting the church failed to present any evidence that this zoning decision constituted "a restriction on its religious exercise, as opposed to a simple economic inconvenience[.]" 510 F.3d at 273.  The court further found, "even if [plaintiff] had alleged a constitutionally cognizable burden on its religious exercise, the Plan is a neutral regulation of general applicability subject only to rational basis review, which it survives." <u>Id.</u>.  Indeed, mere inconvenience is insufficient to meet this burden, as:

> [W]hen the plaintiff does not show that locating its premises in a particular location is important in some way to its religion . . . there is no constitutionally cognizable burden on free exercise. <u>See Grace v. United Methodist Church v. City of Cheyene</u>, 451 F.3d 643, 654 (10th Cir. 2006) (inability on the part of a church to open a day care center in a particular district did not constitute 'more

than an incidental burden on religious conduct."); <u>Messiah Baptist Church v. County of Jefferson</u>, 859 F.2d 820, 824-25 (10th Cir. 1988) ("[a] church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases;" it did not matter that the zoning regulations at issue had the incidental effect of making the church's exercise of religion more expensive because it was compelled to build elsewhere in the county).

[<u>Lighthouse</u>, 510 F.3d at 274.]

As applied here, analogous to <u>Lighthouse</u>, plaintiffs have failed to demonstrate that the Ordinances constitute a restriction on their religious exercise in violation of the First Amendment's Free Exercise Clause, rather than a mere inconvenience.  Indeed, Plaintiffs have cited to statements made by certain Orthodox Jewish residents that their children must attend school in Lakewood which is a 45 minute commute each way.  There is no evidence in the record to establish how exactly a forty-five minute commute constitutes a substantial burden on the exercise of religion.   While this commute mere inconvenience, our courts have explicitly recognized this is insufficient to establish a violation of RLUIPA.

While, based on the above, it is apparent that plaintiffs have failed to meet their burden in establishing the likelihood of success on the merits for their Free Exercise claim, and plaintiffs' motion should be denied on that basis alone, at a very minimum, plaintiffs' motion should be denied based on the scarce record in which discovery is still ongoing. Courts have been reluctant to grant injunctive relief when there are disputes of material fact. See e.g., <u>Barros v. Wetzel</u>, 2017 U.S. Dist. LEXIS 30498 *25 (M.D. Pa. March 2,

2017) (acknowledging that the deprivation of First Amendment rights constitutes irreparable harm, but nonetheless holding "on the record before us, we are unable to conclude that [plaintiff] has established a likelihood of success on the merits of his claims, particularly because there remains a genuine dispute of material fact . . .").

As such, injunctive relief is inappropriate because there are disputed facts as to whether defendant acted with discriminatory intent.

### d.   Establishment Clause (Count IV)

Plaintiffs have failed to articulate any basis for an Establishment Clause violation. "The First Amendment to the U.S. Constitution provides that 'there should be no law respecting an establishment of religion.'" Fulton v. City of Philadelphia, 320 F. Supp. 3d 661, 690 (E.D. Pa. 2018) (quoting Lemon v. Kurtzman, 403 U.S. 602, 612 (1971)).  There are two tests for evaluating an establishment clause claim – "the endorsement test" and the "Lemon test." Fulton, 320 F. Supp. 3d at 690 (quoting Doe v. Indian River School Dist., 653 F.3d 256, 282-83 (3d Cir. 2011)).  In the present matter, plaintiffs brief and complaint fail to articulate how defendants conduct has violated the Establishment Clause under either of these tests, and does not offer any supporting analogous case law for its claim

Here, for the same reasons articulated above, plaintiffs have failed to demonstrate a reasonable likelihood of success on their Equal Protection Claim.   Neither ordinance prohibits plaintiff from practicing its religion.  Plaintiff has failed to establish that any of the actions taken by defendants were motivated by discriminatory motive.  In fact, as noted

above, the only judicial determination considering these actions found that there was no evidence of bias or discriminatory motive.   Plaintiffs have not established that they are unable to practice their religion, and contentions that they have been inconvenienced with respect to same is insufficient to establish constitutional harm.

