**STORZER & ASSOCIATES, P.C.**
Sieglinde K. Rath (SR7208)
Roman P. Storzer, *admitted pro hac vice*
Robert L. Greene, *admitted pro hac vice*
1025 Connecticut Ave., N.W. Suite 1000
Washington, D.C. 20036
Tel: 202.857.9766
Fax: 202.315.3996
*Counsel for Plaintiffs*

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Donna M. Jennings (DJ7790)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
*Co-Counsel for Plaintiff WR Property LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, a New York non-profit corporation, and WR PROPERTY LLC, a New Jersey limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPURO, WILLIAM CAMPBELL, and KENNETH PIESLAK,<br><br>Defendants. | Civ. No. 3:17-DV-03226<br><br>**PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.**<br><br>(Returnable 10/7/19) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

   I.    THE DEFENDANTS' ATTEMPT AT DEFLECTION MUST BE REJECTED ........ 2

      A.  The *Oros* Litigation ....................................................................................... 2

      B.  Defendants' "Procedural" Arguments Are Meritless ............................... 4

   II.   DEFENDANTS HAVE FAILED TO REBUT PLAINTIFFS' ARGUMENTS THAT THE TOWNSHIP'S DISCRIMINATORY ORDINANCES SHOULD BE PRELIMINARILY ENJOINED ...................................................................... 4

      A.  Plaintiffs Are Likely to Prevail on Their Claims ..................................... 5

          1.  Plaintiffs' "Discrimination" Claims: Equal Protection Clause (Counts I and II); First Amendment's Free Exercise Clause (Count III); RLUIPA's Nondiscrimination Provision (Count VI) ........................................... 5

          2.  First Amendment's Establishment Clause (Count IV) ..................... 9

          3.  Freedom of Association (Count V) ................................................ 10

          4.  RLUIPA's "Total Exclusion" and "Unreasonable Limitations" Claims (Count VIII & IX) ................................................................ 10

          5.  RLUIPA's "Equal Terms" Claim (Count VII) .............................. 11

          6.  Fair Housing Act Claims (Counts X, XI, and XII) ......................... 12

          7.  42 U.S.C. § 1982 (Count XIII) ..................................................... 13

          8.  New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. (Counts XIV and XV) ...................................................................... 13

      B.  Defendants Fail to Rebut Plaintiffs' Showing That They Will Suffer an Immediate Irreparable Injury if the Injunction is Not Issued ................................ 13

      C.  Defendants Fail to Demonstrate That Granting Preliminary Relief Would Result in Any Harm to Them ..................................................................... 14

      D.  Enjoining Unconstitutional Conduct Would Not Harm the Public Interest ........ 15

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Al Falah Ctr. v. Twp. of Bridgewater*, No. CV112397, 2013 WL 12322637 (D.N.J. Sept. 30, 2013)................................................................................................................. 15

*Andrews v. Holloway*, No. CIV. A. 95-1047 (JBS), 1995 WL 875883 (D.N.J. Nov. 9, 1995)...... 5

*Ass'n for Fairness in Bus., Inc. v. N.J.,* 82 F. Supp. 2d 353 (D.N.J. 2000) ................................. 13

*Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548 (4th Cir. 2013) . 11

*Brown v. Borough of Mahaffey*, 35 F.3d 846 (3d Cir. 1994)........................................................ 9

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) ........................................................................................................................... 6

*Chabad of Nova, Inc. v. Cooper City*, 575 F. Supp. 2d 1280 (S.D. Fla. 2008) ........................... 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)........................ 7

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,* 138 F. Supp. 3d 352 (S.D.N.Y. 2015) ............................................................................................................... 7, 10

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574 (S.D.N.Y. 2013) ................................................................................................................... 11

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, NY, 280 F. Supp. 3d 426 (S.D.N.Y. 2017) ................................................................................................................ 9, 10

*Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447 (D.N.J.), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ............................................................................................................... 14

*EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556 (D.N.J. 2000) ...................................... 5

*Elijah Grp., Inc. v. City of Leon Valley*, Civ. No. 08-0907, 2009 WL 3247996 (W.D. Tex. Oct. 2, 2009), *rev'd on other grounds*, 643 F.3d 419 (5th Cir. 2011)................................................. 11

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 13

*Franchi v. New Hampton Sch*., 656 F. Supp. 2d 252 (D.N.H. 2009) .......................................... 12

*Freedom Baptist Church of Del. Cty. v. Twp. of Middletown*, 204 F. Supp. 2d 857 (E.D. Pa. 2002)..................................................................................................................................... 11

*Hirth v. City of Hoboken*, 337 N.J. Super. 149 (App. Div. 2001)................................................. 3

