41034.00107-HBM

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
Howard B. Mankoff, Esq.
Pauline F. Tutelo, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068
☎973-618-4100    📠973-618-0685
📧 hbmankoff@mdwcg.com
📧 pftutelo@mdwcg.com
ATTORNEYS FOR DEFENDANTS – Township of Jackson, New Jersey, Michael Reina, Robert Nixon, Helene Schlegel, Jeffrey Purporo and William Campbell

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

** <u>ELECTRONICALLY FILED</u> **

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, a New York non-profit corporation, and WR PROPERTY LLC, a New Jersey limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPORO, WILLIAM CAMPBELL, and KENNETH PIESLAK,<br><br>Defendants. | CASE NO.: 3:17-cv-03226-MAS-DEA<br><br>Civil Action |

**DEFENDANTS' REPLY TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants, Township of Jackson, Michael Reina, Robert Nixon, Helene Schlegel, Jeffrey Purporo, and William Campbell, submit this response to Plaintiffs' Notice of Supplemental Authority (ECF No. 74). This submission is limited to responding to the supplemental authority submitted by plaintiffs. Defendants

incorporate and rely upon their opposition to plaintiffs' Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 (ECF. No. 58), which defendants respectfully maintain should be denied for the reasons stated therein.

By way of brief background, this matter arises out of a suit filed by the plaintiffs claiming that Ordinances, identified as 03-17, 04-17, and 20-17 are unconstitutional and prejudicial to the plaintiffs and the Orthodox Jewish community. These Ordinances, which pertain to legitimate matters of public safety and infrastructure maintenance, were passed after careful consideration during which plaintiffs were provided ample opportunity to appear and oppose same.

Further, there has already been a judicial determination that the defendants acted without bias in considering plaintiffs' underlying use variance application. In the State Court matter, Oros Bais Yaakov High School v. The Zoning Board of Adjustment of the Township of Jackson, Docket No. OCN-L-2981-14, the Court held that the Township had a rational non discriminatory reason for passing the ordinances, which were found to be consistent with the Master Plan and the State Municipal Land Use Law. [See ECF No. 58-2, Ex. B]

Defendants respond to plaintiffs' supplemental authority as follows.

**I.    The Two Decisions Cited by Plaintiffs are Factually and Procedurally Distinguishable from the Instant Matter.**

Both cases, one unpublished and one from outside this Circuit, contained in Plaintiffs' Notice of Supplemental Authority are distinguishable from the present matter and fail to support imposition of the extraordinary remedy of injunctive relief.

**A.    431 East Palisade Avenue Real Estate, LLC v. City of Englewood**

Plaintiffs cite to unpublished opinion 431 East Palisade Avenue Real Estate, LLC v. City of Englewood, 2019 U.S. Dist. LEXIS, 176213 (D.N.J. Oct. 10, 2019), arguing this case is "relevant to the underlying preliminary injunction because it involved similar claims of discrimination by a municipality

2

with respect to implementation of land use regulations." (ECF. No. 74 at pg. 1) East Palisade, however, is factually distinguishable from the case at bar.

In this unpublished opinion, the court focused on whether an ordinance discriminated against handicapped elderly individuals by limiting the development of assisted-living facilities to districts zoned exclusively for Research, Industry and Medical ("RIM") purposes. Id. at *1-2. The East Palisade plaintiffs requested approval to construct an assisted-living and memory care facility in an area zoned for residential use and argued "limiting assisted-living centers to the RIM district 'has a disparate impact on elderly and handicapped citizens,' whose 'ability to choose housing in residential City neighborhoods has been' severely constrained." Id. at *19. The plaintiffs in East Palisade also argued that because the RIM district was not included in the eruv, the Orthodox Jewish community would be unable to travel to and from the center on certain days. Id. at *5.

Notably, the RIM district was the "only area in the City in which assisted-living facilities are an expressly permitted use." Id. at 18 (emphasis added). In granting plaintiffs' preliminary injunction, the court considered that "the Zoning Ordinances permit nonhandicapped elderly in multiresidence dwellings in the RMH district, but the handicapped elderly requiring congregant care are not similarly treated. Rather, the handicapped elderly are limited to the RIM district if they require congregant care." Id. at *27. After concluding that the ordinance treated individuals differently on the basis of their handicap, the East Palisade court determined that defendants failed to establish a non-discriminatory justification for this treatment in their submissions and at oral argument. Id. at *32.

