IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, a New York non-profit corporation, and WR PROPERTY LLC, a New Jersey limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPURO, WILLIAM CAMPBELL, and KENNETH PIESLAK,<br><br>Defendants. | Civ. No. 3:17-cv-03226<br><br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Currently pending before the Court is the Plaintiffs' Motion for Preliminary Injunction (ECF No. 55) which has been scheduled for oral argument on March 22, 2021. (ECF No. 111.) By Order of February 10, 2021, this Court requested supplemental briefing from the Parties responding to filings made by the parties that same day. (ECF No. 109.) This is Plaintiffs' Supplemental Brief, which addresses a very specific issue: The Defendants' alleged repeal of its dormitory ban ordinance. As described in Plaintiffs' earlier briefing and supporting exhibits, Jackson Township Ordinance 04-17 (ECF No. 55-27) was adopted specifically to target Orthodox Jews, to prevent them from developing educational uses in the Township, and to prevent them from obtaining housing within the Township, in violation of the First and Fourteenth Amendments to the United States Constitution, RLUIPA's Nondiscrimination provision, 42 U.S.C. § 2000cc(b)(2), the Fair Housing Act, 42 U.S.C. § 1982, and the New Jersey Law Against Discrimination. (ECF No. 55-1 at 5-18, 23-26.) It also violates RLUIPA's "Equal Terms" provision, 42 U.S.C. § 2000cc(b)(1), because many other forms of assembly and

1

institutional land uses remain permitted, and RLUIPA's "Exclusion and Limits" provision, 42 U.S.C. § 2000cc(b)(3)(B), by "unreasonably limit[ing] religious assemblies, institutions, or structures within a jurisdiction." (ECF No. 55-1 at 26-28.) Plaintiffs also challenged Ordinances 03-17 (ECF No. 55-26) and 20-17 (ECF No. 55-33), the former prohibiting schools in the Township's R-2, R-3, R-5, R-9, R-15, R-20 and M-F residential zoning districts and the latter effectively banning *eruvs* in the Township, which are not impacted by Defendants' "repeal."

In its February 10, 2021 filing, the Defendants asserted that the repeal of Ordinance 04-17 by Jackson Township (the "Township") impacts the Plaintiffs' Motion for Preliminary Injunction. (ECF No. 55.) As set forth below, not only is it irrelevant to the Motion, both the existence of another Ordinance (Ordinance 03-17) and the actions of the Defendants surrounding the time of repeal of 04-17 demonstrate unequivocally that dormitories remain banned throughout the Township. Neither does it affect the additional claims at issue in Plaintiffs' Motion.

To provide context, a brief history is necessary. The Ordinances challenged by the Plaintiffs in this action are Ordinances 03-17, 04-17 and 20-17, all adopted by the Township in 2017 to target Orthodox Jews and prevent them from obtaining housing and education opportunities within the Township. *See generally* ECF No. 55-1 at 5-18, 23-26; ECF No. 60 at 6-8. Ordinance 20-17 effectively bans *eruvs* in the Township. Ordinance 03-17 prohibits (1) schools in the Township's residential zoning districts, R-2, R-3, R-5, R-9, R-15, R-20 and M-F, and (2) prohibits dormitories throughout the Township. It is undisputed that Ordinances 04-17 and 03-17, adopted the same day, contain the following identical language with respect to dormitories:

> The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244, entitled "Land Use and Development Regulations," so as to amend § 244-6 so as to add and arrange alphabetically the following definition:

>    **DORMITORY**
>
>    Any building, or portion thereof, designed or converted to contain living quarters which are provided as residences or for overnight sleeping for individuals or groups operated as an accessory use to a school, college, university, boarding school, convent, monastery, non-profit educational institution, religious order, or other.
>
>    . . . .
>
> The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244, entitled "Land Use and Development Regulations," so as to amend Article X entitled "General Provision" so as to create a new section, § 244-176.2 which shall be entitled "Prohibited Uses" which shall read as follows:
>
>    A.
>
>    All uses not expressly permitted in any given district are expressly prohibited in such district. No structure or addition thereto shall be built, moved or remodeled and no land shall be used, occupied, reoccupied, designed or improved for use or occupancy except for a use that is expressly permitted within the zone.
>
>    B.
>
>    The following shall be prohibited as principal or accessory uses or structures in all zoning districts within the Township of Jackson:
>
>       (1) Dormitories

(ECF Nos. 55-26, 55-27.)

