**ON TUESDAY, MAY 12, 2020, AT 5:00 P.M. THE JACKSON TOWNSHIP COUNCIL HELD ITS (EXECUTIVE SESSION) MEETING IN THE MUNICIPAL BUILDING**

**ROLL CALL:**

**COUNCILMAN BRESSI (via teleconference**
**COUNCILMAN FLEMMING                          ATTORNEY MCGUCKIN(5:04pm)**
**COUNCILMAN KERN (arrived at 5:04pm)   TOWNSHIP CLERK KISTY**
**COUNCIL VICE PRESIDENT SAUICKIE**
**COUNCIL PRESIDENT CALOGERO(absent)**

**ALSO IN ATTENDANCE: BUSINESS ADMINISTRATOR TERENCE WALL**
**                                    MAYOR MICHAEL REINA**

As Clerk of this meeting, I publicly announce that in compliance with the provisions of the "Open Public Meetings Act" adequate notice of this meeting of the Jackson Township Council has been advertised in the manner prescribed by law.

---

**RESOLUTION 207R-20**
**TITLE: RESOLUTION FOR EXECUTIVE SESSION TO AUTHORIZE TOWNSHIP COUNCIL TO ENTER INTO CLOSED DISCUSSIONS CONCERNING MATTERS AS NOTED BELOW**

**MOTION TO APPROVE BY: FLEMMING**
**MOTION SECONDED BY: BRESSI**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

  **WHEREAS,** Section 8 of the Open Public Meetings Act permits the exclusion of the public from a public meeting under certain circumstances; and

  **WHEREAS,** this governing body is of the opinion that such circumstances presently exist.

  **NOW, THEREFORE, BE IT RESOLVED** by the Township Council of the Township of Jackson, County of Ocean, and State of New Jersey, as follows:

  1. The public shall be excluded from discussion concerning the hereinafter-specified subject matter.

  2. The general nature of the subject matter to be discussed is as follows:

    a) Personnel/Professionals:
    b) Litigation/Potential Litigation: Update on lawsuits
    c) Potential Land Sale/Land Acquisition:
    d) Contracts/Agreements: Drive in update

  3. It is anticipated that the subject matter discussed may be made public upon its conclusion or final disposition.

             _____
             **JANICE KISTY, R.M.C.**
**DATED: 5-12-20**       **TOWNSHIP CLERK**

---

**6:00 P.M. -CONVENE PUBLIC MEETING IN THE MAIN MEETING ROOM OF THE MUNICIPAL BUILDING VIA ZOOM**

**PLEDGE OF ALLEGIANCE**

**COUNCIL VICE PRESIDENT SAUICKIE-** keep in mind all your First Responders especially medical staff who are risk fighting this horrible disease. Please keep in mind our Military who are here and overseas.

**ROLL CALL:**

**COUNCILMAN BRESSI(via teleconference) ATTORNEY MCGUCKIN(5:04pm)**
**COUNCILMAN FLEMMING                       TOWNSHIP CLERK KISTY**
**COUNCILMAN KERN**
**COUNCIL VICE PRESIDENT SAUICKIE**
**COUNCIL PRESIDENT CALOGERO (absent)**

**ALSO IN ATTENDANCE: BUSINESS ADMINISTRATOR TERENCE WALL**
**MAYOR MICHAEL REINA**

As Clerk of this meeting, I publicly announce that in compliance with the provisions of the "Open Public Meetings Act" adequate notice of this meeting of the Jackson Township Council has been advertised in the manner prescribed by law.

**COUNCILMAN BRESSI –** thanked residents for attending the meeting. He stated everyone is having a different way of life being quarantined in their homes due to coronavirus. Please take a moment on Memorial Day to reflect on the meaning of Memorial Day. Please reflect on the sacrifices given for us in order to celebrate Memorial Day.

**COUNCILMAN FLEMMING-** thanked residents for attending the Zoom meeting and hopes those who would like to participate can do so tonight. There are a multitude of planning issues in order to conduct the virtual meetings. Asked citizens for patience during this process. If you have any questions please contact the council via email.  Do not react to every item or opinion that is found on social media. It is my opinion that the truth will be more comforting and informative. The Jackson Kiwanis Club is partnering with our Fire Department to pick up donated food and new personal items to restock the Food Pantry. If you like to make a donation please contact the Jackson Kiwanis Club. The pickup will be held in the Whitesville area on the evening of May 23, 2020. If it is a success the Jackson Kiwanis Club will partner with other Fire Departments interns to continue this program. If you happen to see a large fire truck in your area please give them a shout and they will pick up any items to be donated.

**COUNCILMAN KERN-** encouraged anyone who is need of food, or any essential needs during the pandemic to contact Council via email. Council will connect residents to the organizations that can offer assistance.

**COUNCIL VICE PRESIDENT SAUICKIE –** thanked the residents for attending this meeting via Zoom technology. Hopes the audio is heard clearly as upgrades have been conducted to the auto and visual. If you were unavailable at the last meeting, Council President Calogero resigned. He wished everyone well and thanked all the residents for their support. The Council is accepting resumes for appointments to Council President Calogero's position and resumes are to be submitted no later than May 15, 2020. Council will work diligently in ensuring to find the best candidate to represent Jackson and work to have the position fulfilled.  He stated Mayor Reina has attended calls with Governor Murphy. Mayor Reina is currently on conference call with Governor Murphy. He read Mayor's statement into the record.

**MAYOR REINA'S STATEMENT-** Governor Murphy has gone too far with certain aspects of his executive orders. By law the Township cannot override the executive orders as much as we wish to do so. However, municipalities such as Jackson Township have some authority when it pertains to our parks and recreation facilities. The Township will allow immediately for recreation facilities to open as long as they adhere to the social distancing guidelines and limit the participants to no more than 10 individuals. Parents or guests must remain in their vehicles or leave the facility during these activities. This will permit fields to be utilized by soccer, lacrosse, baseball, football, and softball coaches and

their teams. No games, stimulated scrimmaging, or contact drills will be allowed. There are no camps, training clinics, or league games permitted on the fields. No spectators are allowed on the fields, sidelines or on the bleachers. Tennis and basketball courts can be utilized but no basketball games will be permitted.  He recognizes that sports teams usually require more than 8 or 9 players along with the coaches. Teams may have to adjust their rosters to adhere to these regulations until the executive orders are lifted. As the weather improves our children need recreational facilities to meet their needs while ensuring their safety. For this reason he would like to ensure that all Jackson residents are conscious that our fields and facilities may be utilized in accordance with these guidelines.

**BUSINESS ADMINISTRATOR WALL-** asked for residents to obtain permits through the Recreation Department as the permit process remains the same. The Recreation Department will provide the appropriate permits to be completed.

There are two public comment portions on the agenda. The first public comment only pertains to resolutions only and the other is public comment on any topic. Residents will have the ability to use the CHAT function available for both portions. The CHAT function will be enabled for the public comment for resolutions only and the public comment on any topic.

---

**APPROVE EXECUTIVE SESSION MEETING MINUTES:  APRIL 28, 2020**

**MOTION TO APPROVE BY: FLEMMING**
**SECONDED BY: KERN**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

---

**ORDINANCES, SECOND READING:**

**NONE AT THIS TIME.**

---

**ORDINANCES, FIRST READING:**

**ORDINANCE: 05-20**
**TITLE: AN ORDINANCE OF THE TOWNSHIP OF JACKSON, COUNTY OF OCEAN, STATE OF NEW JERSEY AMENDING AND SUPPLEMENTING CHAPTER 244 OF THE TOWNSHIP CODE THEREBY REPEALING ORDINANCE 03-17 OF THE TOWNSHIP CODE OF THE TOWNSHIP OF JACKSON**

**MOTION TO APPROVE ORDINANCE 05-20 ON FIRST READING, ADVERTISE THE APPROVAL AND NOTICE OF SECOND READING AND PUBLIC HEARING TO BE HELD ON MAY 26, 2020 BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: FLEMMING, KERN, SAUICKIE**
**ABSTAIN: BRESSI**
**ABSENT: CALOGERO**

**ORDINANCE 05-20**

**NOW, THEREFORE, BE IT ORDAINED**, by the governing body of the Township of Jackson, County of Ocean, State of New Jersey, as follows:

**SECTION I. Purpose.**  Pursuant to Ordinance No. 03-17, the Township of Jackson amended certain provisions of the Township's Land Use and Development Regulations.  It is the purpose of this Ordinance to repeal Ordinance No. 03-17 in its entirety.  It is the further purpose of this Ordinance to reestablish the uses which existed in the zones in question prior to the adoption of Ordinance No. 03-17.

**SECTION II.** The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244-6 to delete all definitions or references to "dormitory".

**SECTION III.** The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244 entitled "Land Use and Development Regulations", and specifically Chapter 244-46 entitled "R2, R3 and R5 Residential Zones" to include in Subsection A thereof the following permitted principal uses of building and structures:

(6) Federal, State, County and other public buildings and grounds, including public schools, parks, playgrounds, or other public recreational uses and areas.

(7) Private or parochial schools not operated for profit; except however, public and private colleges or universities shall not be permitted.

