IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, a New York non-profit corporation, and WR PROPERTY LLC, a New Jersey limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF JACKSON, NEW JERSEY, MICHAEL REINA, ROBERT NIXON, HELENE SCHLEGEL, JEFFREY PURPURO, WILLIAM CAMPBELL, and KENNETH PIESLAK,<br><br>Defendants. | Civ. No. 3:17-cv-03226<br><br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Currently pending before the Court is the Plaintiffs' Motion for Preliminary Injunction (ECF No. 55) which has been scheduled for oral argument on March 30, 2021. (ECF No. 115.) By Order of February 10, 2021, the Court requested supplemental briefing from the Parties responding to filings made by the Parties that same day. (ECF No. 109.) Both Parties filed Supplemental Briefs (ECF Nos. 112, 114). This is Plaintiffs' Reply to the Defendants' Supplemental Brief.

**I.     Defendants miss the import of the recent Supreme Court decisions.**

The Defendants have misconstrued the import of the Supreme Court's recent decisions in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67, 2020 WL 6948354 (2020) and *S. Bay United Pentecostal Church v. Newsom*, No. 20A136, 2021 WL 406258, at *3 (U.S. Feb. 5, 2021). In their Brief, the Defendants state:

1

>there are no proofs that anyone has been prohibited from gathering based on the Township's Ordinances. Jackson's Ordinances do not prohibit the free exercise of religion, rather they regulate land use.

(ECF No. 114 at 3.) Whether Defendants can regulate land use is not the issue. It is whether that regulation of land use discriminates on the basis of religion. These decisions stand for the principle that where governmental action affecting religious practice is not both neutral and generally applicable, but instead targets one religious group (the Orthodox Jewish community and their religious practices including religious education), strict scrutiny applies to a Free Exercise claim.[1]

In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Court explained:

>As noted by the dissent in the court below, statements made in connection with the challenged rules can be viewed as targeting the "'ultra-Orthodox [Jewish] community.'" 980 F.3d 222, 229 (CA2, Nov. 9, 2020) (Park, J., dissenting).

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. at 66. Similarly here, under the Supreme Court's analysis, the challenged regulations are subject to strict scrutiny and are not the least restrictive means of achieving a compelling governmental interest. (ECF No. 94, Count III.)

Almost four years later after their adoption, Defendants have not identified a single governmental interest to justify these Ordinances. That is because there is only one reason these Ordinances were adopted: the Township, in response to pressure from hostile local residents and with knowledge of the need for Jewish schools, quickly enacted these three Ordinances in 2017 to try to prevent Orthodox Jews from moving to the Township. Even if they were to identify a compelling governmental interest, a prohibition on *eruvs* and boarding schools, as well as banning schools from residential zoning districts (all of which were designed to and in fact do uniquely

---

[1] It is also untrue that "there are no proofs that anyone has been prohibited from gathering based on the Township's Ordinances." (ECF No. 114 at 3.) Plaintiffs have demonstrated that. (ECF Nos. 55-88-89, 55-91-92.)

impact the Orthodox Jewish community) is not the least restrictive means to accomplish that interest.

II. **The power conferred under the MLUL cannot defeat the unconstitutional and illegal nature of the Ordinances.**

Defendants argue that its power under the New Jersey Municipal Land Use Law to grant variances to applicants seeking dormitory uses somehow cures the constitutional injury here. (ECF No. 114 at 5-6.) Whether Orthodox Jews may seek a variance from a law that prohibits their use has nothing to do with the claims at issue, which involve the discriminatory motivation for the challenged laws. This action seeks relief based upon that discrimination pursuant to the United States Constitution, various provisions of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et al*, the Fair Housing Act, 42 U.S.C. § 1982, and the New Jersey Law Against Discrimination. An applicant for a use that is prohibited, but may be allowed with a variance, is still disadvantaged by the prohibition. *See, e.g., Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1171 (9th Cir. 2011) (ordinance violated RLUIPA where "'religious organizations' are permitted only upon the granting of a conditional use permit, but numerous other uses are permitted as of right"); *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV SAG-17-0804, 2020 WL 618662, at *12 (D. Md. Feb. 10, 2020) (ordinance violated RLUIPA where "public schools are permitted by right in the R.C.4 zone, [while] churches, such as Hunt Valley, must apply for and obtain a special exception.").

Further, whether an Orthodox Jewish school with dormitories can locate in the Township still remains discretionary in a Township that has demonstrated its hostility toward that community. As the Township Attorney has acknowledged, "the applicant . . . would have to go to

3

the Zoning Board to seek approval" and "Dormitories are not a 'permitted use' even after this adoption" of 06-20. (ECF Nos. 112-3; 112-4.)