Accordingly, plaintiffs have failed to establish a reasonable likelihood of success on the merits as to all of their claims, this one included. As such, plaintiffs' instant motion for injunctive relief should be denied.

### e.    Freedom of Association (Count V)

The First Amendment protects the Freedom of Association. Congregation Rabbinical Coll. Of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352, 429 (S.D.N.Y. 2015) (citing Baird v. State Bar of Ariz., 401 U.S. 1, 6 (1971)).  "The Supreme Court has 'identified two types of 'freedom of association' that merit constitutional protection: (i) 'choices to enter into and maintain certain intimate human relationships' and (ii) association 'for the purpose of engaging in those activities protected by the First Amendment." Id. (quoting URI Student Senate v. Town of Narragansett, 631 F.3d 1, 12-13 (1st Cir. 2011)).   "'To be cognizable, the interference with associational rights must be direct and substantial or significant,' rather than simply make it 'more difficult' for Plaintiffs 'to exercise their freedom of association." Tartikov, 138 F. Supp. 3d at 430 (citing Fighting Finest, Inc. v. Bratton, 95 F. 3d 224, 228 (1996)).

As applied here, plaintiffs have not alleged "substantial or significant" interference with the practice of their religion.  As noted by <u>Fighting Finest</u>, making the practice of religion "more difficult" is insufficient to establish a Constitutional violation.  Moreover, as noted above, inconvenience is similarly insufficient to establish a Constitutional violation.   As noted above, plaintiffs have not alleged "substantial or significant" interference with the practice of their religion.  As such, plaintiffs have not established a likelihood of success as to this claim.

### f.    Fair Housing Act (Counts X, XI, and XII)

In order to establish a claim under the Fair Housing Act, Plaintiff must establish that they are "'aggrieved persons,' 42 U.S.C. 3613(a)(1)(A), which in this context means victims of 'a discriminatory housing practice that 'makes unavailable or denies' housing to them based on their religion.'" <u>Tenafly Eruv Ass'n v. Borough of Tenafly</u>, 309 F.3d 144, fn. 13 (3rd Cir. 2002).  The <u>Tenafly</u> court denied plaintiffs' Fair Housing claim, where plaintiffs' challenged the removal of an eruv, noting "while plaintiffs claim that the Borough wants to remove the eruv to discourage Orthodox Jews from moving into town, they do not claim that removing the eruv would make housing within the Borough ;unavailable' to them." <u>Id.</u> at fn 13. The court furthered:

> "[t]o our knowledge, no court has stretched the 'make
> unavailable or deny' language of 3604(a) to encompass actions
> that both (2) do not actually make it more difficulty (as opposed
> to less desirable) to obtain housing and (2) do not directly
> regulate or zone housing or activities within the home."

> [Tenafly, 309 F.3d at fn. 13 (citing LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995))]

As applied here, plaintiffs have not been deprived a right to housing.  Nothing in plaintiffs' complaint or brief states that they have been unable to obtain housing.  Plaintiffs' instant motion provides no support for this claim.  Plaintiffs have not, in any way, been precluded from obtaining housing based upon their religious beliefs.  As such, Plaintiffs have not established their likelihood of success as to this claim.

### g.    Property Rights of Citizens, 42 U.S.C. 1982 (Count XIII)

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real estate and personal property." 42 U.S.C. 1982.  Plaintiffs brief does not assert how plaintiff satisfies this claim.

This claim fails for the same reason as plaintiffs' FHA claim.   Plaintiffs have not been deprived of a property right.  They have not been denied the opportunity to own property in Jackson Township.  Similar to the above noted reasons, mere inconvenience is insufficient to amount to a deprivation of Constitutional rights, and plaintiffs have not established that they were deprived of a property right.  Accordingly, plaintiffs have failed to establish the success on the merits of this claim.