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)................................................... 5

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007)6, 8, 10

*Monterey Mech. Co. v. Wilson,* 125 F.3d 702 (9th Cir. 1997)..................................................... 13

*Nat'l Collegiate Athletic Ass'n v. Christie*, 926 F. Supp. 2d 551 (D.N.J.), *aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208 (3d Cir. 2013) ........................... 13

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir.1990) ......................... 5

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012)............................... 13

*Oros Bais Yaakov High School v. Township of Jackson, et al.*,  Docket No. PW-L-2981-14 (Law Div.)................................................................................................................................ *passim*

*Oxford House-Evergreen v. Plainfield*, 769 F. Supp. 1329 (D.N.J. 1991) .................................... 15

*Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001) .............................................................................. 7

*ReMed Recovery Care Ctrs. v. Twp. of Willistown*, 36 F. Supp. 2d 676 (E.D. Pa. 1999) ............ 15

*Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981)............................................................ 11

*State v. WSNP, LLC*, No. 19-09 (N.J. Super. Ct., March 20, 2019) ................................................ 4

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002) .................. 8, 12, 14

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ................................ 6

**Statutes**

42 U.S.C. § 1982 ........................................................................................................................ 13

42 U.S.C. § 2000cc ............................................................................................................... *passim*

New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.* ........................................... 13

**Other Authorities**

146 Cong. Rec. S7774-01, 2000 WL 1079346 ............................................................................ 14

## PRELIMINARY STATEMENT

Defendants' memorandum in opposition (Dkt. #58) ("Def. Br.") to Plaintiffs' Motion for Preliminary Injunction ("Motion") (Dkt. #55) is remarkable for one thing:  The Township neither disputes Plaintiffs' evidence, nor introduces any evidence to controvert the fact that the Challenged Ordinances and enforcement actions were motivated by discriminatory intent aimed at thwarting the ability of Orthodox Jews from moving into Jackson Township.  Rather, Defendants' brief obfuscates the issues before the Court, and is replete with reference to a separate and distinct state court matter against the Township of Jackson's Zoning Board ("Zoning Board") and the Township of Jackson ("Township") itself, involving different Plaintiffs, pending in the Superior Court of New Jersey, Ocean County, *Oros Bais Yaakov High School v. Township of Jackson, et al.*,  Docket No. PW-L-2981-14 (Law Div.) before the Hon. Marlene Ford ("*Oros*").  That litigation contains both state law challenges to denial of a use variance for an Orthodox Jewish high school as well as federal claims against the Zoning Board for discrimination, and against the Township, based upon its discriminatory enactment of Ordinance 30-10, which created a new R-1 zone along the Lakewood border in the Township in 2010, and banned schools therein.  The matter before this Court has been brought against the Township and various of its officials challenging separate actions and ordinances, and the Zoning Board is not a Defendant.  None of the laws and actions challenged in this litigation[1] even existed when the *Oros* litigation was filed.

Defendants mischaracterize this Motion as a challenge to the Zoning Board decision at

---

[1] While the Zoning Board's decision challenged in *Oros* is not being challenged here, facts concerning Zoning Board members' anti-Semitic prejudice such as making statements like "They are on target for a repeat of the 1930s" (Dkt. #55-105 at ¶ 6, Exh. D), "[A]sk him what to do about the scourge of the cockroaches from the east" (Dkt. #55-105 at ¶ 5, Exh. C), and "Jackson is not prepared for the tsunami of orthodoxy that is mounting at the border" (Dkt. #55-105 at ¶ 4, Exh. B), are relevant as factors supporting discriminatory intent under *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

issue in *Oros*.  *See* Def. Br. at 11 ("The plaintiffs now want the court to reverse that decision . . . ."). Defendants have even go so far as to claim "[t]he same findings of Judge Ford in Oros are controlling and applicable to the determinations in this matter[,]" *id*. at 15, and "[s]imply because plaintiffs are unhappy with the <u>zoning determinations</u> is insufficient to render them unconstitutional or unenforceable." *Id.* (emphasis added).  These statements are nonsensical. Defendants' repeated reliance on a prerogative writ decision in a state court action challenging a zoning decision not at issue here is frivolous and borders on bad faith.

With respect to the actual issues presented in this Motion, except for a few conclusory statements, Defendants do not dispute a single fact raised by the Plaintiffs regarding the anti-Orthodox hostility motivating the adoption of the School Ordinances.  And their only rebuttal to the *Eruv* Ordinance concerns certain violations issued by the Township, completely ignoring the relevant context in which this occurred.