By contrast, not only do the facts of East Palisade differ significantly from the present case, but also, there is no such sweeping prohibition in the present matter. As detailed in defendants' opposition brief, plaintiffs in the instant matter have failed to demonstrate that the challenged Ordinances constitute a restriction on their religious exercise or that they have been treated disproportionately on the basis of same.

3

[See ECF. No 58 at 22-23]. Plaintiffs admit in their Second Amended Complaint that only seven of approximately 268 notices of violation handed out for violations of § 372-8 of the Township Code in July and August 2017 directly concerned the removal of Eruv markers[1]. Accordingly, plaintiffs have failed to establish that they were subjected to disparate treatment with respect to the enforcement of this Ordinance. Moreover, as detailed in defendants' opposition brief, plaintiffs in the present matter have failed to establish that they are unable to educate their children in accordance with their religious beliefs, while still residing in Jackson Township. This is a stark contrast from the the Ordinance in East Pallisade, which completely precluded a whole class of individuals – those who are handicapped and requiring congregant care – from residing within a district.

Further, plaintiffs supplement merely states, in conclusory fashion, that Defendants have failed to establish a non-discriminatory justification. However, defendants' opposition brief details the legitimate non-discriminatory basis for their zoning considerations, as well as the legitimate infrastructure-based reasons for implementing same, both in the form of the preamble to Ordinance 20-17, as well as via a judicial determination in Oros finding that the Zoning Board acted without bias and in accordance with the factors set forth in Sica v. Bd. of Adjustment of Twp. of Wall, 127 N.J. 152 (1992). [ECF No. 52 at 6-9; 19-20].

Accordingly, this matter is factually dissimilar and a far cry from the wholesale prohibition on the construction of a nursing home facility as seen in East Pallisade.

B. **Congregation Rabbinical College of Tartikov v. Village of Pomona**

Similar to the above, this Second Circuit opinion does not support the extraordinary remedy of injunctive relief in the present matter. Congregation Rabbinical College of Tartikov v. Village of Pomona involved the consideration a series of ordinances of a Village in New York, which were challenged by the

---

[1] The Palisade court defined an eruv as "a religiously designated geographic area that allows religiously observant Jews the ability to travel" or perform other tasks which are "otherwise prohibited on the Shabbat." East Palisade, LEXIS 176213 at fn. 7.

4

plaintiffs who sought to build a Rabbinical College. 845 F.3d 83, 88 (2nd Cir. 2019).  Plaintiffs in Tartikov, who sought to build a Rabbinical College, contended the defendants enacted zoning laws after becoming aware of their development plans, and thereafter filed suit challenging four of the defendants zoning amendments.  Id. at 89.  The dispute in this matter continued over a period of years, and the challenged zoning laws from 2001, 2004, and 2007.  Id.  As to the 2001 and 2004 zoning laws, the Court found there was insufficient evidence to support an inference of discrimination.  Id.

The Second Circuit agreed that the 2001 law "was 'in direct response to [plaintiffs'] desire to build an Orthodox yeshiva on the Subject Property."  Id. at 112.  However, even against this backdrop, the Court found "the Village's choice to act in response to [plaintiffs'] informal proposal says nothing of whether that choice was motivated by a positive, negative, or neutral reaction to [plaintiffs'] its religious character, or its project."  Id. at 113. This supports the defendants' argument in the case now before the Court that there is no evidence that the Township passed ordinances based on the discriminatory animus of objectors.  In addressing the 2001 law, the Court considered comments made by the Town's Mayor, as well as comments from the public, and concluded, "the townsperson's comment coupled with the mayor's response is too vague to permit an inference of animus." Id. at 115.  The Court found no evidence of discrimination as to both the 2001 and 2004 amendments, finding:

> There is simply not enough evidence to permit a finding by a preponderance of the evidence that the village acted with discriminatory intent in adopting the 2001 and 2004 local laws.  Instead, <u>the evidence suggests that legitimate land use concerns precipitated the passage of these laws</u>.  We therefore find that the district court clearly erred with respect to the 2001 Law and the 2004 Law.
>
> [Id. at 119 (emphasis added)]

In making this determination, the Court explicitly noted that:

> Some do not want change, population increases, more traffic, new buildings, elimination of open green space, tall buildings blocking light, and a host of other alterations of the patterns and circumstances of their lives.  And citizens

5

> have a perfect right to those views, to express them before boards and legislatures, and to seek through the democratic and judicial processes results that accord with their preferences as long as they do so honestly and without using the mechanisms of government for the purpose of disadvantaging others for religious reasons.
>
> [Id.]