Defendants do not dispute that Ordinance No. 03-17, which bans schools in the Township's residential districts *and* bans dormitories, remains in full force and effect, unaffected by the recent "repeal" of Ordinance 04-17. Thus, the Township's ban on schools, together with its ban on dormitories, continues to directly impact the Orthodox Jewish community in that it prevents private religious schools with dormitories. (ECF No. 94 ¶¶ 45-59, 105-14.)

The Township has also more recently taken the position that it will continue to ban dormitories, even if there were no ordinances specifically prohibiting them. Therefore, any argument that there is a voluntary cessation of the conduct at issue must fail. On May 12, 2020, in an effort to stave off the

filing of a lawsuit by the United States Department of Justice against the Township regarding Ordinances 03-17 and 04-17, the Township Council introduced Ordinances 05-20 and 06-20 to repeal those Ordinances.[1]  Declaration of Sieglinde K. Rath, Esq. dated March 5, 2021 ("Rath Decl.") ¶¶ 3-4, **Exhs. A** and **B**.[2]   During public comment at the Township Council's May 12, 2020 meeting, which largely focused on *opposition* to the new Ordinances and requests that they be tabled, the following was recorded in the Township minutes:

> **ATTORNEY MCGUCKIN-** stated Ordinance 04-17 banned dormitories anywhere in the municipality as a permitted use. That ordinances were redundant because it was not a permitted use that was not allowed already in the municipality.[3] Ordinance 03-17 eliminated certain zoning districts from permitting schools and this ordinance allows for the ordinance to remain the same as in 2017 in regards to the certain zoning districts. It

---

[1] Ordinance 05-20 was never adopted by the Township, and therefore Ordinance 03-17 remains in full force.

[2] *United States of America v. The Township of Jackson and Jackson Planning Board*, No. 3:20-cv-06109 (D.N.J.) (filed May 20, 2020) (ECF 83-1, Exh. B), which has been consolidated with this action for purposes of discovery.  (ECF 90.)

[3] This statement was incorrect, as dormitories were permitted as an accessory use to "private or parochial schools not operated for profit" until they were specifically prohibited by the challenged Ordinances.  *See, e.g.,* Jackson Township Code § 244-46(B)(11) (permitting "[o]ther customary accessory uses, buildings and structures, which are clearly incidental to the principal use and building" in the R-2, R-3 and R-5 zoning districts); *Hughes v. Monmouth Univ.*, 394 N.J. Super. 207, 230, 925 A.2d 750, 763 (Law. Div. 2006), *aff'd*, 394 N.J. Super. 193, 925 A.2d 741 (App. Div. 2007) (proposed residence hall was among "uses . . . integrated into the core of the inherently beneficial University uses."); *Stoddard v. Rutgers*, 24 N.J. Tax 187, 204 (2008) ("student housing is an appropriate university purpose"); *Fairleigh Dickinson Univ. v. Florham Park Borough*, 5 N.J. Tax 343, 356 (1983) (finding college "must be viewed as a whole in relation to its purpose and not merely as a composite of unrelated, individual buildings" including dormitories).  New Jersey also defines an "educational facility" as:

> [A] structure suitable for use as a <u>dormitory</u>, dining hall, student union, administration building, academic building, library, laboratory, research facility, classroom, athletic facility, health care facility, teaching hospital, and parking maintenance storage or utility facility and other structures or facilities <u>related thereto or required or useful for the instruction of students</u> or the conducting of research or the operation of an institution for higher education, . . . .