**SECTION IV.** Chapter 244-48 entitled "R20, R15 and R9 Residential Zones" shall be amended to include therein as permitted principal uses of buildings and structures in Subsection A to reinstate Subsection 5 as follows:

(5) Federal, State, County and other public buildings and grounds, including public schools, parks, playgrounds, or other public recreational uses and areas; excluding however, workshops, warehouses, garages and storage yards.

(6) Private or parochial schools not operated for profit; however, public and private colleges or universities shall not be permitted.

**SECTION V.** The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244 entitled "Land Use and Development Regulations" so as to amend Chapter 244-50 entitled "MF Multi-Family Zone" so as to include in Subsection A thereof the following permitted principal uses of buildings and structures as follows:

(6) Federal, State, County and other public buildings and grounds, including public schools, parks, playgrounds, or other public recreational uses and areas; excluding however, workshops, warehouses, garages and storage yards.

(7) Private or parochial schools not operated for profit; except however, public and private colleges or universities which shall not be permitted.

**SECTION VI.** The Township Code of the Township of Jackson is hereby amended and supplemented so as to amend Chapter 244-176.2 be and hereby is repealed.

**SECTION VII.** Ordinances or parts of Ordinances inconsistent herewith are hereby repealed.

**SECTION VIII.** If any section, subsection, sentence, clause, phrase or portion of this Ordinance is for any reason held to be invalid or unconstitutional by a Court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions hereof.

**SECTION IX.** This Ordinance shall take effect after second reading and publication as required by law.

DATE: _____            _____
                                          MAYOR MICHAEL REINA

## NOTICE

**NOTICE IS HEREBY GIVEN** that the foregoing Ordinance was introduced and passed by the Township Council on first reading at a meeting of the Township Council of the Township of Jackson held on the **12th day of May, 2020**, and will be considered for

Jackson Township Council Meeting of May 12, 2020                    Page 5 of 26

second reading and final passage at a regular meeting of the Township Council to be held on the **26th day of May, 2020** at 6:00 p.m., at the Township Municipal Building, located at 95 West Veterans Highway, Jackson, New Jersey, at which time and place any persons desiring to be heard upon the same will be given the opportunity to be so heard.  Should the building be closed to the public, then public comment will be available through Zoom Webinar on May 26, 2020.

_____
Janice Kisty, RMC
Jackson Township Clerk

**ORDINANCES, FIRST READING:**

**ORDINANCE: <u>06-20</u>**
 **TITLE: AN ORDINANCE OF THE TOWNSHIP OF JACKSON, COUNTY OF OCEAN, STATE OF NEW JERSEY AMENDING AND SUPPLEMENTING CHAPTER 244 OF THE TOWNSHIP CODE SO AS TO REPEAL ORDINANCE 04-17 OF THE TOWNSHIP CODE OF THE TOWNSHIP OF JACKSON**

**MOTION TO APPROVE ORDINANCE 06-20 ON FIRST READING, ADVERTISE THE APPROVAL AND NOTICE OF SECOND READING AND PUBLIC HEARING TO BE HELD ON MAY 26, 2020 BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: FLEMMING, KERN, SAUICKIE**
**ABSTAIN: BRESSI**
**ABSENT: CALOGERO**

<b>ORDINANCE 06-20</b>

**NOW, THEREFORE, BE IT ORDAINED**, by the governing body of the Township of Jackson, County of Ocean, State of New Jersey, as follows:

**SECTION 1.**  Ordinance 04-17 be and hereby is repealed.

**SECTION 2.**  All Ordinances or parts of Ordinances inconsistent herewith are hereby repealed.

**SECTION 3.**  If any section, subsection, sentence, clause, phrase or portion of this Ordinance is for any reason held to be invalid or unconstitutional by a Court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions hereof.

**SECTION 4.**  This Ordinance shall take effect after second reading and publication as required by law.

DATE: _____          _____
MAYOR MICHAEL REINA

<b><u>NOTICE</u></b>

NOTICE IS HEREBY GIVEN that the foregoing Ordinance was introduced and passed by the Township Council on first reading at a meeting of the Township Council of the Township of Jackson held on the **12th day of May, 2020**, and will be considered for second reading and final passage at a regular meeting of the Township Council to be held on the **26th day of May , 2020**, at 6:00 p.m., at the Township Municipal Building, located at 95 West Veterans Highway, Jackson, New Jersey, at which time and place any persons desiring to be heard upon the same will be given the opportunity to be so heard. Should the building be closed to the public, then public comment will be available through Zoom Webinar on May 26, 2020.

_____
Janice Kisty, RMC
Jackson Township Clerk

**PUBLIC COMMENT OPENED, RESOLUTIONS ONLY**

At this time, we will have public comment on resolutions only. Anyone wishing to speak on resolutions may do so at this time. Please enable CHAT function.

**NO ONE CAME FORWARD.**

**MOTION TO CLOSE PUBLIC COMMENT, RESOLUTIONS ONLY BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

**RESOLUTION 208R-20**
**TITLE: RESOLUTION OF THE TOWNSHIP OF JACKSON, OCEAN COUNTY, NEW JERSEY AUTHORIZING RELEASE OF CASH MAINTENANCE BOND POSTED BY ROBERT LEWIS OF EXPRESS SYSTEMS, BLOCK 2202 LOT 1, 623 HERMAN ROAD**

**MOTION TO APPROVE BY: FLEMMING**
**MOTION SECONDED BY: KERN**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

 **WHEREAS**, Robert Lewis of Express Systems has requested a release of the Maintenance Bond in the amount of $37,684.73 pertaining to (Block 2202, Lot 1); and

 **WHEREAS**, the Maintenance Bond consists of $37,684.73 in the form of Cash and

 **WHEREAS**, Julio Vega Jr. of T&M Associates, Township Engineer, has reviewed and approved the release of said Maintenance Bond in a letter report dated April 29, 2020 which the letter report is made a part hereof; and

 **WHEREAS**, the Township Council of the Township of Jackson has considered the application and the report of the Engineer for the release of said Cash Maintenance Bond in the amount of $37,684.73; and

 **NOW, THEREFORE, BE IT RESOLVED**, by the Township Council of the Township of Jackson, County of Ocean and State of New Jersey, that the Cash Maintenance Bond in the amount of
$37,684.73 heretofore posted with the Township of Jackson is released on the condition that the applicant:

 **1.** This resolution of release is further contingent upon the applicant/developer reimbursing the Township for any and all outstanding fees and charges as per Township ordinance for the release of said Maintenance Bond.

 **2.** Copies of this resolution to Administration, Finance, Applicant/Developer and Township Engineer.

 **3.** The Mayor and Township Clerk are authorized to sign or issue any appropriate documentation to give effect to the within resolution.

_____
          **JANICE KISTY, R.M.C.**
**DATED: 5-12-20**        **TOWNSHIP CLERK**

Jackson Township Council Meeting of May 12, 2020                     Page 7 of 26

**BILLS AND CLAIMS:**

**MOTION TO APPROVE BILLS AND CLAIMS BY: FLEMMING**
**MOTION SECONDED BY: KERN**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**
**CHECK#              VENDOR                                      AMOUNT**

Firefox                                                                                    about:blank

May 13, 2020                         TOWNSHIP OF JACKSON                          Page No: 1
08:43 AM                          Check Register By Check Date

Range of Checking Accts: First      to Last     Range of Check Dates: 05/12/20 to 05/12/20
        Report Type: All Checks          Report Format: Super Condensed  Check Type: Computer: Y  Manual: Y  Dir Deposit: Y

Check # Check Date Vendor                              Amount Paid    Reconciled/Void Ref Num

CAPITAL
 61890  05/12/20  HOM01  HOME DEPOT PRO                   1,257.75                  7057

Checking Account Totals        Paid     Void     Amount Paid    Amount Void
                   Checks:      1        0        1,257.75          0.00
            Direct Deposit:     0        0            0.00          0.00
                    Total:      1        0        1,257.75          0.00