### III. The Doctrine of Voluntary Cessation does not prevent the Court from proceeding on all issues before it.

Defendants also argue that Ordinance No. 06-20 (which repeals Ordinance No. 04-17) somehow also repealed Ordinance No. 03-17 by virtue of its language. However, the only substantive language appearing in Ordinance No. 06-20 is that "**Ordinance 04-17 be and hereby is repealed.**" (ECF No. 112-2.) It does not say anything more specific. It does not mention dormitories, their ban or use. Therefore, Ordinance No. 03-17 is not "inconsistent herewith" because the only substantive language in Ordinance No. 06-20 is just a general repeal of Ordinance No. 04-17. Ordinance No. 04-17 can be repealed, while Ordinance No. 03-17 remains in force, without any inconsistency. Further, the Township has explicitly stated that it will continue to ban dormitories, regardless. As Plaintiffs have briefed (ECF No. 112), the doctrine of voluntary cessation does not prevent this Court from ruling on the dormitory prohibition. Further, it has no relevance with respect to the school and *eruv* Ordinances.

### IV. Plaintiffs timely filed their challenge to the Ordinances under New Jersey state law.

Defendants assert that Plaintiffs did not timely challenge the enactment of the subject Ordinances pursuant to New Jersey state law. This is untrue. This Complaint was filed in 2017. Ordinances No. 03-17 and 04-17 were adopted on March 16, 2017 and notices of the adoptions published on March 24, 2017. (Declaration of Sieglinde K. Rath dated March 12, 2021 ("Rath Decl."), ¶ 1, **Exh. A**.) As Defendants acknowledge in their filing (ECF No. 114 at 5-6), Plaintiffs had 45 days following March 24, 2017 to file a prerogative writ claim pursuant to N.J.C.R. 4:69-

6[2] to challenge adoption of these Ordinances or until May 8, 2017. Plaintiffs filed the Complaint in this action on May 8, 2017, which was 45 days after adoption, and it includes a Prerogative Writ count challenging the Ordinances. (ECF No. 1; Count XI; ECF No. 94; Count XVI). Similarly, Ordinance No. 20-17 was adopted on September 12, 2017 and notice of the adoption published on September 21, 2017. Rath Decl. ¶ 2, **Exh. B**. Plaintiffs moved to file an Amended Complaint to include a challenge to Ordinance No. 20-17 (ECF No. 20) which was unopposed by Defendants and granted by this Court on November 14, 2017. (ECF No. 21.) Plaintiffs immediately filed the Amended Complaint the next day, November 15, 2017. (ECF No. 22.) Thus, Plaintiffs timely challenged Ordinance No. 20-17.

V.  **The Affidavit of Rabbi Bloom (ECF No. 107) is evidence of the ongoing harm pled by Plaintiffs.**

With its initial briefing, Plaintiffs submitted the Declarations of individuals who continue to be harmed by enactment of these Ordinances; those affected by the lack of schools and *eruvs* in the Township. (ECF No. 55-86-94; 55-96-7; 55-101.) This harm was fully set forth in Plaintiffs' initial brief supporting the subject Motion. (ECF No. 55-1 at 2-4, 10-11 and 29.) As Rabbi Bloom has testified more than 18 months since the filing of the Motion for Preliminary Injunction, he has had to abandon his attempt to construct and operate a school for young Orthodox Jewish women in the Township because of the continued dormitory and school bans. (ECF No. 107.)

Dated: March 12, 2021

                                                            **STORZER & ASSOCIATES, P.C.**

---

[2] This deadline does not affect Plaintiffs' federal claims. Nor does the presumption of validity under State law have any impact with respect to the same. (ECF No. 114 at 6).

<div style="margin-left: 40%;">

<u>/s/ Sieglinde K. Rath</u>
Sieglinde K. Rath (048131991)
Roman P. Storzer, *admitted pro hac vice*
9433 Common Brook Road,
Suite 208
Owings Mills, MD 21117

*Counsel for Plaintiffs*

**WILENTZ, GOLDMAN & SPITZER, P.A.**

<u>/s/ Donna M. Jennings</u>
Donna M. Jennings (017281995)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095

*Co-Counsel for Plaintiff, WR Property LLC*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of March, 2021, the foregoing document was served via ECF to the following:

>Brent Pohlman, Esquire
>Methfessel & Werbel, P.C.
>2025 Lincoln Highway
>Suite 200
>Edison, New Jersey 08818

**STORZER & ASSOCIATES, P.C.**

/s/ Sieglinde K. Rath
Sieglinde K. Rath (048131991)
9433 Common Brook Road,
Suite 208
Owings Mills, Md. 21117