### h.    Law Against Discrimination Claims, <u>N.J.S.A.</u> 10:5-1, et. seq. (Counts XIV and XV)

Plaintiffs New Jersey Law Against Discrimination claim should be denied for lack of jurisdiction, and as such, does not prevail on the merits.  Notably, Plaintiffs brief fails to state the legal standard plaintiffs must satisfy, nor does it provide how plaintiffs have satisfied said standard.  As such, plaintiffs have not established a reasonable likelihood of success on the merits as to this claim.

In <u>Al Falah</u>, this Court dismissed the plaintiffs New Jersey Law Against Discrimination claim for lack of jurisdiction.  In doing so, this Court reasoned:

> Three District of New Jersey cases have explored this issue and the Court here will follow those decisions.  <u>See</u> <u>Kessler Inst. For Rehab, Inc. v. Mayor & Council of Borough of Essex Fells</u>, 876 F. Supp. 641, 644-65 (D.N.J. 1995) (dismissing a plaintiff's NJLAD claim for lack of subject matter jurisdiction because N.J. Stat. Ann. 10:5-12.5 [which makes] it unlawful for a municipality to discriminate in its land use and housing policy, requires those claims to be brought in New Jersey Superior Court. . ."); <u>Mount Holly Citizens In Action, Inc. v. Twp. of Mt. Holly</u>, No. 08-2584 (NLJ) (citations omitted); <u>Lapid Ventures, LLC v. Twp. of Piscataway</u>, No. 10-6219 (WJM), 2011 U.S. Dist. LEXIS 63973 (D.N.J. June 12, 2011).
>
> [<u>Al Falah</u>, 2013 U.S. Dist. LEXIS 190076, *59]

The same outcome is appropriate here, as the Court lacks jurisdiction over the plaintiffs' NJLAD claim, and plaintiffs have failed to provide any support for this claim in their brief supporting this motion.  As such, plaintiffs have not established the success on the merits as to this claim.

27

Based on the above, plaintiffs cannot sustain their burden to show that they are likely to prevail eventually in the litigation when (1) the cannot cite to any determination of a Court of any wrongdoing by the defendants in any land use/planning matters effecting the Orthodox Jewish community and (2) Judge Ford evaluated similar claims in the <u>Oros Bais</u> matter and ruled in favor of the Planning Board.

### C.   PLAINTIFFS HAVE NOT DEMONSTRATED THEY WILL SUFFER AN IMMEDIATE, IRREPARABLE INJURY IF THE INJUNCTION IS NOT ISSUED.

Plaintiffs have failed to establish the irreparable harm element of the preliminary injunction requirements because the purported harms articulated in their instant motion are insufficient to meet their burden under this element.   In order to establish irreparable harm, it is Plaintiffs burden to demonstrate that they will suffer harm which "cannot be redressed by a legal or equitable remedy following trial." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir. 1989) (noting, "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm.).  This requires a "clear showing of immediate irreparable injury."  <u>Lanin v. Borough of Tenafly</u>, 515 Fed. Appx. 114, 117 (3rd Cir. 2013) (quoting <u>Hohe v. Casey</u>, 868, F.2d 69, 71 (3rd Cir. 1989)). Notably, "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction[.]" <u>Id.</u> (quoting <u>Hohe</u>, 868, F.2d at 73).

Plaintiffs' relies on <u>Elrod v. Burns</u> for the proposition that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

427 U.S. 347, 373 (1976); (Pb at 28).  However, Elrod is distinguishable from the present

matter.   Elrod involved the determination of "whether public employees who allege that

they were discharged or threatened with discharge solely because of their partisan political

affiliation or nonaffiliation state a claim for deprivation of constitutional rights secured by

the First and Fourteenth Amendments." Elrod, 427 U.S. at 349.  By contrast, the record in

the present case contains no such extreme deprivation of Constitutional rights. As noted

above, plaintiffs have not proven that they cannot reside in Jackson Township and continue

to practice their religion and educate their children in accordance with same.