## ARGUMENT

### I.   THE DEFENDANTS' ATTEMPTS AT DEFLECTION MUST BE REJECTED.

A.   The *Oros* Litigation.

Due to the confusing nature of Defendants' brief, Plaintiffs are compelled to clarify certain issues raised regarding the *Oros* litigation.  *Oros* was filed by an Orthodox Jewish girls' high school that sought to locate in the Township and was denied a use variance by the Zoning Board in 2014.  Dkt. #55-2 ¶ 28, Exh. 26.  The "prerogative writ" portion of that litigation (Count One) concluded in October 2015, prior to any substantive discovery being conducted and eighteen months prior to the Township being joined as a Defendant.[2]   Counts Two and Three of the

_____

[2] On May 30, 2017, 18 months after Judge Ford determined the prerogative writ aspect of that case, she issued an Order permitting *Oros* to add the Township as a Defendant noting the

Amended Complaint in that litigation, based upon the Nondiscrimination and Equal Terms provisions of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(b)(1),(2), and Free Exercise and Equal Protection constitutional claims are still pending and discovery continues in that case. *Id.* ¶ 28, Exh. 26.

Judge Ford's finding that the Board did not show bias was decided in a vacuum, since a prerogative writ action is decided solely upon the record, *see Hirth v. City of Hoboken*, 337 N.J. Super. 149, 166 (App. Div. 2001), something Judge Ford acknowledged several times in her decision. (*See* Dkt. #58-3 at 2, 13, 14, 17, 19, 22, and 23.) The Court acknowledged that the RLUIPA claims, Counts Two and Three, were bifurcated. *Id.* at 3. After the record-review prerogative writ claim was decided, the Township was then joined, and substantial information obtained through discovery demonstrates without question the anti-Semitic bias of the Zoning Board members, together with other evidence outside the Board's official record showing that the decision was motivated by prejudice, as was the adoption of the R-1 zoning ordinance, including statements by Board members such as:

- "This September 10 being suicide awareness day I implore senator Singer to step up and commit suicide. He is nothing but the byproduct of a human body eating matzoh and gafelta fish. His actions as a senator are only to advance the mischievous will of the Lakewood cult. . . . After many years of watching senators Singer's proposals and interests which are solely to support and advance the Lakewood medieval cult, on the backs of the surrounding communities it's time to come to an end. . . . they are prospering way too much, another gift from that POS Singer, pay you far [sic] share you filthy f'ing cockroaches!" Dkt. #55-2 ¶ 63, Exh. 61.

- "They DO have more money than you or me or all of us put together and they have a long term plan and an abundance of patience." Dkt. #55-105 ¶ 3, Exh. A.

- Sheldon Hofstein, a Board member who heard the application, was recently forced to resign, along with another current Board member and Township Planning Board member because they attended a secret meeting in the Township organized solely for the purpose

---

challenge to the Township's R-1 zoning district, adopted in 2010 and not at issue in this litigation. Declaration of Donna Jennings (Sept. 30, 2019) ("Jennings Decl.") ¶ 3, Exh. A (emphasis added).

of opposing an Orthodox Jewish development.  Jennings Decl. ¶ 4, Exh. B.

Defendants' suggestion that there has been any substantive adjudication regarding the discriminatory motivation of Board members or other Township officials is meritless.  Similarly, the other Township matter discussed by the Defendants, *State v. WSNP, LLC*, No. 19-09 (N.J. Super. Ct., March 20, 2019) (Dkt. #58-3 at 26), is significant only because the Township Zoning officer and individual Defendant in this action, Jeffrey Purpuro, monitored a property allegedly being used by Orthodox Jews.  *Id*. at 27.

B.   <u>Defendants' "Procedural" Arguments Are Meritless.</u>

Defendants also spend significant time irrelevantly detailing the <u>procedure</u> used to adopt the Challenged Ordinances and the Plaintiffs' knowledge, attendance and noted opposition to them.  Plaintiffs do not challenge the Ordinances on the basis of procedural deficiency, but rather that discriminatory motivation was a significant reason for their adoption.  Whether the Jackson Township Council "careful[ly]" (Def. Br. at 2) adopted the ordinances is irrelevant.

Defendants also state that discovery remains ongoing, without explaining how that would impact this Motion.  Defendants claim that they should have "the ability to conduct full and complete discovery concerning the allegations[.]"[3]  Def. Br. at 33-34.  Such reasoning would apply to <u>any</u> motion for preliminary injunction and should be rejected.

## II.   DEFENDANTS HAVE FAILED TO REBUT PLAINTIFFS' ARGUMENTS THAT THE TOWNSHIP'S DISCRIMINATORY ORDINANCES SHOULD BE PRELIMINARILY ENJOINED.