The Court went on to find that the 2007 Wetland law and a Dormitory law were enacted with a discriminatory purpose. Id. at 119.  In finding same, the trial court considered, among other things, "the absence of any studies indicating the necessity or utility or the 2007 Wetlands Law[,]" as well as comments made by villagers and Board trustees. Id. at 121.  The Second Circuit further noted that Board members had "private conversations following the conclusion of the hearing" which "demonstrates that those comments were on their minds." Id. at 121. The Second Circuit affirmed on the same basis and facts considered by the trial court, and reasoned:

> These facts included the absence of any studies conducted to determine the need for or most appropriate means of enacting wetlands protection.  The court relied also on comments made by villagers at the January 22, 2007 hearing.  We have concluded already that the board members, who were present for that hearing and discussed the comments afterwards, were responsive to those comments and the animus they embodied.
>
> [Id.]

By contrast, in the present matter, it has not been established that the Board's actions were motivated by the alleged animus of the objector groups.  Thus, the instant matter is more closely analogous to the Tartikov court's consideration of the 2001 and 2004 laws, wherein the court found a lack of evidence of discriminatory motive.

Notably, here, as detailed fully in defendants' opposition brief, there were numerous studies and extensive considerations which went into the underlying statute. [See ECF No. 58 at 5-9] As noted by Judge Ford in the Oros matter, the Board conducted five hearings, considered the testimony of various experts and witnesses and reviewed the documentation submitted by plaintiffs.  Further, the plaintiffs'

6

submissions in the instant matter lack the proximity of the evidence considered by the court in <u>Tartikov</u>, as plaintiffs here have failed to establish that the Board members acted with discriminatory animus at the time they made their decision on plaintiffs' application, and rely on evidence from years after the Board's decision. In fact, the court expressly determined in the <u>Oros</u> matter that there was insufficient evidence of bias on behalf of the board in considering plaintiffs' zoning application. This is a fact which is notably absent from the <u>Tartikov</u> decision. Indeed, the reasoning highlighted by plaintiffs concerning that court's decision as to the 2007 law is dissimilar to the present matter does not warrant the imposition of injunctive relief here.

    **II.**    **The "New Evidence" Cited by Plaintiffs Similarly Does Not Warrant the Extreme Remedy of Injunctive Relief.**

The "additional evidence" cited by plaintiffs fails to establish that the extraordinary remedy of injunctive relief is warranted in the present matter. Plaintiffs submissions do not support that they are likely to prevail on the merits of this matter, and does not establish that they are likely to suffer irreparable harm.

Plaintiffs cite, in piecemeal fashion, to excerpts from the depositions of Ken Bressi and Phil Stilton. The testimony of both Bressi and Stilton contain nothing more than their own opinions and interpretations and fails to establish that the Board as a whole acted in accordance with objector opinions when making their decisions. Indeed, these deposition transcripts represent nothing more than these individual's interpretation of what occurred, years after same took place. The plaintiffs' supplemental inclusion of the Declaration of Mordechai Burnstein is similarly unavailing, as this Declaration is no more than a self – serving statement which fails to establish the extreme remedy of injunctive relief is warranted in the present matter.

The transcript of a conversation which purportedly took place between citizens at an August 15, 2019 meeting of the group Citizens United to Protect Our Neighborhoods ("CUPON") and Complaint associated with same, similarly fail to establish that the Board was motivated by the allegedly

discriminatory animus of objector groups when it made its decisions with respect to plaintiffs' zoning applications.  Not only did this meeting occur years after the plaintiffs' application decisions, but also, it contains no concrete evidence establishing that the decisions were premised on discriminatory motives, rather than in accordance with a legitimate, non-discriminatory basis.  Plaintiffs' supplemental inclusion of an article dated February 20, 2020 concerning Facebook group Rise Up Ocean County, also fails to establish that the Board based its decision upon the alleged beliefs of this objector group for the same reasons articulated above.

Accordingly, none of the evidence supplemental evidence submitted by plaintiffs establish that plaintiffs are entitled to injunctive relief and defendants respectfully maintain that plaintiffs' Motion for a Preliminary Injunction should be denied.

                                      Respectfully Submitted,

                                      MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
*Attorneys for Defendants, Township of Jackson, New Jersey, Michael Reina, Robert Nixon, Helene Schlegel, Jeffrey Purporo and William Campbell*

By: */s/ Howard B. Mankoff*
      HOWARD B. MANKOFF, ESQ.

Dated:  5/19/20