N.J.S.A. 18A:72A-3 (emphases added). The statute defines a "Dormitory" as "a housing unit with necessary and usual attendant and related facilities and equipment, and shall include a dormitory of a public or private school, or of a public or private institution of higher education;" *Id.*

>does not affect the R1 zone but will change R2, R3, and R5 the multifamily units. If the ordinance is approved the ordinance would remain the same as the original ordinance approved in 2017. . . .
>
>. . . .
>
>**ATTORNEY MCGUCKIN**- the definition of a "dormitory" was not included in the original ordinance. A "dormitory" is not a permitted use. There is still no definition available as "dormitories" are not a permitted use. No definition will be available even after the second reading of Ordinance 06-20.
>
>. . . .
>
>**COUNCIL VICE PRESIDENT SAUICKIE** (responded to the five previous questions made by residents)– to the comment made in regards to the Mayor, unfortunately he is unable to attend this meeting to respond to that question. The Council representing the residents of Jackson today were not serving when these ordinances were adopted. Administratively the ordinances have been identified as redundant. Attorney McGuckin explained this previously. The Council has received feedback from residents who do not understand the ordinances being rescinded, especially on the dorm's ordinance. The applicant will still need to be heard before a Land Use Board in order to move forward with the application. A review process is a good thing and we have good Land Use laws in our town. The Planning and Zoning Boards are responsible for reviewing the applications and ensuring the laws are obeyed. This is the procedure to follow whether the ordinance is rescinded or not.
>
>. . . .
>
>**ATTORNEY MCGUCKIN**- concurred with statements made by Councilman Kern. Whether the ordinance is in place or not anyone has the right to make a[  variance] application for a "dormitory" and they would go to the Zoning Board of Adjustments for that purpose. Regardless of the ordinance being in effect the applicant they would have to go to the Zoning Board to seek approval. They can seek relief [for a variance] under the NJ Municipal Land Use law for any use even if it is not permitted.

*Id*. at ¶ 5, **Exh. C**.  At the next Township Council meeting on May 26, 2020, which was to be the Second Reading of Ordinances 05-20 and 06-20, the Township tabled Ordinance 05-20 to its June 23, 2020 meeting.  *Id.* ¶ 6, **Exh. D**.  With respect to Ordinance 06-20, which was adopted:

>**COUNCIL VICE PRESIDENT SAUICKIE**- Ordinance 06-20 is repealing an ordinance that was conducted in 2017, which restricted "dormitories" in the town. In the masterplan, the ordinance is redundant. Ordinance 06-20 will rescind that Ordinance and restore the Ordinance to what it was prior to 2017.

> **ATTORNEY MCGUCKIN**- Ordinance 04-17 prohibited dormitories and it rescinds that.  <u>Dormitories are not a "permitted use" even after this adoption</u>.

*Id.* (emphasis added).  At the June 23, 2020 meeting Council President Sauickie stated the following:

> About a month ago we spoke in regards to tabling Ordinance 05-20 which rescinds a school ordinance from 2017. During the comments, I mentioned that we would allow our Attorney time to work with the Department of Justice within the complaint. We recently received a response from the Department of Justice. We will provide our Attorneys additional time to have these conversations with the Department of Justice. It will not be included in our agenda tonight as we previously mentioned about a month ago. We will not table it indefinitely, but we need additional time for our Attorneys to have conversations in order to find a solution.

*Id.* ¶ 7, **Exh. E**.  Ordinance 05-20 has not been revisited by the Township since.

Even disregarding the continued force of Ordinance 03-17, any argument by the Township that the motion might no longer be ripe because of its repeal of Ordinance 04-17 must fail because the Township has explicitly stated that it will continue to enforce a policy of prohibiting dormitories throughout the Township.

> [V]oluntary cessation does not automatically render the case moot. In *Friends of the Earth, Inc., v. Laidlaw Environmental Services,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000), the Supreme Court held that "it is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' " (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982)). The standard for "determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). Moreover, the party alleging mootness bears the "heavy," even "formidable" burden of persuading the court that the challenged conduct cannot reasonably be expected to resume. *Id.* at 189-90, 120 S.Ct. 693.