CURRENT
102617  05/12/20  ALB11  ALBITRON LLC                     1,605.90                  705$
102618  05/12/20  AMP03  AMPCO ELECTRICAL,INC.              308.90                  705$
102619  05/12/20  APR02  APRUZZESE, McDERMOTT,            9,403.47                  705$
102620  05/12/20  ASB01  ASBURY PARK PRESS, INC.            861.30                  705$
102621  05/12/20  BRI18  VAN WICKLE AUTO SUPPLY           1,017.18                  705$
102622  05/12/20  CAB03  CABLEVISION CORP.                  251.23                  705$
102623  05/12/20  CAB03  CABLEVISION CORP.                  334.44                  705$
102624  05/12/20  CAM15  CAMPUS COORDINATES,LLC             100.00                  705$
102625  05/12/20  CEN21  BERNSTEIN OFFICE MACHINE           396.00                  705$
102626  05/12/20  CEN22  CENTRAL JERSEY WASTE AND        49,261.42                  705$
102627  05/12/20  DAS01  DASTI,MURPHY,MCGUCKIN PC             0.00    05/12/20 VOID     0
102628  05/12/20  DAS01  DASTI,MURPHY,MCGUCKIN PC        19,455.00                  705$
102629  05/12/20  EDW04  EDWARDS TIRE COMPANY,INC.          149.70                  705$
102630  05/12/20  ENT06  ENTERPRISE RENT A CAR            1,358.00                  705$
102631  05/12/20  FAS02  FASTENAL COMPANY                   230.03                  705$
102632  05/12/20  FOS02  FOSTER & COMPANY,INC.              561.25                  705$
102633  05/12/20  FRE04  FREEHOLD FORD                    1,533.63                  705$
102634  05/12/20  FRE10  FRENCH & PARRELLO ASSOC.,P.A.    4,237.83                  705$
102635  05/12/20  FYR01  FYR-FYTER SALES & SERVICE,INC.     892.49                  705$
102636  05/12/20  GER17  GERTNER & GERTNER LLC            6,788.72                  705$
102637  05/12/20  HOM01  HOME DEPOT PRO                     161.28                  705$
102638  05/12/20  HUN03  HUNTER JERSEY PETERBILT             25.45                  705$
102639  05/12/20  INT36  INTERGLOBE COMMUNICATIONS,INC      470.29                  705$
102640  05/12/20  JCP01  JERSEY CENTRAL POWER & LIGHT    30,294.27                  705$
102641  05/12/20  JER29  JERRY'S AUTO BODY, LLC           2,903.00                  705$
102642  05/12/20  KTS    KT'S OFFICE SERVICES,LLC           213.00                  705$
102643  05/12/20  LAR02  LARSON FORD, INC.                1,041.80                  705$
102644  05/12/20  LOR02  LORCO PETROLEUM SERVICES           280.00                  705$
102645  05/12/20  MAR76  MARCO HOLDINGS LLC               1,976.00                  705$
102646  05/12/20  MGL01  MGL PRINTING SOLUTIONS             688.00                  705$
102647  05/12/20  OCE03  OCEAN COUNTY LANDFILL CORP.      2,500.00                  705$
102648  05/12/20  PAR33  PARTAC PEAT CORPORATION          4,252.73                  705$
102649  05/12/20  PET29  PETROLEUM TRADERS CORPORATION    6,203.67                  705$
102650  05/12/20  POT05  SANITARY SOLUTIONS INC.            812.00                  705$
102651  05/12/20  PRI30  PRIMEPOINT                         518.00                  705$
102652  05/12/20  QUA15  QUALITY AUTO GLASS INC           1,120.00                  705$
102653  05/12/20  SOU21  SOUTH JERSEY ENERGY COMPANY         94.97                  705$
102654  05/12/20  STA76  STANDARD INSURANCE CO.           8,212.24                  705$
102655  05/12/20  SUR08  SURF TERMITE & PEST CONTROL        330.00                  705$
102656  05/12/20  TRE34  TREASURER, STATE OF NJ           1,150.00                  705$
102657  05/12/20  VAN02  VAN DERVEER TIRE & SERVICE CTR     105.99                  705$

1 of 6                                                              5/13/2020, 8:52 AM

Jackson Township Council Meeting of May 12, 2020        Page 8 of 26

Firefox        about:blank

```
May 13, 2020                                TOWNSHIP OF JACKSON                              Page No: 2
08:43 AM                                  Check Register By Check Date


 Check # Check Date Vendor                               Amount Paid    Reconciled/Void Ref Num


CURRENT                                      Continued
 102658  05/12/20   VER03    VERIZON WIRELESS                2,047.35                    7055
 102659  05/12/20   VER04    VERIZON                            36.31                    7055
 102660  05/12/20   VER08    VERIZON WIRELESS                  646.27                    7055
 102661  05/12/20   WBM01    W.B.MASON COMPANY                 281.30                    7055

 Checking Account Totals          Paid      Void     Amount Paid      Amount Void
                     Checks:        44         1      165,110.41            0.00
               Direct Deposit:       0         0            0.00            0.00
                      Total:        44         1      165,110.41            0.00


DEV FEES-COAH    DEV FEES - COAH (NEW)
    359  05/12/20   DAS01    DASTI,MURPHY,MCGUCKIN PC          390.00                    7061

 Checking Account Totals          Paid      Void     Amount Paid      Amount Void
                     Checks:         1         0         390.00            0.00
               Direct Deposit:       0         0           0.00            0.00
                      Total:         1         0         390.00            0.00


DEVELOPERS-OF    DEVELOPERS-OCEAN FIRST
  66653  05/12/20   CME01    CONSULTING & MUNICIPAL ENG LLP      0.00   05/12/20 VOID          0
  66654  05/12/20   CME01    CONSULTING & MUNICIPAL ENG LLP  1,862.00                    7056
  66655  05/12/20   DAS01    DASTI,MURPHY,MCGUCKIN PC          150.00                    7056
  66656  05/12/20   GER17    GERTNER & GERTNER LLC             150.00                    7056
  66657  05/12/20   JAC08    JACKSON TOWNSHIP CURRENT FUND  10,208.30                    7056
  66658  05/12/20   OWE01    OWEN LITTLE & ASSOC., INC.         0.00   05/12/20 VOID          0
  66659  05/12/20   OWE01    OWEN LITTLE & ASSOC., INC.     8,676.33                    7056
  66660  05/12/20   QUI08    QUICKCHEK CORP.                1,339.24                    7056
  66661  05/12/20   REM01    REMINGTON,VERNICK & VENA ENG.  1,246.00                    7056
  66662  05/12/20   TM02     T & M ASSOCIATES                   0.00   05/12/20 VOID          0
  66663  05/12/20   TM02     T & M ASSOCIATES                   0.00   05/12/20 VOID          0
  66664  05/12/20   TM02     T & M ASSOCIATES                   0.00   05/12/20 VOID          0
  66665  05/12/20   TM02     T & M ASSOCIATES                   0.00   05/12/20 VOID          0
  66666  05/12/20   TM02     T & M ASSOCIATES               19,718.80                    7056

 Checking Account Totals          Paid      Void     Amount Paid      Amount Void
                     Checks:         8         6      43,350.67            0.00
               Direct Deposit:       0         0           0.00            0.00
                      Total:         8         6      43,350.67            0.00


GENERAL TRUST
  62195  05/12/20   ASP01    ASPEN TREE EXPERT CO., INC.       445.00                    7058
  62196  05/12/20   CON54    CONDITION GRAY LLC             8,999.00                    7058
  62197  05/12/20   COU04    COUNTY LINE HARDWARE             400.00                    7058
  62198  05/12/20   GTB01    G.T.B.M. INC.                  1,000.00                    7058
  62199  05/12/20   KUN03    MATTHEW KUNZ                      160.00                    7058
  62200  05/12/20   LON11    LONG BEACH TOWNSHIP              705.00                    7058
  62201  05/12/20   MED09    Medical Indicators, Inc.          89.97                    7058
```

Jackson Township Council Meeting of May 12, 2020                    Page 9 of 26

Firefox                                                                                        about:blank

| May 13, 2020<br>08:43 AM | | | TOWNSHIP OF JACKSON<br>Check Register By Check Date | | Page No: 3 |
|---|---|---|---|---|---|

| Check # Check Date Vendor | | | | Amount Paid | Reconciled/Void Ref Num |
|---|---|---|---|---|---|

GENERAL TRUST

| Checking Account Totals | Paid | Void | Amount Paid | Amount Void | |
|---|---|---|---|---|---|
| Checks: | 7 | 0 | 11,798.97 | 0.00 | |
| Direct Deposit: | 0 | 0 | 0.00 | 0.00 | |
| Total: | 7 | 0 | 11,798.97 | 0.00 | |

HANDICAPPED

| 2454  05/12/20   CAM15   CAMPUS COORDINATES,LLC | | | 226.25 | | 7060 |
|---|---|---|---|---|---|

| Checking Account Totals | Paid | Void | Amount Paid | Amount Void | |
|---|---|---|---|---|---|
| Checks: | 1 | 0 | 226.25 | 0.00 | |
| Direct Deposit: | 0 | 0 | 0.00 | 0.00 | |
| Total: | 1 | 0 | 226.25 | 0.00 | |

PARKS  REC

| 67102  05/12/20   AFZ01   BHUMI AFZAL | | | | 155.00 | 7059 |
|---|---|---|---|---|---|
| 67103  05/12/20   COO21   ERIN COONEY | | | | 80.00 | 7059 |
| 67104  05/12/20   GRE38   NANCY GREINER | | | | 3,539.00 | 7059 |

| Checking Account Totals | Paid | Void | Amount Paid | Amount Void | |
|---|---|---|---|---|---|
| Checks: | 3 | 0 | 3,774.00 | 0.00 | |
| Direct Deposit: | 0 | 0 | 0.00 | 0.00 | |
| Total: | 3 | 0 | 3,774.00 | 0.00 | |

| Report Totals | Paid | Void | Amount Paid | Amount Void | |
|---|---|---|---|---|---|
| Checks: | 65 | 7 | 225,908.05 | 0.00 | |
| Direct Deposit: | 0 | 0 | 0.00 | 0.00 | |
| Total: | 65 | 7 | 225,908.05 | 0.00 | |

Jackson Township Council Meeting of May 12, 2020                    Page 10 of 26

Firefox                                                                                    about:blank