Plaintiffs' mere assertion of First Amendment or other Constitutional violations is

insufficient to warrant the extreme remedy of injunctive relief where Plaintiff has failed to

establish the likelihood of success on the merits as to these claims.  Vasquez v. Brown, 2008

U.S. Dist. LEXIS 87993 (D.N.J., October 30, 2008) (citing Kos Pharmaceuticals, Inc. v.

Andrx Corp., 369 F.3d 700, 708 (3rd Cir. 2004)) (finding "where a plaintiff has failed to

demonstrate a probability of success on the merits, the mere invocation of a risk to free

exercise will not satisfy a movants burden of establishing that he is entitled to the

'extraordinary remedy' of injunctive relief"); see also, Messner v. Bunner, 2009 U.S. Dist.

LEXIS 42387 (2009) (denying a motion for preliminary injunction where "[t]he plaintiff

cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary

injunction, because the ultimate issue presented will be decided by this court, upon

consideration of defendants' motion to dismiss, or at trial.").

Additionally, the present matter is distinguishable from Al Falah Ctr., 2013 LEXIS 190076, wherein this Court found plaintiffs suffered irreparable harm, and granted their preliminary injunction.  The plaintiff in Al Falah sought to purchase property to build a mosque, however, plaintiffs' application was denied.  Id. at *4. Following the denial of plaintiffs' application, an ordinance was passed precluding the development of a mosque in the zone where plaintiffs' property was located, which plaintiffs contend was motivated by discriminatory animus. Id.   Plaintiffs thereafter sought injunctive relief, which this Court granted.  This Court found plaintiffs established irreparable harm because plaintiffs were "without a permanent spiritual home[,]" which, in conjunction with other factors, made it "nearly impossible for [plaintiff] and its individual members to adhere to the tenants of their religion." Id. at 62.

Here, unlike the plaintiffs in Al Falah, plaintiffs in the present matter are not without a permanent spiritual home.  Plaintiff has not cited to any examples of any Orthodox Jewish family who is unable to live in Jackson Township given the passing of the ordinance at issue.  No individuals have proven that they are unable to educate their children while maintaining a residence in Jackson Township.  Plaintiffs have principally cited to statements made by certain Orthodox Jewish residents that their children must attend school in Lakewood, which they say is a 45 minute commute each way.  While this may be an inconvenience to plaintiffs, inconvenience alone is insufficient for plaintiff to meet their burden under this element. Accordingly, Plaintiff is unable to establish the

preliminary harm requirement and Defendants respectfully request their instant motion be denied.

As noted above, plaintiffs are unable to establish the "gateway factors" of preliminary injunctive relief because they have failed to articulate the likelihood of success as to their claims, nor have they established they will suffer immediate, irreparable harm warranting injunctive relief. See Fulton, 320 F. Supp. 3d at 675.  Nonetheless, the remaining two factors are considered below.

### D.   PLAINTIFFS CANNOT PROVE AN INJUNCTION WOULD NOT HARM THE DEFENDANTS MORE THAN DENYING RELIEF WOULD HARM THE PLAINTIFFS.

Issuance of the preliminary injunction in the present matter would be more harmful to defendants than the denial of same would be to plaintiffs.  As noted above, plaintiffs have failed to proffer anything more than inconvenience in support of the harms they allege.  This is insufficient to warrant injunctive relief.

By contrast, if the injunction is granted in the present case, defendants will be barred from enforcing ordinances which were put into place for the public benefit. The preamble to ordinance 20-17 stated that it was being enacted: "in light of the recent spate of enforcement of § 372-8 of the Township Code …which prohibits obstruction of the right of way throughout the Township, the Township Council believes it is necessary to avoid confusion that any possibility of uneven treatment of articles in the Township right-of-

way." (Exhibit A, ¶ 171).   This Ordinance implicates, by its very nature, important considerations of public safety.

Additionally, should defendants be precluded from enforcing the school ordinance, defendants would be harmed as the underlying zoning plan would be undermined.  This same type of harm was recognized by Judge Ford in <u>Oros</u>:

> [B]y reviewing the Board's findings of fact and reasoning in light of the status and case law, the court finds that the record supports the Board's determination that granting the application would <u>substantially undermine the existing characteristic of the rural residential neighborhood and the zone plan</u>.