Having disposed of the chaff in Defendants' brief, a review of their arguments on the merits of Plaintiffs' Motion demonstrates quite clearly that the Township does not, and cannot, deny that

---

[3] This argument rings hollow especially where the Defendants have not even served supplemental discovery after the Plaintiffs filed <u>two</u> amended complaints, including the challenge to the *Eruv* Ordinance and claims against the individual Defendants.  Jennings Decl. ¶ 7.

the Challenged Ordinances were specifically adopted to target the Orthodox Jewish community. Further, all of the elements in reviewing a motion for preliminary injunction are met.

A.    Plaintiffs Are Likely to Prevail on Their Claims.

First, Defendants appear to imply that Plaintiffs must show success on all claims to be granted a preliminary injunction.  Def. Br. at 27.  For purposes of a preliminary injunction motion, Plaintiffs need only show likely success on the merits with respect to one claim; not all.  *See Andrews v. Holloway*, No. CIV. A. 95-1047 (JBS), 1995 WL 875883, at *14 (D.N.J. Nov. 9, 1995). Further, "one of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990) (citation and quotation omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  That status is pre-Ordinance.  Prior to these ordinances' adoption, Orthodox Jewish residents of the Township could erect *eruvs* with Township permission, as they had been doing, and Jewish boarding schools could have been constructed within the boundaries of the Township.  "If the balance of hardships is even or weighs in favor of the movant, then the status quo would be best served by the issuance of an injunction." *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 571 (D.N.J. 2000).

Also prevalent throughout their brief is Defendants' argument that Plaintiffs religious exercise is not being "substantially burdened." *See, e.g.,* Def. Br. at 22.  Plaintiffs have not made a "Substantial Burdens" claim under RLUIPA, and Defendants' analysis of the same is irrelevant.

1.    *Plaintiffs' "Discrimination" Claims: Equal Protection Clause (Counts I and II); First Amendment's Free Exercise Clause (Count III); RLUIPA's Nondiscrimination Provision (Count VI).*

**Equal Protection Clause.**  Defendants advance two arguments with respect to Plaintiffs' Equal Protection claims.  The first is that the *Eruv* Ordinance was not underlined applied in a fashion that

demonstrates any bias.  Def. Br. At 19-20.  The second is that, with respect to passage of the Ordinances, Orthodox Jews were allowed to attend and voice opposition to the Ordinances.  *Id.* at 20.  Neither of these arguments relate to Plaintiffs' claims.  What Plaintiffs do contend is that these Ordinances were <u>adopted</u> as a result of discriminatory motivation, purposely directed at a suspect class, Orthodox Jews.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Plaintiffs have described both direct and circumstantial evidence which supports a finding of discriminatory purpose based upon the factors set forth in *Arlington Heights*, 429 U.S. at 267. Pl. Initial Brf. (Dkt. #55-1) at 23-26.  The Township's own Mayor, Defendant Reina, has admitted that support for the School Ordinances was based on Township residents' anti-Semitism (Dkt. #55-2 ¶ 4, Exh. 2).  Similarly, the Township's deliberate attempt to hide the *Eruv* enforcement among general ROW enforcement further demonstrates the lengths to which Defendants will resort to discriminate against the Orthodox Jewish population.  *See* n.3, *infra*; Dkt. #55-1 at 13-17.

Defendants also argue that the principle of avoiding unnecessary constitutional questions somehow prevents the Court from issuing a preliminary injunction.  Def. Br. at 17 (citing *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 261 (3d Cir. 2007). That is not what the doctrine means.  Rather, as in *Lighthouse*, the doctrine only requires consideration of a statutory claim before deciding the constitutional issue if that would avoid the necessity of deciding the latter.  Certainly, Plaintiffs do not object to the Court enjoining the Township on the basis of their RLUIPA or FHA claims.  However, the doctrine does not prevent consideration of the constitutional claims at this stage, if necessary.  *Id.*

Neither is there any requirement that "plaintiffs must demonstrate that they were treated differently from other similarly situated parties."  Def. Br. at 18.  *See Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014) (holding

that evidence of similarly situated comparators "is not necessary to establish a nondiscrimination claim"); *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001). If the Township was motivated by animus in adopting the Ordinances, no "similarly situated" parties need be demonstrated.

Finally, the Township argues that it should be granted "deference" in setting land use policy. Def. Br. at 18. Such deference is not warranted where, as here, there is overwhelming and unrebutted evidence of hostility toward Orthodox Jews. Further, any such "deference" would only be to an alternative justification for the Challenged Ordinances, which the Defendants nowhere in their brief suggest exists for the School Ordinances.[4] Very telling is the fact that at no point does the Township make any argument that the ordinances restricting schools and banning dormitories was motivated by <u>anything</u> other than a desire to target Orthodox Jews. Def. Br. at 18-20.