*United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285, 45 V.I. 764, 774 (3d Cir. 2004).  In particular, the Third Circuit has explained that the doctrine of voluntary cessation cannot deprive the Court of its ability to review the constitutionality of an Ordinance if the "constitutional infirmit[y]"

may continue. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 n.2 (3d Cir. 2008). In that case, the Court noted that:

> neither the City's initial representation that it would no longer enforce Chapter 603 nor its formal repeal of that ordinance a few months later deprived the District Court of jurisdiction, particularly given that plaintiffs' complaint alleged a long history of unconstitutional conduct under the ordinance; the City had no alternate procedures in place pending revision of Chapter 603; and the City's initial proposals to amend Chapter 603 gave the Court cause for concern that a new ordinance would have similar constitutional infirmities.

*Id.* Similarly, this Court recently rejected a municipality's "promise" not to enforce a regulation:

> [T]he only basis the City has given for why the Court should find Plaintiffs' claims moot is that they have promised not to enforce the provision in question. That "promise," however, was made after litigation had already commenced, and Defendant makes no claim that it is in any way binding on the City. Further, unlike cases in which courts have found that a voluntary cessation did render a claim moot, "there have been no subsequent events that make it absolutely clear that [Atlantic City] will not [resume enforcement of] the allegedly wrongful [provision] in the absence of the injunction." *DeJohn v. Temple University*, 537 F.3d 301, 309 (3d Cir. 2008) (citing *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)). As Plaintiffs argue, there is simply no assurance here that Atlantic City will not attempt to enforce the provision again at a later date, either against Plaintiffs or another, similar party, and Defendant has pointed to nothing that would affirmatively stop them from doing so.
>
> Defendant's "promise," on its own, is simply not enough to provide the Court with the "absolute" clarity it requires to find Plaintiffs' claim moot. Instead, "[t]he timing of Defendant[']s]" promise not to enforce § 152-1, after litigation had already begun, "as well as the ease by which Defendant[ ] could conceivably re-institute the ban, convince the Court that the alleged injury could reasonably recur absent the requested relief." *Cottrell v. Good Wheels*, No. 08-1738 (RBK/KMW), 2009 WL 3208299, at *5 (D.N.J. Sept. 28, 2009). Accordingly, the Court finds that Plaintiffs' claims as to § 152-1 are not moot, and will proceed to analyze Plaintiffs' arguments for summary judgment.

*Hansen Found., Inc. v. City of Atl. City*, No. 119CV18608NLHAMD, 2020 WL 7074275, at *5-*6 (D.N.J. Dec. 3, 2020). Here, not only is there no "absolute clarity" that the Township will not enforce a dormitory ban, they have explicitly stated that they will *continue* to prohibit dormitories.

Thus, even though Ordinance 04-17 has been repealed, Ordinance 03-17, which contains the same dormitory ban, remains in full force and effect. The Defendants also continue to take the position

7

that they will ban dormitories in the Township. In addition, no action has been taken by the Township with respect to Ordinances 03-17 and 20-17, the school and *eruv* bans, and the Orthodox Jewish community continues to be irreparably harmed by these Ordinances.

Dated: March 5, 2021

**STORZER & ASSOCIATES, P.C.**

/s/ Sieglinde K. Rath
Sieglinde K. Rath (048131991)
Roman P. Storzer, *admitted pro hac vice*
9433 Common Brook Road, Suite 208
Owings Mills, MD 21117

*Counsel for Plaintiffs*


**WILENTZ, GOLDMAN & SPITZER, P.A.**

/s/ Donna M. Jennings
Donna M. Jennings (017281995)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095

*Co-Counsel for Plaintiff, WR Property LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March, 2021, the foregoing document was served via ECF to the following:

>Brent Pohlman, Esquire
>Methfessel & Werbel, P.C.
>2025 Lincoln Highway
>Suite 200
>Edison, New Jersey 08818

**STORZER & ASSOCIATES, P.C.**

/s/ Sieglinde K. Rath
Sieglinde K. Rath (048131991)
9433 Common Brook Road, Suite 208
Owings Mills, Md. 21117