May 13, 2020                          TOWNSHIP OF JACKSON                          Page No: 4
08:43 AM                          Check Register By Check Date

| Totals by Year-Fund Fund Description | Fund | Budget Total | Revenue Total | G/L Total | Total |
|---|---|---|---|---|---|
| | 0-01 | 161,289.98 | 0.00 | 0.00 | 161,289.98 |
| | 9-01 | 3,720.43 | 0.00 | 0.00 | 3,720.43 |
| | C-04 | 1,257.75 | 0.00 | 0.00 | 1,257.75 |
| | G-02 | 100.00 | 0.00 | 0.00 | 100.00 |
| | T-12 | 11,798.97 | 0.00 | 0.00 | 11,798.97 |
| | T-13 | 3,774.00 | 0.00 | 0.00 | 3,774.00 |
| | T-14 | 226.25 | 0.00 | 0.00 | 226.25 |
| | T-20 | 390.00 | 0.00 | 0.00 | 390.00 |
| Year Total: | | 16,189.22 | 0.00 | 0.00 | 16,189.22 |
| Total Of All Funds: | | 182,557.38 | 0.00 | 0.00 | 182,557.38 |

5/13/2020, 8:52 AM

Firefox                                                                                          about:blank

May 13, 2020                          TOWNSHIP OF JACKSON                              Page No: 5
08:43 AM                           Check Register By Check Date

| Project Description | Project No. | Project Total |
|---|---|---|
| 7200135438-PREMIER @ WHISP GRV | P31170 | 2,132.55 |
| WHISPERING MEADOWS/PARA HOMES | P31386 | 2,713.50 |
| GRAWTON RD/RG2 ASSOCIATES | P31662 | 859.75 |
| LIBERTY COMMONS/HOPE CHAPEL RD | P31777 | 111.00 |
| OFFICE,SHOWROOM/JACKSON PROP | P31825 | 150.00 |
| SITE PLN 722-1/JACKSON 21 LLC | P31849 | 222.00 |
| SITE PLAN #757/ASPEN TREE EXP | P31920 | 1,628.00 |
| TREE INSPECTION/BARON BUILDERS | P31985 | 399.00 |
| NEW INSPECTION/39 STEPS | P31989 | 111.00 |
| NEW INSPEC SITE PLN #768/BERK | P32001 | 84.50 |
| PURE FOODS MAJ SITE PLN PH 1 | P32008 | 111.00 |
| OAKS @ JKSN WOODS AFF HOUSING | P32027 | 651.00 |
| INSPECTION FEES/RZ HOLDINGS | P32045 | 111.00 |
| HOUSE OF WORSHIP/KOLEL SHAS YI | P32058 | 396.00 |
| VALLEY RIDGE 12 LOT/FELOCHILD | P32107 | 1,332.00 |
| MAJ 601-1  PINEWALK @ JACKSON | P32119 | 892.33 |
| 1100 RESIDENT UNITS/EL @ JKSN | P32148 | 5,425.00 |
| SITE PLAN/SIX PROGRESS PLACE | P32174 | 7,844.50 |
| 100K SF SELF STORAGE/SAFSTOR | P32203 | 1,939.00 |
| INSPECT FEE/WHITESVILLE COMMON | P32209 | 185.00 |
| INSPECTS/EJG PROP @ WOODCREST | P32212 | 133.00 |
| CURB INSPECTION | P32218 | 150.00 |
| JF KIELY | TWPOE06 | 840.00 |
| VERIZON- | TWPOE114 | 780.00 |
| JCP&L PLANNED | TWPOE132 | 3,450.00 |
| HACKENSACK MERIDIAN HEALTH | TWPOE158 | 1,440.00 |
| ASPLUNDH TREE | TWPOE256 | 825.00 |

Firefox                                                                                    about:blank

May 13, 2020                         TOWNSHIP OF JACKSON                          Page No: 6
08:43 AM                          Check Register By Check Date

| Project Description | Project No. | Project Total |
|---|---|---|
| DAVEY TREE EXP | TWPOE50 | 1,350.00 |
| 60 ACRES | TWPOE65 | 960.00 |
| JT SUBDIVISION ACCT | TWPSO001 | 563.30 |
| 7760145741-99.01VAR/14.01VAR | Z31393 | 133.00 |
| gas station/conv store | Z31505 | 1,339.24 |
| OFFICE WAREHOUSE BLDG/JC IND. | Z31636 | 266.00 |
| SO KNOLLS SEC 3/TIMBER RIDGE | Z31787 | 296.00 |
| NOAH'S ARK SCHOOL FOR DOGS | Z31865 | 405.00 |
| ADVENTURE CROSSING/CARDINALE | Z32114 | 429.00 |
| SUBDIV #641/HOPE CENTRAL LLC | Z32130 | 111.00 |
| OLIVERIE FUNERAL HOME | Z32171 | 1,591.00 |
| WOODSHOP/CARPENTRY-KNOWLES | Z32179 | 841.00 |
| VAR 3301/MELISSA McFADZEAN | Z32219 | 150.00 |
| Total Of All Projects: | | 43,350.67 |

**RESOLUTION 209 R-20**
**TITLE: APPROVE JACKSON TOWNSHIP COUNCIL MEETING MINUTES OF**
**APRIL 28, 2020**

**MOTION TO APPROVE BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

        **WHEREAS,** official Minutes of a Jackson Township Council meeting have been
prepared; and

**WHEREAS,** the Township Clerk has reviewed these Minutes and has submitted them to the Town Council for their approval.

**NOW, THEREFORE, BE IT RESOLVED** by the Township Council of the Township of Jackson, County of Ocean, that;

1. The following Minutes are hereby approved by the Jackson Township Council:

APRIL 28, 2020

2. Copies of this resolution to any interested parties.

_____
**JANICE KISTY, R.M.C.**
**DATED: 5-12-20**                    **TOWNSHIP CLERK**

---

**RESOLUTION 210R-20**
**TITLE: AUTHORIZE CHANGE TO CUSTODIAN OF PETTY CASH FUNDS FOR THE DEPARTMENT OF PUBLIC WORKS FROM FRED RASIEWICZ TO ROBERT STAUFFER**

**MOTION TO APPROVE BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

**WHEREAS,** Fred Rasiewicz was custodian of the Public Works Petty Cash Fund, and

**WHEREAS,** in accordance with N.J.S.A. 40A:5-21, the Township of Jackson is changing custodian to Robert Stauffer: and

**WHEREAS,** Robert Stauffer is covered under a blanket surety bond in the amount of $1,000,000.

**NOW, THEREFORE, BE IT RESOLVED** that the Jackson Township Council hereby authorizes such action and two copies of this resolution be filed with the Division of Local Government Services, New Jersey Department of Community Affairs for approval.

_____
**JANICE KISTY, R.M.C.**
**DATED: 5-12-20**                    **TOWNSHIP CLERK**

---

**RESOLUTION 211R-20**
**TITLE: AUTHORIZE MEMBER PARTICIPATION IN THE SOURCEWELL COOPERATIVE PURCHASING GROUP FOR CALENDAR YEAR 2020**

**MOTION TO APPROVE BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

**WHEREAS**, N.J.S.A. 52:34-6.2 authorizes contracting units to purchase goods, or to contract for services, may make purchases and contract for services through the use of a nationally-recognized and accepted cooperative purchasing agreement that has been developed utilizing a competitive bidding process by another contracting unit within the State of New Jersey, or within any other state, when available; and

**WHEREAS**, the nationally-recognized SOURCEWELL COOPERATIVE PURCHASING GROUP  has offered voluntary participation in the national cooperative purchasing agreement for the purchase of goods and services; and

**WHEREAS**, it is the desire of the Township of Jackson to join the SOURCEWELL COOPERATIVE PURCHASING GROUP to purchase goods and services, to make the procurement process more efficient and to provide cost savings to the Township.

**NOW, THEREFORE, BE IT RESOLVED,** by the governing body of the Township of Jackson, County of Ocean, State of New Jersey as follows:

**1.** That the governing body of the Township of Jackson hereby authorizes the Mayor and Municipal Clerk to enter into a member participation agreement and to participate in the SOURCEWELL COOPERATIVE PURCHASING GROUP for Calendar Year 2020.

**2.** The Township shall be responsible to ensure that the goods and or services procured through the SOURCEWELL COOPERATIVE PURCHASING GROUP comply with all applicable laws of the State of New Jersey, Local Public Contracts Law (N.J.S.A. 40A:11-1 et seq.) and all other provisions of the revised statutes of the State of New Jersey.

**3.** A certified copy of this Resolution shall be forwarded by the Township Clerk to Business Administrator, Chief Financial Officer, Purchasing Agent and any other interested parties.

_____

**JANICE KISTY, R.M.C.**
**DATED: 5-12-20**                          **TOWNSHIP CLERK**

---

**PUBLIC COMMENT, ANY TOPIC**

We will now have public comment on any topic. Anyone wishing to speak on any topic may do so at this time. Enable the CHAT function.

**BUSINESS ADMINISTRATOR WALL-** asked residents to confirm whether their audio is clear enough. Residents confirmed the audio is clear. He read each question submitted via chat.