> [Ex. B (emphasis added)]

It was further recognized in WSNP, LLC, wherein, in enforcing the validity of the Township's enforcement of the ordinance recognized:  "<u>the numerous procedural requirements listed are intended to insure balance between arising uses, activities, or structures that may be necessary in the residential zone to maintain the overall welfare of the area.</u>"  <u>WSNP, LLC</u>, No. 19-09 at *6-7 (emphasis in original).

In the instant matter, while plaintiffs have failed to establish they will suffer any form of immediate and irreparable injury, defendants will be disproportionately harmed by the failure to enforce the ordinances as the underlying characteristic of the neighborhood zoning plans stands to be substantially undermined.  Defendants have a strong interest in maintaining the overall welfare of the area for the public benefit, which is accomplished through the enforcement of its zoning ordinances.   Should the Township be precluded

from enforcing these ordinances, the Township will be precluded from serving this important function.

Furthermore, the defendants, by plaintiffs' own admission, followed the proper procedures in reference to passing the subject ordinances. The appropriate readings were held. The Orthodox Jewish community was permitted to attend the readings and to comment. Thereafter, the Township made a decision, through the appropriate procedures, to adopt the ordinances. There has been no citation in the plaintiffs' brief to any deviations from the standard procedure for the proposal, consideration and passing of the subject ordinances. The defendants would be greatly harmed by a preliminary injunction as it would prevent the implementation of the subject ordinances which were properly considered and passed pursuant to Township procedures.

The Township and its citizens certainly would be harmed by the relief sought, enjoining each of the defendants from enforcement and application of the subject ordinances, as the Township and its residents should be able to rely upon implementation of an ordinance properly considered and passed. The relief sought by the plaintiffs in this application, if granted, would have a chilling effect on the ability of the Township to conduct its business and pass appropriate ordinances. While the defendants believe there is no merit to the plaintiffs' claims, they stand willing and able to defend the actions taken by the Township in the passing of these ordinances. It would be extremely prejudicial to the defendants to prevent the Township from enforcing certain ordinances without the

ability to conduct full and complete discovery concerning the allegations alleged against the defendants.  Plaintiffs state in their Brief that they are "simply asking for an order directing the Township to cease enforcement of ordinances that violate statutory and constitutional provisions and suppresses religious freedom."  A Township should not be prevented from enforcing ordinances properly passed simply based upon allegations of plaintiffs in a lawsuit.  This cannot be permitted and the relief sought should be denied.

### E.   THE GRANTING OF THE RELIEF SOUGHT WOULD <u>NOT</u> SERVE THE PUBLIC INTEREST.

There would be no public interest served by forcing the Township to not enforce ordinances which were properly considered and passed by the Township.  As noted above, the zoning ordinances are in place to maintain the welfare of the Township zones for the public interest.  Precluding defendants from serving this important function would be directly adverse to the public interest.

Indeed, as is the case here, it would certainly not serve the public interest to take this action when it is predicated upon presumptions and allegations that the defendants acted in an improper manner.  The premise for the plaintiffs' relief sought includes allegations that the defendants acted unconstitutionally and allegedly violated the Civil Rights of the Orthodox Jewish community.  These are very serious allegations which the plaintiffs will be required to prove in this action.  Simply stating these allegations should not be enough to force the Township of Jackson to stop enforcement of properly passed laws such as the

34

ordinances at issue.  Rather, these allegations are only appropriate for consideration after a full and complete record has been established.

### IV.   CONCLUSION

For the reasons set forth herein, it is respectfully requested that this Honorable Court deny plaintiffs' motion for injunctive relief.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
*Attorneys for Defendants,Township of Jackson,*
*New Jersey, Michael Reina, Robert Nixon, Helene*
*Schlegel, Jeffrey Purporo and William Campbell*

*/s/ Howard B. Mankoff*
By:   _____
        HOWARD B. MANKOFF, ESQ.

Dated:  September 23, 2019

LEGAL/125070734.v1

35