**Free Exercise Clause.** With respect to the First Amendment's protection of the free exercise of religion, Plaintiffs need only show that "the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation," or that the law's "purpose . . . is the suppression of religion or religious conduct." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,* 138 F. Supp. 3d 352, 423 (S.D.N.Y. 2015) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

Further, it is unclear what Defendants mean by saying that "Plaintiffs have not established that defendants acted with discriminatory intent[.]" Def. Br. at 21. If they mean that Plaintiffs

---

[4] The Township does suggest that the *Eruv* Ordinance was about "basketball hoops." Def. Br. at 19-20. However, as the unrebutted evidence demonstrates, the <u>only</u> complaints from residents were about *eruvs* and <u>none</u> of them were about basketball hoops. These ranged from "Can you imagine driving past Harmony farms with poles & wires labeling it as Orthodox owned & run?" to "Lakewood looks like a spider web has be dropped on it and I certainly don't want to see it happen to our wonderful town." Jennings Decl. ¶ 5, Exh. C and ¶ 6, Exh. D. Defendant Reina has also admitted that complaints only started after *eruv* poles were put up. Dkt. #55-2 ¶ 4, Exh. 2. The Township only included basketball hoops in its notices of violation to maintain a patina of neutrality when in fact none existed.

have not <u>proven</u> their claims, such a showing is not necessary on a motion for preliminary injunction. Rather, they only need to show a reasonable likelihood of success.[5] If they mean that Plaintiffs have not submitted evidence demonstrating that they have a reasonable likelihood of success, then they ignore the vast amounts of such evidence referenced in Plaintiffs' Motion. In addition to the adoption of local hostility against Orthodox Jews in enacting the Challenged Ordinances, this includes filing complaints against the Orthodox Jewish community with the New Jersey Division of Civil Rights and the United States Department of Justice (Dkt. #55-2 ¶¶ 55-56, Exhs. 53 & 54); maintaining a "Watch" list of Orthodox Jewish homes and monitoring same (*id*. ¶ 13, Exh. 11); passing a "no-knock" ordinance designed to prevent Orthodox Jews from buying homes in Jackson (*id*. ¶ 43, Exh. 41); selectively enforcing real estate sign laws against Jewish realtors (*id*. ¶ 45, Exh. 43); issuing violations for *sukkahs* (*id*. ¶ 20, Exh. 18); issuing violations for using tarps as a means of modesty around pools at residential homes (*id*. ¶ 20, Exh. 18); enacting Ordinance 21-16, which limits the use of trailers and portable storage structures in the Township to prevent the use of trailers for worship (*id*. ¶ 47, Exh. 45); among other evidence.

Defendants' other argument is that the School Ordinances do not "constitute[] a substantial burden on the exercise of religion." Def. Br. at 21-23 (citing *Lighthouse*). Again, Plaintiffs do not make a "substantial burden" claim. Rather, they argue that they have been targeted for disfavor on the basis of religion in violation of the Free Exercise Clause. The Third Circuit has rejected the argument that a "substantial burden" must be demonstrated to prove intentional targeting:

> The District Court ruled that plaintiffs' Free Exercise claim failed because " . . . the plaintiffs have not adduced evidence of a 'substantial burden'" . . . . <u>This analysis is inappropriate for a free exercise claim involving intentional burdening of</u>

---

[5] The Third Circuit has already held that a New Jersey municipality can be preliminarily enjoined from compelling the removal of *eruv* markers used by its Orthodox Jewish residents. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002). Just as in *Tenafly*, Plaintiffs are likely to prevail on their Free Exercise Claim.

religious exercise. The "substantial burden" requirement was developed in the Supreme Court's free exercise jurisprudence, and codified in the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, in order to balance the tension between religious rights and valid government goals advanced by "neutral and generally applicable laws" which create an incidental burden on religious exercise. . . .  The rare cases which address acts or laws which target religious activity have never limited liability to instances where a "substantial burden" was proved by the plaintiff. *See e.g. Lukumi Babalu Aye,* 508 U.S. at [533], 113 S. Ct. 2217. Applying such a burden test to non-neutral government actions would make petty harassment of religious institutions and exercise immune from the protection of the First Amendment.

*Brown v. Borough of Mahaffey*, 35 F.3d 846, 849-50 (3d Cir. 1994) (emphases added).