**CHARLES –** questioned the reason for the Ordinances being repealed.

**COUNCIL VICE PRESIDENT SAUICKIE-** ordinances are being repealed due to a Legislative standpoint, as they are redundant. He asked Attorney McGuckin to explain the details. Whether the ordinances are adopted or not the types of procedures must be followed.

**ATTORNEY MCGGUCKIN-**stated Ordinance 04-17 banned dormitories anywhere in the municipality as a permitted use. That ordinances were redundant because it was not a permitted use that was not allowed already in the municipality. Ordinance 03-17 eliminated certain zoning districts from permitting schools and this ordinance allows for the ordinance to remain the same as in 2017 in regards to the certain zoning districts. It does not affect the R1 zone but will change R2, R3, and R5 the multifamily units. If the ordinance is approved the ordinance would remain the same as the original ordinance approved in 2017. It does not affect Oros Bais litigation.

**BUSINESS ADMINISTRATOR WALL-** stated residents are unable to hear Attorney McGuckin as clear as they would like.

**LISA DANSKI- 343 MURRAY DRIVE-** she fully opposes the ordinances being reversed.

**DENISE GARNER- 14 EVERGREEN COURT-** questioned Council Vice President Sauickie when he stated that there was redundancy in our land use laws. Asked for Council

Vice President Sauickie to cite his findings to the public. Asked the definition of dormitory with our township. She stated her interpretation of the definition of a "dormitory".

**COUNCIL VICE PRESIDENT SAUICKIE-**whether the original ordinance is set forth or not, a dormitory is not a permitted use. It requires to be heard before a Land Use board either way. He explained to Ms. Garner reason for the ordinance being redundant. It must be reviewed and approved by a Land Use board.

**ATTORNEY MCGUCKIN-** the definition of a "dormitory" was not included in the original ordinance. A "dormitory" is not a permitted use. There is still no definition available as "dormitories" are not a permitted use. No definition will be available even after the second reading of Ordinance 06-20.

**DONOVAN-** questioned the reason for these ordinances being repealed that are supported by all.

**JOE KRUSKOWSKI-** stated he prefers an increase in taxes than repeal these ordinances.

**KEN GENDERO-** stated "it is a sad day in Jackson".

**JOE-**questioned the reason for comments being ignored.

**PETER VINCINO-**stated "this is ridiculous."

**KIMBERLY-** this virtual meeting is a joke as many residents are unable to understand the reasons and explanations for the ordinances being repealed.

**MR. CALCATERRA-** questioned the effective date for the recreational facilities to reopen as per Mayor Reina's statement. Questioned if practices can resume immediately as long as social distancing regulations are followed.

**BUSINESS ADMINISTRATOR WALL-** we are working together with the Recreation Department to provide an expedient answer to Mr. Calcaterra's question. We will have an answer tonight or the latest by tomorrow. Any other questions pertaining to Recreation will be facilitated and addressed.

**CHARLES-** questioned the reason for repealing these ordinances when there is poor attendance during this pandemic.

**COUNCIL VICE PRESIDENT SAUICKIE-** the council would prefer to have an in person council meeting but the business of the township must continue. We are doing our best to have these meetings available by Zoom and be as transparent as we can be. We obtained feedback indicating our audio and visual needed to be upgraded. The audio and visual have been upgraded and hopes it is working properly. We understand the frustration, but as per the executive orders this is the best we can do to accommodate the current situation.

**ELENOR HANNUM- 6 EVERGREEN COURT-** questioned the repeal of the ordinances and how it will impact the taxes, our neighborhoods, schools and the quality of life in our neighborhoods.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the 2020 Council is incredibly focused on the quality of life of the residents. We have listened to the residents .He stated a town is measured fiscally by its bond rating. Jackson has an AA+ S and P Bond rating which is incredibly high in a State that is incredibly low. We have low traffic and try to keep our taxes low as seen on our recently approved Municipal Budget. Our taxes are a fraction of towns within our State. Other towns have tax payer increases which are dramatically higher. The Council has allotted one million dollars to our school system to aid our students, teachers, and programs. Roads, and other services are also important to our town. We recently passed an ordinance protecting our town against developers bringing in soil and fill that is unchecked. The Council received great feedback in terms of that ordinance. This Council wants to continue preserving open space. Last year, we used our

open space funds to purchase Rova Farms. Our open space fund currently has available funds to make purchases for additional land. This process takes time and the Council supports it. He is unaware of any direct impact to the quality of life by adopting these ordinances. This Council has the best interest of the town.

**MARIA NEMETH-** asked for these ordinances to be tabled as these ordinances refer to "dorms" which are monumental. Residents should be able to attend a public meeting with a proper speaking forum prior to making a decision. This is unconstitutional and hopes for a thorough explanation for making a decision at this time.

**RAY-** questioned the reason for making a decision and not waiting until residents can attend the Council meetings in person.

**DONOVAN-** questioned if the ordinances were redundant why where they supported by Mayor Reina as they were set in place in the face of litigation.

**JOYCE CLADEK-** questioned the reason for making this decision at this time.  We should postpone this decision until residents can appear in person and address this matter. These ordinances have been in effect for 3 years and all residents of Jackson should be involved in the decision.

**PETER VICINIO-** questioned why these ordinances are being discussed during quarantine.

**COUNCIL VICE PRESIDENT SAUICKIE (responded to the five previous questions made by residents)** –to the comment made in regards to the Mayor, unfortunately he is unable to attend this meeting to respond to that question. The Council representing the residents of Jackson today were not serving when these ordinances were adopted. Administratively the ordinances have been identified as redundant. Attorney McGuckin explained this previously. The Council has received feedback from residents who do not understand the ordinances being rescinded, especially on the dorm's ordinance. The applicant will still need to be heard before a Land Use Board in order to move forward with the application. A review process is a good thing and we have good Land Use laws in our town. The Planning and Zoning Boards are responsible for reviewing the applications and ensuring the laws are obeyed. This is the procedure to follow whether the ordinance is rescinded or not.

**ELENOR HANNUM- 6 EVERGREEN COURT-** questioned the reason for the postings of the ordinances not available on our township website. The posting allows residents to read the ordinance prior to the meeting. The postings provide transparency for residents to analyze.

**COUNCIL VICE PRESIDENT SAUICKIE-** asked Attorney McGuckin whether the township must post documentation of an ordinance prior to the first reading. He stated that the council was complemented on transparency especially in the "public comments" sections within our agenda, where we typically are not required to do so by law. We will review and consider this going forward.

**ATTORNEY MCGUCKIN –** stated it technically is not a document that must be disclosed if it hasn't been approved. The first reading is an introduction and the public hearing will be held on May 26, 2020. Between the time it is introduced and voted on, the ordinance is then published which is required by law. It is then available at town hall to analyze. The public hearing will not be heard this evening as it is scheduled for the next council meeting.

**JOSEPH KRUKOWSKI-** questioned why Mr. Inzelbuch is still an alternate to the Planning Board when he attended a CUPON meeting, as other members were forced to resign.

**KIMBERLY-** stated the ordinances must be tabled.

**LISA DANSKI-343 MURRAY DRIVE-** asked Council to answer a previous question she submitted.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the council does not appoint Planning Board members and asked respectively to address this question to the Mayor by email. It is not a permitted use and rescinding has caused confusion. The rescinding of the ordinance is administrative and it's a redundant item. It doesn't change the fact that an applicant will have to go before a Land Use Board in order to obtain approval.

**BUSINESS ADMINISTRATOR WALL-**as he is moderating this meeting through Zoom, there are items that appear off topic or inappropriate. These comments or questions will be referred to the Township Attorney in an appropriate forum. I will recite the comments or questions referring to the topic to the best of my ability.

**ELENOR HANNUM-6 EVERGREEN COURT-** questioned the zones to be impacted by the school zones**.**

**ATTORNEY MCGUCKIN-**as of 2010 schools were not permitted in the R1 zones and this will continue whether the ordinance is approved or not. This ordinance will return the schools to the same position they were in 2017. It is the R2, R3, R5, R20, R15, R9 and multi- family zones**.** It is his understanding there are no current applications for those zoning areas

 **QUESTION-** current Ordinance 03-17 and 04-17 are unclear and ambiguous. There is no redundant legislation and the ordinances should remain.

**RICHARD CIULLO-** wanted confirmation that dormitories prior to 2017 were not permitted in Jackson Township. Questioned what would be the harm in keeping Ordinance 04-17 as it is written.

**ATTORNEY MCGUCKIN-** confirmed they were not a "permitted use" and if the ordinance is adopted they would not be permitted. The harm in keeping Ordinance 04-27, is the fact that the township has been sued in court in terms of three different litigation matters.

 **I PHONE QUESTION-** questioned if COVID-19 will set new guidelines for schools, high density homes and will social distancing affect Land Use laws.

**COUNCIL VICE PRESIDENT SAUICKIE-** cannot comment whether or not new guidelines will be set. The pandemic has influenced our lives in many ways and he wouldn't be surprised if guidelines are incorporated in Land Use laws.

**ELENOR HANNUM-6 EVERGREEN COURT-** questioned the qualifications and in what residential zones would be impacted by this decision.

**MICHELE CAMPBELL-** congratulated the council for making the efforts to continue to conduct the business of the township inclusive of the public.