**RLUIPA Nondiscrimination.**   Again, Defendants avoid the issue before the Court. Defendants cite to the *Oros* decision, which involved the Zoning Board, to attempt to refute Plaintiffs' Nondiscrimination claim against the Township.  Def. Br. at 13-15.  With respect to its Nondiscrimination claim, Plaintiffs must generally allege the same facts necessary to establish an Equal Protection claim. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 488 (S.D.N.Y. 2017).  Defendants argue in passing that "there is no evidence that the Township acted on the basis of any alleged discriminatory statements of citizens."  *Id.* at 15.  As set forth above and in Plaintiffs' initial brief, there is ample evidence of exactly that, along with other direct and circumstantial evidence of discriminatory intent.

2.    *First Amendment's Establishment Clause (Count IV).*

Defendants argue that "Plaintiffs have failed to articulate any basis for an Establishment Clause violation."  This ignores Plaintiffs' argument that (1) Defendants adopted the Ordinances and have taken actions based on hostility towards Orthodox Jews, and (2) that such actions have the principal effect of inhibiting religion.  Pl. Initial Br. at 21; *See id.* at 5-18 (discussing actions based on hostility toward Orthodox Jews); *id.* at 2-4 (discussing inhibition of religion).  Claiming that such arguments do not exist does not make it so.  Defendants' further arguments that the

Ordinances do not "prohibit plaintiff from practicing its religion" and that "Plaintiffs have failed to establish that any of the actions taken by defendants were motivated by discriminatory motive," Def. Br. at 23 (emphasis added), should be rejected for the reasons above.

      3.     *Freedom of Association (Count V).*

Plaintiffs should similarly prevail on their claim that the Ordinances violate their right to associate for religious purposes. This is not a case of making the practice of religion "more difficult" or that Plaintiffs are merely "inconvenienced," as Defendants claim. Def. Br. at 25. The Plaintiffs' claims fall squarely within the "locational burden" found to be a freedom of association violation in *Congregation Rabbinical Coll. of Tartikov*, 138 F. Supp. 3d at 429-30. In *Tartikov*, much like Plaintiffs' desire to construct Jewish schools with dormitories, the Plaintiff sought to construct and operate a rabbinical college, which included dormitories, and were prohibited from doing so by the municipality's ordinances. *Id*. at 430. Following trial, the Court found that "Plaintiffs have established a Free Association claim." *Congregation Rabbinical Coll. of Tartikov, NY*, 280 F. Supp. 3d at 486. Here, there is a complete ban on Jewish boarding schools and *eruvs*.

      4.     *RLUIPA's "Total Exclusion" and "Unreasonable Limitations" Claims (Count VIII & IX).*

Because the School Ordinances both (a) totally and unreasonably exclude dormitories, and (b) unreasonably limit religious schools, and because the *Eruv* Ordinance unreasonably limits religious structures, Plaintiffs are likely to succeed on these RLUIPA claims. The Defendants fail to address these claims in their brief, instead referring to a different provision of RLUIPA, the "Equal Terms" provision, and relying on the Third Circuit's decision in *Lighthouse*, 510 F.3d at 253, interpreting that separate and distinct provision. *See* Def. Br. at 16.

**Total Exclusion.** Defendants do not address the merits of this claim. It is undisputed that dormitories are prohibited throughout the Township, which prevents exactly the types of schools

that Orthodox Jews would develop.  *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981) (municipality cannot prohibit a category of constitutionally protected activity outright from a jurisdiction); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 637 (S.D.N.Y. 2013) (challenge to ordinances preventing plaintiffs from building a "rabbinical college" was "sufficient to make out a plausible Exclusions and Limits claim."); *Freedom Baptist Church of Del. Cty. v. Twp. of Middletown*, 204 F. Supp. 2d 857, 870 (E.D. Pa. 2002) ("It is, . . . well-established that a municipality cannot entirely exclude a type of conduct that the First Amendment protects.").

**Unreasonable Limitations.**  The "Unreasonable Limitations" provision of RLUIPA applies where land use regulations "make it difficult for religious institutions to locate anywhere within the jurisdiction."  *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 560 (4th Cir. 2013).  *Compare Chabad of Nova, Inc. v. Cooper City*, 575 F. Supp. 2d 1280, 1289-91 (S.D. Fla. 2008) (finding unreasonable limitation where a synagogue was limited to a specific zone and would be forced to incur additional expense in order to satisfy special frontage requirements), *with Elijah Grp., Inc. v. City of Leon Valley*, Civ. No. 08-0907, 2009 WL 3247996, at *9 (W.D. Tex. Oct. 2, 2009), *rev'd on other grounds*, 643 F.3d 419 (5th Cir. 2011) ("The ordinance does not violate the unreasonable-limitation provision because the ordinance creates a zoning district for church assembly use[.]").  Again, Defendants fail to address the merits of this claim, instead, they incorrectly argue that "discriminatory animus" is necessary to prove a claim under the "Total Exclusion" or "Unreasonable Limitations" provisions. Def. Br. at 17 ("plaintiffs cannot establish that they were discriminated against . . . .").