**RAY-** questioned why the council is repealing this ordinance without public attendance.

**COUNCIL VICE PRESIDENT SAUICKIE-** understands the resident's frustrations and hopes for resident's to attend the council meetings when the executive orders are lifted. It is better for the Council and the residents of Jackson to attend in person. There is a lot of work to be conducted behind the scenes to bring a Zoom meeting to the residents. We are trying to be as "transparent" as possible as best we can.

**ROBERT SKINNER-**asked if these repealed ordinance will pave the way to settling lawsuits.

**ATTORNEY MCGUCKIN-** it is unknown to us at this time, whether this will occur once these ordinances are repealed.

**VINCINO-** questioned the reason for having an ordinance which clarifies the original ordinance.

**ATTORNEY MCGUCKIN-** stated if the township can have the same effect without being sued, as an Attorney it is my recommendation to do so.

**JOE KRUKOWSKI-**questioned the reason why the Multicultural Committee created by the Mayor includes individuals who do not reside in Jackson.

**COUNCILMAN VICE PRESIDENT SAUICKIE-** stated questions pertaining to any committee appointed by the Mayor must allow him to answer those questions.  The question will be referred to Mayor Reina to address and encouraged residents to contact the Mayor by email.

**JOSEPH SULLIVAN-** thanked Council for the explanation on the ordinances. Dormitories were not a permitted use previously and it is redundant. He questioned the changes that would take place with the repeal of the school ordinance.

**ATTORNEY MCGUCKIN-** it changes to the original ordinance which was written in 2017.

**ROSARIO-** she opposes this move to change the ordinances to the original state for many reasons. She believes that conducting this meeting today is "unconstitutional" as it is not an emergency. It is being revisited and we have the right to attend personally. She is upset as she feels the Council is disregarding the residents and it is difficult to express herself via chat.

**ELENOR HANNUM- 6 EVERGREEN COURT-** questioned the reason for the Multicultural Committee being canceled until further notice. She finds it questionable that this committee was created for Jackson residents and it is managed by the DOJ, Attorney General, Prosecutor's Office and non-residents. She is worried that the objectives of this committee is not a "multicultural objective" and  has a different agenda.

**COUNCIL VICE PRESIDENT SAUICKIE-** any questions pertaining to Mayor appointed committee can be submitted via email and he will respond accordingly.  Council will forward this question as well.

**ROBERT SKINNER-**asked Attorney McGuckin to explain the situation of a Judge's order to revisit and revote on certain Planning Board applications.

**ATTORNEY MCGUCKIN –** stated he is not a party to the litigation so he could not comment on what the Judge ruled. The Planning Board is represented by another counsel.

**TIM CALCUTERRA-** thanked Business Administrator Wall and Mayor Reina. As the President of the Jackson Little League looks forward to working with the town and it's officials to resume sport activities.

**BUSINESS ADMINISTRATOR WALL-** there are many questions and comments from the same individuals. We are trying to navigate through the chat questions and comments but with this format we want to ensure that everyone's voice is heard.

**VAZZOPARDI-** stated overcrowding, environmental concerns, high density developments can result in environmental concerns. Questioned whether the impact to the ecosystem been considered.  Our natural resources which include land and water are limited and their supply will eventually dry out. Lakewood's water supply cannot keep up with the growth and resulted in acquiring more water or withdrawing water from wells. Traffic congestions will occur and questioned the impact to taxpayers when roads need repairs. We are seeking to find solutions short term in order to stop lawsuits. We need to think about the long term quality of life for all people who live in Jackson.

**COUNCIL VICE PRESIDENT SAUICKIE-** as a long term resident understands comments made by Mr. Vazzopardi. We appreciate the quality of life and hope to continue

as in previous years. We are ensuring our natural resources by acquiring open space and want to increase the amount of open space. Our town has conducted a great job in maintaining the roads that our township owed. There are also County roads which Administration has worked with to ensure those roads are kept updated and result in a low impact to the taxpayers. The Municipal Budget was recently approved and the increase was $21.00 for the average taxpayer. The average tax payer pays $1,600 a year to support the services within the town. We are always looking for opportunities to keep that in check and keep those numbers as the low as possible. In regards to other towns consuming water there are multiple towns surrounding Jackson that are consuming more water than there infrastructure can support. Many towns surrounding Jackson take water from Jackson. We have made it clear that protecting Jackson and its unique environment is a top priority for this Council. We passed ordinances in support of the environment and the wildlife. We approved an animal cruelty ordinance that was passed last year and recently a soil or fill deportation ordinance to ensure that developers bring in "clean" soil into the town. The Council is seeking land to protect and keep the "quality of life". This includes keeping the town fiscally responsible by keeping the taxes low.

**DIANA CAMPAGNA 56 TOPAZ DRIVE-** stated the key to overall town health is keeping a fiscally responsible, low traffic, low taxes, instead of caving to developers and high density housing. Since COVID 19 is leading to food shortages, why not encourage more farming, co-op farming, and animal farming to be more unsustainable. It would aid in preserving open space and provide for residents and make available job opportunities.

**COUNCIL VICE PRESIDENT SAUICKIE-** concurred with the statement made by Ms. Campagna regarding farming and stated the council would consider that.

**JACK-** stated he is from the Jackson Board of Fire Commissioners and Fire District 3 President.

**JACKSON RESIDENT-** questioned if "dormitories" would be permitted in residential areas and will existing homes be allowed to be converted in residential neighborhoods from existing uses.

**ATTORNEY MCGUCKIN –** anyone interested in constructing a "dormitory" will have to seek a variance from the Zoning Board and would need to provide their burden of proof under the statutes on whether they should be entitled construct or not. It is like any other use within our municipality. These ordinances do not change the requirements in the laws.

**BUSINESS ADMINISTRATOR WALL-** asked Attorney McGuckin to clarify the first reading and second reading of an ordinance for those who missed the legislative process.

**ATTORNEY MCGUCKIN-**explained the procedure on the first reading. The first reading of an ordinance has no public comment. This Council allows for comments to be conducted at the first reading. The residents are currently commenting on that topic now. The public hearing is scheduled after publication and notice. The second hearing will be held on May 26, 2020.

**MINDY MURRAY-**questioned the reasons for dissolving the two ordinances and asked for ordinances be incorporated into one.

**ATTORNEY MCGUCKIN-** the ordinances cannot be incorporated as one of the ordinances pertains to a "permitted use" and the other is specific to "dormitories".

**BUSINESS ADMINISTRATOR WALL-** stated he is looking through the questions to ensure all resident's comments are read into the record.

**ELENOR HANNUM- 6 EVERGREEN COURT-** questioned whether schools will be a "permitted use" in RG3 and RG5 residential zones. Asked whether there can be a school and a residential home in one acre of land. This will devalue homes in an entire neighborhood.

**ATTORNEY MCGUCKIN- i**f the ordinance is adopted the ordinances would go back how it was for many decades, which permits schools in certain zones. The zones include the RG3 and RG5 zones. There are standards in respect to the area of schools and no changes will be made to that.

**BUSINESS ADMINISTRATOR WALL-** asked Attorney McGuckin as the protocol on comments made that may be inflammatory and officially including them to the record. This meeting has a different conversational forum.

**ATTORNEY MCGUCKIN-** the public comment allows for the public to voice their concerns and comments. However the chair has the right to prohibit certain comments from being made. The township could be put into a position where it is condoning some type of bias behavior at an official meeting. He stated if Business Administrator Wall believes a comment falls under those circumstances than the Chair must decide whether the comment should be permitted.

**NICHOLAS-**stated all comments should be included for the record.

**DENISE GARNER-14 EVERGREEN COURT-** questioned whether a developer through campaign donations can influence favorable outcomes from the Zoning Board.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the "soil or fill importation" ordinance is the best example of how we are putting out town first. He stated at our last meeting, Attorney McGuckin read into the record oppositions from an Attorney representing two developers. They opposed the "soil and fill" ordinance and asked to table it until further questions could be made. We welcome all kind of comments. We try to strike a balance between bringing smart commercial businesses into our town. There are certain areas within our town to bring smart commercial businesses so traffic congestion can be controlled. We are in favor of businesses in our town, as it aids residents in keeping their taxes lower by bringing commercial ratables. We will still continue to fight to protect the unique environment of Jackson. Even though we received opposition by developer's Attorney's we approved it unanimously.

**BUSINESS ADMINISTRATOR WALL** read Mr. Nemeth's comment and stated his comment is fair. He stated there are two individuals with the same name involved in this chat. The challenge of this technology is the ability to be fully transparent and provide a voice to everyone participating in this chat.

**JEFF NEMETH- 397 PERRINEVILLE ROAD-** stated every comment should be read for the record. It is "unconstitutional" forum for tax payers to voice their concerns or provide their comments.

**JOHN SIEDLER- FIRE DISTRICT – 3 VASSAR COURT-**this ordinance preserves lives and prevents tragedies from occurring. He gave examples of multiple fires which resulted in people losing their lives. Please save lives and put politics aside.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the statistics provided by Mr. Siedler are tragedies of lives being lost. The ordinance does not make a "dormitory" a "permitted use" in Jackson. It will need to be heard before a Land Use Board, reviewed, and then approved. It can be also be denied.