5.     *RLUIPA's "Equal Terms" Claim (Count VII).*

The Defendants have completely ignored Plaintiffs' claim that the School Ordinances

violate RLUIPA's Equal Terms provision.  *See* Pl. Initial Br. at 26-27 (arguing that schools and dormitories are treated on less than equal terms as a myriad of permitted nonreligious assembly and institutional uses); 42 U.S.C. § 2000cc(b)(1).  Instead, the Defendants argue that the *Eruv* Ordinance does not violate this provision since it is not a land use regulation.  But Plaintiffs do not argue that the *Eruv* Ordinance violates the Equal Terms provision; it is the School Ordinances that do.  Pl. Initial Br. at 26-27.  As set forth in Plaintiffs' brief, the Township Code bans schools in all of its residential zoning districts, but it permits other assembly and institutional land uses in various residential zoning districts.  *Id.*  Dormitories exist at Six Flags Great Adventure amusement park, and the Mayor has admitted that he has no problem with a proposed sports complex project in the Township that would include dormitories.  Dkt. #55-02 ¶ 4, Exh. 2.  Dormitories are an essential component of religious boarding schools for Orthodox Jewish boys.  Dkt. #55-96 ¶¶ 2-5.  Thus, Plaintiffs have shown a likelihood of success on its Equal Terms claims, and Defendants fail completely to address their relevant arguments.

6.    *Fair Housing Act Claims (Counts X, XI, and XII).*

Defendants argue that Plaintiffs are not "aggrieved persons" under the Fair Housing Act ("FHA") because "[n]othing in plaintiffs' complaint or brief states that they have been unable to obtain housing."  Dkt. #58 at 26.  Defendants then cite *Tenafly, supra,* and focus their discussion entirely on *eruvs*, arguing that while removal of an *eruv* would not make housing "unavailable" to them under the FHA, only "undesirable."  Again, Defendants ignore Plaintiffs' claim that the challenged Ordinances prohibit dormitories throughout the Township.[6]  The prohibition of such residences certainly makes housing unavailable to students intending to attend Jewish schools.  *See*

---

[6] Under the FHA, "[d]wellings" includes dormitories.  *See Franchi v. New Hampton Sch*., 656 F. Supp. 2d 252, 260 (D.N.H. 2009) ("Because a boarding school dormitory is occupied as a residence by one or more individuals, then, fits the statutory definition of dwelling").

Dkt. #55-1 at 22-23; Dkt. #40 ¶¶ 39-59.

       7.    *42 U.S.C. § 1982 (Count XIII).*

Defendants state that their argument with respect to Plaintiffs' section 1982 claim is the same as with respect to Plaintiffs' FHA claims. Def. Br. at 26. Their argument therefore fails for the same reasons. *See* Dkt. #55-96; 55-101; 55-91.

       8.    *New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1,* et. seq.
                *(Counts XIV and XV).*

Defendants argue that this Court cannot exercise jurisdiction over the Plaintiffs' LAD claims. While Plaintiffs make no such concession, Plaintiffs will not rely upon these claims for purposes of adjudication of this Motion.

    B.    <u>Defendants Fail to Rebut Plaintiffs' Showing That They Will Suffer An Immediate, Irreparable Injury if The Injunction Is Not Issued.</u>

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). Moreover, the Ordinances have been "erected in violation of federal law," demonstrating irreparable injury. *Nat'l Collegiate Athletic Ass'n v. Christie*, 926 F. Supp. 2d 551, 578 (D.N.J.), *aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208 (3d Cir. 2013) (citing *Ass'n for Fairness in Bus., Inc. v. N.J.*, 82 F. Supp. 2d 353, 363 (D.N.J. 2000) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm.") (quoting *Monterey Mech. Co. v. Wilson,* 125 F.3d 702, 715 (9th Cir. 1997))). Defendants' argument that constitutional injury must be "extreme" to justify a preliminary injunction is unsupported by precedent. Def. Br. at 29.

Plaintiffs have demonstrated that they are suffering irreparable harm and will continue to do so if a preliminary injunction does not issue.  *See Tenafly*, 309 F.3d at 178 ("Limitations on the free exercise of religion inflict irreparable injury"); *Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447, 453 (D.N.J.), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ("[f]or the purposes of this [preliminary injunction] motion, the Court assumes that Plaintiffs have satisfied the irreparable harm prong if they can demonstrate a constitutional injury.").