**COUNCILMAN KERN-** asked Attorney McGuckin even though it is not a "permitted use" can an applicant seek relief from Ordinance 04-17 if there application includes a "dormitory" through the Zoning Board.

**ATTORNEY MCGUCKIN-** concurred with statements made by Councilman Kern. Whether the ordinance is in place or not anyone has the right to make an application for a "dormitory" and they would go to the Zoning Board of Adjustments for that purpose. Regardless of the ordinance being in effect the applicant they would have to go to the Zoning Board to seek approval. They can seek relief under the NJ Municipal Land Use law for any use even if it is not permitted.

**MINDY MURRAY-** this ordinance should be tabled.

**JENETTE DEFILLIPO-** asked whether there was any rejections of dorms that were heard by a Judge. It seems like there is an interest for one part of this community and anyone with a difference of opinion is labeled.

**CHLOE DEROSA-** this matter should be postponed and does not understand what is being said. It should be "unconstitutional" to make decisions without an in person meeting.

**MINDY MURRAY-**"cultural is not religion". This is the reason for many towns not being involved and questioned the reason for Jackson getting involved.

**RESIDENT OF JACKSON-** questioned when the council would be creating an ordinance that sets standards for Township wide eruv's. There should be three ordinances which include ordinances for utility pole utilizations, eruv's in neighborhoods and eruv's for neighborhoods with underground utilities.

**COUNCIL VICE PRESIDENT SAUICKIE-** in regards to comments made in regards to eruv's, Council may consider an ordinance.

**ATTORNEY MCGUCKIN-**there are current lawsuits challenging Ordinance 04-17 in Federal court but a Judge has not ruled yet.

**PETER VICINIO-** questioned if the language in the new ordinance is more restrictive than the prior ordinance and questioned the major differences between the two ordinances.

**ATTORNEY MCGUCKIN-** the new ordinance if adopted would be identical to the way the ordinance existed as of 2017.

**JEFF NEMETH- 397 PERRINEVILLE ROAD-** questioned if the council finds this to be a "constitutional" way to make changes to our ordinances by using Zoom technology. Asked for an explanation on why these matters cannot be delayed.

**COUNCILMAN VICE PRESIDENT SAUICKIE-**asked Attorney McGuckin to explain the protocol to be followed when using Zoom technology.

**ATTORNEY MCGUCKIN-** the township is required by law to continue its operations as the State of New Jersey does. State of New Jersey has directed the governing body how to handle these meetings and provided guidelines to continue that process. The Township has done its best to comply with those demands and obtained upgraded equipment for the purpose of conduct these meetings. We are not aware of how long this procedure will be in effect and the township must continue to operate as required to do.

**COUNCIL VICE PRESIDENT SAUICKIE-** understands Mr. Nemeth's frustration and there is no clear plan on when the executive order will be lifted. We must continue to conduct the business of the town. It is unknown how long we will need to follow these guidelines and we are doing our best to move forward.

**CHRIS SIKORSKI- 428 E BIRD VILLAGE ROAD-**questioned why the Council isn't helping small businesses to reopen instead of adopting ordinances.

**COUNCIL VICE PRESIDENT SAUICKIE-** every member of this Council has had experience as a small business owner. We understand small business owners conditions during this pandemic The Council and the Mayor are supportive of small businesses and have complemented resident initiatives on places like Facebook. We have promoted business and have provided a weekly update on discussions with the Governor. Earlier I read a statement made by Mayor Reina in regards to recreation but he has conducted the same on small businesses. We want to stay safe and flatten the curve of COVID-19. There are certain methods of small businesses to reopen such as wearing masks, and limiting the amount of attendees. We are all trained to wear a mask during these times and it is a matter of health. We can reopen small businesses while still adhering to social distancing protocols and have employees return to work.

**CHRISTINE KRISSIBERG-**questioned the reason for Council not postponing until the public can attend. Asked if COVID -19 is an excuse to rush this decision.

**GALAXY PHONE-** addressed Attorney McGuckin and stated the ordinance should be held once the executive order has been lifted and Mayor Reina is in attendance.

**SHAKEY JAKE (PHIL STILTON)-** stated if the law is redundant then what is the reason for repealing this ordinance.

**KIMBERLY-**stated township business must be conducted but "high impact" decisions must be tabled to a more appropriate forum.

**MARIA NEMETH-** stated this is prohibiting a Council meeting from being held, but tabling a monumental decision.

**SHAKEY JAKE (PHIL STILTON)-**  asked if Council still believes the rezoning of land near Great Adventure is a great decision.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the Mayor is an invited guest to council and his attendance is welcomed. The Mayor is not obligated to attend council meetings. Before this pandemic, the Mayor invited residents to "Meet the Mayor" to address questions or concerns. The Council passed a zone which designates a corridor on RT. 537 as "mixed commercial" use. It was approved by council and we fully support that decision .The land that was not zoned for "mixed commercial use" remained for years without generating revenue. Roughly 90% of the revenue that is generated by the town comes from the residents. It is a drastic in balance from the rest of the state. Only 10% is generated from businesses. In Jackson we have a desire to balance this with a quality of life. We want to bring in smart commercial ratables which is business into town which bring "clean" and smart ratables. They contribute to the town but do not consume services from the town. We zoned everything between Six Flags and I95 as "multi use "which is attractive. Other towns along I95 coordinator have similar types of zones and it was conducted as it is in a good location. The concerns were in regards to traffic and he believes that matter needs to be it addressed. The traffic runs on the outside of the town and not through the middle of town. The commercial ratables are between $3 million to $5 million in the next three years. With a Municipal Operating Budget of $47 million that revenue is a large number. We are in support of the decision and residents agree that it is a great location to have business. We are always trying to maintain a balance which still protecting Jackson and its environment.

**ATTORNEY MCGUCKIN-** the township is involved in three separate lawsuits. One of them seeks an injunction against the Township and the enforcement of the Township Zoning Board regulations. This is pending in Federal Court. The litigation continues and is pending. We anticipate a Judge's ruling on some of the lawsuits and if the Judge's ruling is against the township than the township will be looking for difficult time. The attorneys for the township have provided advice.

**QUESTION- STILTON-** questioned the budget which indicates health benefits are being provided to elected officials and asked which elected officials are receiving health benefits.

**BUSINESS ADMINISTRATOR WALL-** stated the health benefits are provided to Councilman Bressi and Mayor Reina. This information is public information.

**LAVAGNA-** questioned how the repeal of the ordinance impacts surrounding towns and asked whether there will be consequences in the future for other towns. These ordinances will impact other surrounding towns and will applications for other towns be impacted.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated Jackson focuses on Jackson's Land Use laws. We understand Land Use laws help to preserve the "quality of life" within the town. We have tried to do our best to put Land Use laws but we have found redundancy and administratively we are trying to correct that.  Every town has their own Land Use laws and some may be dramatically different. Towns within New Jersey have suffered by not

practicing good Land Use laws and protecting their infrastructure, environment, and water supply. They have suffered as a consequence. We are working to bring the ordinances to the original ordinance of 2017. Hopes the impact will be minimal and will continue to monitor our Land Use laws going forward.

**JACKSON RESIDENT-** stated this Zoom meeting proves how others can try to tarnish Jackson's good name. It also proves the continued harassment received when residents speak against legitimate concerns. Constant harassment is completed by instilling fear. There are people pretending to be residents of Jackson.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the Council is trying to do their best and acknowledged the great job Business Administrator Wall is conducting reading the residents comments. Zoom is new technology that is newly used in Jackson and multiple states. He understands the frustration and hopes to resume normal council meetings.

**BUSINESS ADMINISTRATOR WALL-** stated Attorney McGuckin can review all the chat messages in regards to the official record. How it is formatted it is a matter between the Township Attorney and the Municipal Clerk to determine that course of action. We are trying to have as much inclusion as possible.

**JEFF NEMETH–** asked whether the township is concerned as our state is so highly populated and COVID- 19 is still affecting us. Questioned whether we are prepared to have a larger population in our town and asked if restrictions can be set to monitor the influx to our town.

**COUNCIL VICE PRESIDENT SAUICKIE-** acknowledged that Mr. Nemeth's questions were great ones.  He stated New Jersey has the highest foreclosures rates of any state in the country. The State imposes COAH on various municipalities which include Jackson. It is ridiculous that more housing is being built as the amount of foreclosures increases. The Council has spoken against COAH mandates and is doing our best to navigate through it. We don't believe in the state additional housing units are needed when this state has the highest dense population. Residents and businesses are leaving due to these circumstances.

**ATTORNEY MCGUCKIN-**it is unknown at the time whether COVID19 will impact State law. It is an interesting question. As COAH mandates Jackson to comply with their regulations Jackson has been a leader in attempting to oppose a policy that has a negative effect on the municipality in many ways. It has resulted in various items of litigation and the township continues its efforts to fight for the "quality of life" for all residents.

**RAY-** questioned why the township cannot build low income housing and have a management company handle the rentals.

**COUNCIL VICE PRESIDENT SAUICKIE-** Mr. Ray has great suggestions and will definitely consider this proposal.

**UNKNOWN-** does not have a problem with the sports center but has a problem with high density housing. It would result in high commercial ratables, but it will also result in higher density and dorms which will devalue all of our homes.