C.      Defendants Fail to Demonstrate That Granting Preliminary Relief Would Result in Any Harm to Them.

If this Court grants a preliminary injunction in favor of the Plaintiffs, the Defendants will not be harmed in any way.  Defendants say that the *Eruv* Ordinance implicates public safety.  Def. Br. at 31-32.  However, the difference between the *Eruv* Ordinance and the prior ordinance scheme is only that residents can no longer get permission from the Township to erect *eruvs* in the right of way.  There is absolutely no danger to the public safety.  Defendants make no argument that the School Ordinances are necessary to protect the public safety.  They merely say that "the underlying zoning plan would be undermined," without referencing anything, much less explaining how the "underlying zoning plan" would be affected.  That is because it would not.  Every single school constructed in Jackson was built in residential districts.  Jackson Township's master plan says nothing about prohibiting schools in residential districts. There is no basis whatsoever for this assertion, and the assertions of counsel do not make it so.  Further, Congress, in enacting RLUIPA, was specifically concerned about such pretextual reasons.  Joint Statement of Sens. Hatch and Kennedy, 146 CONG. REC. S7774-01, S7774, 2000 WL 1079346 ("More often, discrimination lurks behind such vague and universally applicable reasons as traffic, aesthetics, or 'not consistent with the city's land use plan.'").  There is no "land use" goal furthered by the irrational exclusion of schools from residential districts or complete prohibition of dormitories, other than the

14

illegitimate goal of excluding Orthodox Jews.

> D.  Enjoining Unconstitutional Conduct Would Not Harm the Public Interest.

Defendants do not provide the Court with evidence of any supposed harm to the public interest.  In this case, the Plaintiffs seek  an injunction that will protect and enforce not only their own civil rights, but also those of every religious school, with or without dormitories, that seeks to operate in the Township, and every religious Jew whose religious exercise would be accommodated by an *eruv*.  Further, as this Court has explained:

> As it relates to the public interest, Plaintiff argues that RLUIPA "identified a strong public interest in prohibiting local governments from frustrating religious land uses." . . .
>
> The Court finds that the public interest factors weigh in favor of Plaintiff. Although both Defendant and Plaintiff assert meaningful public policy interests, Plaintiff's allegations fall squarely within the harm Congress sought to address in enacting RLUIPA. Therefore, an injunction would further the public interest.

*Al Falah Ctr. v. Twp. of Bridgewater*, No. CV112397, 2013 WL 12322637, at *22 (D.N.J. Sept. 30, 2013).  The public interest always supports the enforcement of civil rights and the prevention of discrimination.  *See ReMed Recovery Care Ctrs. v. Twp. of Willistown*, 36 F. Supp. 2d 676, 688 (E.D. Pa. 1999) (citing *Oxford House-Evergreen v. Plainfield*, 769 F. Supp. 1329, 1345 (D.N.J. 1991)).  "[T]he public has a vital interest in not having an unconstitutional statute and regulation enforced, no matter how well-intentioned the statute and the implementing regulations may be." *Ass'n for Fairness in Bus.*, 82 F. Supp. 2d at 364.

## CONCLUSION

For the aforementioned reasons, Plaintiffs request that the Court grant its Motion and enjoin Defendants from enforcement and application of Township Ordinances 03-17, 04-17 and 20-17 and from monitoring, targeting, harassing and interfering with constitutionally protected rights of the Orthodox Jewish residents of the Township of Jackson.

Dated: September 30, 2019

**STORZER & ASSOCIATES, P.C.**
/s/ Sieglinde K. Rath
Sieglinde K. Rath
Roman P. Storzer, *admitted pro hac vice*
Robert L. Greene, *admitted pro hac vice*
9433 Common Brook Road, Suite 208
Owings Mills, MD 21117

*Counsel for Plaintiffs*

**WILENTZ, GOLDMAN & SPITZER, P.A.**
/s/ Donna M. Jennings
Donna M. Jennings
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095

*Co-Counsel for Plaintiff, WR Property LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of September, 2019, the foregoing document

was electronically filed via the Court's ECF system with notices to the following:

> Howard B. Mankoff, Esquire
> Marshall Dennehey Warner Coleman & Goggin
> 425 Eagle Rock Avenue, Suite 302
> Roseland, New Jersey 07068
> (973) 618-4118
> hmankoff@mdwcg.com
>
> Pauline F. Tutelo, Esquire
> Marshall Dennehey Warner Coleman & Goggin
> 425 Eagle Rock Avenue, Suite 302
> Roseland, New Jersey 07068
> (973)618-4100
> pftutelo@mdwcg.com

> <u>/s/ Sieglinde K. Rath</u>
> Sieglinde K. Rath
> Roman P. Storzer, *admitted pro hac vice*
> Robert L. Greene, *admitted pro hac vice*
> 9433 Common Brook Road, Suite 208
> Owings Mills, MD 21117