**JOHN SIEDLER- PRESIDENT OF BOARD OF COMMISSIONERS- FIRE DISTRICT 3-VASSAR COURT-**asked Council to consult with the Fire Commissioner and the 3 Fire Districts in regards to Fire Safety and Construction Safety Initiatives. In order to ensure the safety of all of our residents, safety of our firefighters and our EMS it is necessary to work together. Safety is our top priority.

**COUNCIL VICE PRESIDENT SAUICKIE-**this Council whole heartedly agrees and supports all of the First Responders.  All of our First Responders are "second to none" in our state. In 2017 Jackson was rated the second "safest" town in the state. We are the safest due to Our Fire Department, Police Department, and EMS.

**DIANA CAMPAGNA- 5 TOPAZ DRIVE-**stated the State wants to mandate high density housing units on a rural and suburban township with precious natural resources. There  are

Case 3:17-cv-03226-MAS-DEA   Document 112-3   Filed 03/05/21   Page 24 of 26 PageID: 2520

many vacant properties throughout Jackson. Questioned the reason why those areas can't be repurposed before mandating our town to COAH regulations.

**COUNCIL VICE PRESIDENT SAUICKIE-** the Council and Mayor are supportive of Ms. Campagna's concern. We don't want to build more homes than needed. We are supportive of new types of businesses that could not operate in certain zones in our town. The Planning and Zoning boards in our town determine the projects in accordance with the remainder of the town.

**ELENOR HANNUM- 6 EVERGREEN COURT-** stated she has been contacted by the NJ Environmental Protection with several complaints against her and her organization. Advised Council, Mayor Reina and Attorney McGuckin that residents are being threatened for speaking against these developers.

**COUNCIL VICE PRESIDENT SAUICKIE-** thanked Ms. Hannum for providing this information. We are in support of protecting Land Use in our town, and protecting the environment within the town. Our interest is the residents of Jackson and their "quality of life". We are trying to do this in a balanced way with taking in consideration businesses and the environment. Attorney McGuckin is noting the situation Ms. Hannum is facing.

**ATTORNEY MCGUCKIN-** stated if the NJDEP is threatening anyone we urge residents to contact the town and a communication will be made to the NJDEP immediately.

**DENISE GARNER-16 EVERGREEN COURT-** stated COAH is out of control and does not consider the important natural resources. Questioned the MUA usage allocation. Jackson Township houses many important resources and cannot be completely overbuilt. We should protect all of Jackson including the watersheds and the need of shared resources to preserve now and into the future.

**RESIDENT OF JACKSON-** questioned the Council whether ordinances will be written in regards to "Houses of Worship" in residential homes especially vacant homes. Standards should be created for vacant homes versus those that are occupied. Asked if there is an interpretation of a "House of Worship".

**ATTORNEY MCGUCKIN-** the township has current ordinances and" permitted uses" in certain zones and if operation is being conducted in areas not indicated then they are in violation. If the township wishes to change the ordinances in the future then they will consider it.

**PETER VICINIO-** questioned what prohibits a person from another town participating in the chat and making racist slurs.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated this situation cannot be prevented. Business Administrator Wall is screening and we are sensitive to introduce comments that may target anyone with negative thoughts. We cannot prevent people from participating in the Zoom meeting. We are doing our best in screening the comments. Under normal circumstances comments made by non-residents are welcomed. Zoom technology makes it easier for certain individuals to make these types of comments.

**BUSINESS ADMINISTRATOR WALL-** there are hundreds of chat comments and we are trying to navigate them appropriately. Apologized if a question or comment was not addressed.

**ROBERT SKINNER- 404 LARKSPUR LANE-** is not a fan of using older environmental studies and supports new land use applications. Questioned as an Assemblyman if there are statutes that guide developers to utilize newer studies. Asked whether a new ordinance can be adopted on this subject.

**ATTORNEY MCGUCKIN-** the case in Jackson that we can refer to has an issue with Pinelands and how the study it is controlled by the Pinelands Commission. The Township does not have authority to make changes only the Pinelands Commission. Under the Municipal Land Use law townships are limited to what they can require and if the statutes

Case 3:17-cv-03226-MAS-DEA   Document 112-3   Filed 03/05/21   Page 25 of 26 PageID: 2521

does not permit it the township cannot require it. There is no provision in the law for the township to require certain dates of the environmental studies. The ultimate decisions in regards to the harming of the environment is related to the NJDEP. The Pinelands Commission, CAFRA, and the Highland Commission. Townships do not have the legal authority. The state has never given the authority to the township and is not in the Municipal Land Use law.

**ROSARIO-** questioned when the ordinance is adopted will the Zoning Board be responsible for conducting the inspections for the dormitories. Will the Zoning Board ensure they are up to building standards, meet safety standards and once there are built inspect on a yearly basis.

**ATTORNEY MCGUCKIN-** schools are regulated by the State of NJ and must meet Fire Code requirements. The State is responsible for approving schools and the ordinance does not permit dormitories. If someone is  interested in building a dormitory they would need to be heard before the Zoning Board and seek approval. The Zoning Board can approve, deny or impose any recommendations deemed necessary. The Zoning Board can indicate where they can be built and the township has limited control.

**DIANE CAMPAGNA- 5 TOPAZ DRIVE-** questioned if a dormitory be approved if they must comply with COAH obligations as it is Affordable Housing.

**ATTORNEY MCGUCKIN-** there is no way to know without further information. This type of question must be addressed by our COAH Township attorney.

**SHAKY JAKE (PHIL STILTON)-** stated the building is closed to the public and the Zoom meeting are being filtered. He questioned that the council does not have to answer to the residents.

**BUSINESS ADMINISTRATOR WALL-** the buildings are currently monitored due to COVID-19 during the day by our Department of Public Works Department as the building are closed to the public. There are different of methods for the public to obtain and submit documents. Temperature checks are being conducted to ensure individuals entering our buildings have no fever. The buildings are being extensively sanitized to make sure the health of each individual in the building. This procedure is making sure the employees are safe for themselves and their families. We continue to accept transactions and documents for the public. GovPilot is being used to be conducted transactions electronically to make it simpler, easier and effortless. Municipay will allow for transactions to be conducted with a credit card. A new township website will also be available soon. He gave examples of applications available on Govpilot.

**CLERK KISTY-** gave examples of applications that will be available on our GovPilot system. She stated her staff has been phenomenal in implementing this system and making it convenient for the public. Marriage licenses have become easier as the system allows them to fill out all the information online. The applications can be processed in the comfort of your home and our staff will respond immediately to each request. She is grateful to the Council, Mayor and Business Administrator Wall for bringing this forward at this time. It has made our operation very efficient and look forward to the future.

**COUNCIL VICE PRESIDENT SAUICKIE-** stated the buildings are closed to the public but with Govpilot it allows for the public to continue to conduct business by using online services.

**ELENOR HANNUM- 6 EVERGREEN COURT-** kudos to Township Clerk Kisty and Business Administrator Wall, you are both amazing!

**RAY-** asked if Council can request that Mayor Reina attend the next scheduled council meeting.

**COUNCIL VICE PRESIDENT SAUICKIE-** Council will request Mayor Reina to be present and it is an open request for him to attend. There were questions directed to him and we must be fair to allow him to respond. He has been an active participant of our

meetings. Lately he hasn't been in attendance as it is a conflict with meetings to be held with the Governor's office. In the opening statements he has been passionate about bringing Jackson back to business both from small businesses and recreation standpoint. We will notify him that he is always welcome to attend the meetings.

**SHAKY JAKE (PHIL STILTON) –** stated this is the resident's town and he has the right to ask questions. He questioned Attorney McGuckin whether he represents Lakewood Zoning Board as he also represents multiple towns. Asked Attorney McGuckin with multiple positions in numerous towns how does he devote proper time to Jackson. He stated that Toms River Council meetings are held at similar times that Jackson Council meetings are held.

**ATTORNEY MCGUCKIN-** stated his firm represents multiple municipalities and Land Use boards. It is our firm's specialty to represent boards in Ocean County, Burlington County, Monmouth County, Mercer County and Atlantic County. I personally do not represent Lakewood his partner in the firm does. His partner Jerry Dasti is an attorney for Lakewood as other numerous towns. The Council and Mayor Reina will decide if I conduct an adequate job or not. I serve at their pleasure.

**BUSINESS ADMINISTRATOR WALL-** he stated he paraphrases as some of the questions as they are length. He is making editing changes so an accurate response can be made especially with typos.

**MOTION TO CLOSE PUBLIC COMMENT ON ANY TOPIC BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

**MOTION TO ADJOURN BY: KERN**
**MOTION SECONDED BY: FLEMMING**
**YES: BRESSI, FLEMMING, KERN, SAUICKIE**
**ABSENT: CALOGERO**

**7:44 P.M.**

           **RESPECTFULLY SUBMITTED,**

         _____
          **COUNCIL VICE PRESIDENT**
            **SAUICKIE**

         _____
          **JANICE KISTY, R.M.C.**
          **TOWNSHIP CLERK**

JK/xo